

REPUBLIC OF AUSTRIA
**Vienna Higher Regional Court**                                          **33 R 5/20b**

# In the name of the Republic

The Oberlandesgericht Wien (Vienna Higher Regional Court), as the court of appeal, by the President of the Senate, Dr. Hinger, as Chairman, and the Judge Dr. Schober and the Patent Attorney DI Mag. Babeluk in the case of the applicant **Rat Pack Filmproduktion GmbH**, Beethovenplatz 2, D-80336 Munich, Germany, represented by Kletzer Messner Mosing Schnider Schultes Rechtsanwälte OG in Vienna, against the defendant **RatPac Entertainment, LLC**, 4000 Warner Boulevard, US-91522 Burbank, USA, represented by Schwarz Schönherr Rechtsanwälte KG in Vienna, concerning the cancellation of the trade mark AT 285551, on the appeal of the defendant against the decision of the Cancellation Division of the Patent Office of 24 July 2019, Nm 29/2016-6, at a closed session:

The appeal is allowed in part. The decision is amended and reads in its entirety:

"The application is granted in part and the trade mark AT 285551 is revoked with the exception of the services in class 41 "'Operation of casinos' and Class 43 'Hotel services, catering for guests in restaurants, operation of a bar', with effect from the beginning of the term of protection.

The additional request that the mark be cancelled also in respect of the services in Class 43 'hotel services, catering for guests in restaurants, running of a bar' is rejected.

The defendant is obliged to reimburse the applicant EUR 1,884.77 (including EUR 466.67 cash expenses) for the costs of the proceedings within 14 days."

The defendant is ordered to reimburse the applicant EUR 433,90 for the costs of the appeal proceedings within 14 days.

The value of the subject matter of the decision exceeds EUR 30,000.

The ordinary appeal is not admissible.

### R e a s o n s

**1.** The application for cancellation is directed against the word mark AT 285551,

**RAT PAC**,

Filed on 6/17/2014, registered on 11/19/2015, published on 12/20/2015 This trademark is registered for the following services:

36    Financing of films;

41    Production offeature films and television programmes; film distribution services, namely distribution of feature films and television programmes; publication of books; operation of casinos;

43    Hotel  services, catering for guests in restaurants, operation of a bar.

The applicant seeks cancellation in respect of all services (with the exception of 'operation of casinos') and bases its application on Paragraph 32(1) of the MSchG, stating - in brief (Paragraph 500a of the ZPO) - that it was founded in 2001 and has been trading as 'Rat Pack Filmproduktion GmbH' since 2002. It produces very successful cinema films. The company uses it in particular in the following form:



The object of the company is the production of films, including television productions and other audiovisual and other media productions, and the performance of activities directly or indirectly connected with production. It is also the proprietor of the German trade mark DE 30201720 'Rat Pack' with priority from 14 January 2002, inter alia for film production. It had been using the company in Austria for a long time (even before the priority date of the contested mark) and intensively.

The applicant also bases its application on Paragraph 34(1) of the MSchG (bad faith), stating that the defendant had attempted to register a Community trade mark with the same wording, but had failed to do so because of the applicant's opposition. It has now proceeded to apply for national trade marks, including in Austria, in order to prevent the applicant from distributing the films in Austria.

**2.** The respondent opposed the application for cancellation and argued - briefly summarised (§ 500a ZPO) - that on the basis of the decision of the ECJ C-17/06, *Céline,* the holder of a company name could no longer prohibit a trade mark proprietor from using the identical trade mark. The applicant had no company rights in Austria and therefore enjoyed at most the protection afforded to unregistered trade names. It is disputed that the applicant was already active under its company name before the date of priority of the contested trade mark. The applicant also does not produce films in Austria. The applicant's company logo has no reputation and is not used as a company logo. Even if one were to assume that the affixing of the company logo to DVD covers etc. suggests use as a trade mark, this is - if at all - not a matter of fact.
- use for goods, whereas the contested mark is registered for services.

**3.** By the order now under appeal, the Cancellation Division (NA) granted the application and cancelled the trade mark to the extent requested (i.e. only not in respect of the operation of casinos).

In factual terms, the NA assumed that the applicant had already been active in the film and television industry in Austria under its company name before the priority date of the trade mark (17.6.2014) (decision page = BS 9 ff). Prior to the priority date, the applicant and its cooperation partners used the sign "Rat Pack" in Austria in the opening and closing credits of their cinema films, on film posters, on DVDs/Blue-Rays, on other advertising materials (e.g. Happy Meal from McDonald's, children's surprise and popcorn bags in Austrian cinemas), through advertising on websites and on Facebook and at various advertising events (e.g. film premieres). The company logo was always depicted (BS 12 below).

Legally, the NA considered that the applicant's company name was distinctive and that there was also a likelihood of confusion with the contested mark. There was also an identity or at least a high degree of similarity (meaning similarity of services) to the applicant's business activity. This also applies to "film financing", because this is not identical with
"financial services'. There is also no sectoral difference in the production of books. The likelihood of confusion also exists in relation to 'hotel services',
"Catering for guests in restaurants" and "Running a bar". In fact, advertising films are made for hotels, hotels are used as film sets, film production companies also operate bars and restaurants.

The NA denied that the defendant had acted in bad faith when filing the trade mark application, because mere knowledge of the name of another company was not sufficient for this.

**4.** The applicant's appeal is directed against this, alleging that the proceedings were defective and that the legal assessment was incorrect. It requests that the decision be amended and that the application for cancellation be dismissed.

The applicant requests that the appeal be dismissed.

**5.** The appeal is partially justified.

**5.1** As a procedural defect and also as the basis for an incorrect finding of fact, the respondent complains that the NA researched the Internet (YouTube) outside the hearing in order to establish that the applicant's company logo is shown in the opening and closing credits of the films produced by the applicant. This finding should be dropped and replaced by a negative finding.

In this regard, the applicant rightly points out in the response to the appeal that she had made a corresponding allegation, which the respondent had not substantiated contradicted, although this would have been easy, because it would have been easy to provide evidence in one direction or the other with the help of the Internet (YouTube). If the NA thus verifies a fact that is not specifically disputed at all on its own initiative in order to then also establish the fact that is not substantiated disputed, this is not to be seen as a procedural deficiency. It is also noteworthy that the respondent does not make the claim in the appeal that the company logo of the applicant is not shown in the opening and closing credits.

Even if this finding were to be omitted, the above-quoted findings would remain in force, from which, irrespective of the design of the opening credits and the

credits of the films shows use of the company by the applicant.

**5.2** In the appeal, the respondent repeats its legal position that decision C-17/06, *Céline,* makes it clear that someone who derives his right from a company name has no means of proceeding against a trade mark. NA did not agree with this point of view with convincing arguments. The Court of Appeal also does not agree with this view.

In the aforementioned decision, the ECJ commented on whether a trademark owner may prohibit someone from using a company name (a company sign). No statement was made in this decision as to whether someone can take action against a trademark on the basis of his name or his company name (business identifier). The mere fact that the law in Since Paragraph 32 of the MSchG contains an express provision for such a case, it is not possible to conclude that those two legal instruments are, in all respects, completely mirror images of each other and can produce only identical legal consequences in either direction.

As the Supreme Court explained in 4 Ob 223/12s, *Scorpion*, cited by the respondent, it follows from C-17/06, *Céline,* that the use of an (earlier) trade mark by the proprietor of a company with the same name is not a trade mark infringement as a result of the different functions of the company name and the trade mark, provided that the proprietor of the company does not affix the company name to its goods or otherwise use the company name in a way that establishes a link between the company name and its goods, because the proprietor of the company would thus in a sense "make the company name into a trade mark" and thereby impair or be likely to impair the trade mark's function as an indication of origin. The use of a trade mark as (part of) a company name infringes the

Trade mark law in itself not yet. However, it cannot be deduced from this that the use of a trademark as a company component or as a company name would always be justified irrespective of the accompanying circumstances.

Conversely, it is even less possible to deduce from this that the choice of a company name (or a confusingly similar word) as a word mark would in any case be justified irrespective of the surrounding circumstances. The rights granted by law to the owner of a company to take action against a younger trademark remain unaffected by the considerations of the ECJ in the aforementioned decision (cf. also *Hacker* in *Ströbele/Hacker/Thiering,* MarkenG12 § 12 Rz 9).

**5.3** Under the aspect of an incorrect legal assessment, the respondent points out that the applicant does not produce films in Austria. It therefore also does not enjoy protection of the company because - which is undisputedly true - it has not registered its company in Austria.

The protection granted by Section 32 MSchG does not depend on registration in the Austrian companies register, but on whether the company mark is used in the course of a continuous economic activity in Austria (*Horak* in *Kucsko/Schumacher,* marken.recht² § 32 Rz 9 f; *Engin-Deniz,* MSchG3 717; 34 R 145/15s).

The findings of the NA reproduced above, which do not even include the production of films (in Austria), sufficiently substantiate this "permanent economic activity". On the basis of these facts (to which the respondent is bound in its legal challenge), the film production in Austria, which the respondent lacks, is not relevant.

**5.4** The defendant complains that the economic activities carried on by the applicant are not related to the goods and services,

and the services for which the contested mark is registered.

In that regard, it must be observed that the specific case does not concern a comparison of goods and services, as is usually the case in a dispute between two trade mark proprietors, but whether the sector for which the applicant uses its business mark is sufficiently close to the services for which the contested mark is registered. In that regard, it must be assumed, on the basis of the uncontested allegation, that the applicant has made the production of films, including television productions and other audiovisual and other media productions, and the performance of activities directly or indirectly connected with production, its business purpose. There are no doubts about that, either, because the trade mark expressly contains the word 'film production'.

This legal assessment results in the following comparison:

| *Sector of the applicant* | *Scope of protection of the contested mark* |
|---|---|
| Production of films including television productions and other audiovisual and other media productions as well as the performance of activities directly or indirectly related to the production. | Film Financing<br><br>Production of feature films and television programs<br><br>film distribution services, namely distribution of feature films and television programs<br><br>book publishing<br><br>[Operation of casinos - *not opposed*].<br><br>Hotel services<br><br>Catering for guests in restaurants<br><br>Operation of a bar |

In doing so, the Court of Appeal - in contrast to NA - comes to the conclusion that the services of hotels, the catering of guests in restaurants and the operation of a bar do not have sufficient proximity to film production. With the argumentation of the NA, everything that could be shown in feature films or where filming could have

are possible, a sufficient connection to the film production. By means of the above-mentioned services (highlighted in grey above), the respondent would not interfere with the applicant's right, which the applicant can derive from the protected company name.

Conversely, the Court of Appeals sees no reasonable grounds to doubt that film financing is a part of film production.

It is also not uncommon for books to be published to accompany the promotion of films.

**5.6** By its nature, the appeal is not directed against NA's assessment that the trademark application was not filed in bad faith. However, the applicant reiterates its arguments on the presumption of bad faith in the response to the appeal.

The Court of Appeal does not consider NA's assessment to be in need of correction. After all, the applicant has neither a trade mark right nor a registered company in Austria, and there is also no evidence to suggest that the respondent registered the trade mark only in order to prevent the applicant from engaging in economic activity; nor is there any evidence that the respondent itself had no intention at all to use the trade mark.

**6.** As a result, the decision of the NA must be amended to the effect that not only - as already contained in the application - the "operation of casinos" is excluded from the cancellation, but also the "services of hotels", the "catering of guests in restaurants" and the "operation of a bar".

**7.** This change has an effect on the first instance costs decision. However, since the activity in the field of film production is in the foreground, the Court of Appeal assesses the dismissal of the application as one third, so that the applicant is entitled to compensation of one

-10-  33 R 5/20b

The applicant is entitled to one third of the representation costs and has to bear only one third of the cash expenses in total. No objections were raised against the applicant's bill of costs.

The same considerations apply to the costs of the appeal proceedings. However, the applicant is not entitled to VAT for the response to the appeal in the absence of a certificate. The amount results from a balancing of one third of the applicant's representation costs and one third of the flat fee, which the applicant has to reimburse to the respondent.

**8.** In view of the economic importance of the trade mark right, the value of the subject-matter of the decision exceeds EUR 30,000. The ordinary appeal is not admissible because there were no legal questions to be answered which would be of considerable importance for the preservation of legal certainty, legal unity or the development of the law.

Vienna Higher Regional Court
1011 Vienna, Schmerlingplatz 11
Dept. 33, on April 28, 2020

**Dr. Reinhard Hinger**
Electronic copy according to
§ 79 GOG