IN THE NAME OF THE KING

# judgement

COURT OF JUSTICE THE HAGUE

**Civil law department**

Case number                                : 200.273.637/01

Case/proceedings court          : C/09/541828/HAZA 17-1127

**judgment of 14 September 2021**

regarding

the legal person under foreign law **RAT PACK FILMPRODUKTION GMBH,**
established in Munich, Germany, appellant,
hereafter referred to as: Rat Pack DE,
lawyer: D.E. Stols in Amsterdam,

against

**RATPAC ENTERTAINMENT LL.C.** is a foreign
legal person, located in Wilmington, Delaware, United
States of Amerika, defendant,
to be called: Ratpac US,
lawyer tapped.

**The proceedings**

The court has taken note of the following procedural documents:
- the case file of the first instance, including the judgment rendered between the parties on 9 October 2019 The Hague District Court's judgment rendered on 9 October 2019 (hereinafter: the judgment);
- the summons to appeal dated 23 December 2019 and the re-submission dated 8 January 2020;
- the memorandum of grievances with six grievances and one subsidiary grievance and production 28;
-the document received by the Court on | 1 January 2012 containing additional productions from Rat Pack DE, with productions 29 through 36.

On January 25, 2021, Rat Pack DE presented its position orally by its aforementioned attorney, who made use of a pleading, which has been submitted and part of the pleadings. Ratpac US did not appear. At the end of the session a judgment was requested.

Rat Pack DE has renumbered its productions at first instance and on appeal. The productions will hereinafter be referred to as production [number] RPD and RUS respectively.

**The Facts**

I. The facts established by the district court in paragraphs 2.1 to 2.5 of the judgment are not in dispute, so the court of appeal assumes them. Taking into consideration what has otherwise been established between the parties as having been argued on the one hand and acknowledged on the other hand or not or not sufficiently refuted, the case, in so far as it is still important on appeal still of importance, is the following.

Case number: 200.273.637/01

2

1.1. Rat Pack DE is a German film producer of feature films, especially children's and youth films. It has produced several dozen feature films, which are distributed through the cinema, TV and carriers, such as DVD. In the opening credits of her films, her name RAT PACK FILMPRODUKTION is mentioned. In the Netherlands Rat Pack DE is particularly active in the niche market for children's and youth films.

1.2. Ratpac US belongs together with a number of other companies to the American Ratpac Group, which is active in the film industry and is involved in the financing of Hollywood feature films, in particular blockbusters/ world-renowned films, a large number were released in the Netherlands. In the opening title and credits of feature films, in which she is involved (or has financed), her name RATPAC ENTERTAINMENT is mentioned.

1.3. Ratpac US filed an application for a Union trademark for the word mark RATPAC on June 17, 2014 (application number 013004833; hereinafter referred to as the Union trademark application). This application was opposed by, among others, Rat Pack DE. On April 28, 2015, the application was withdrawn. On 5 May 2015 and 22 June 2015, requests for conversion (conversions) of the Union trademark application into national applications were received at EUIPO.

1.4 . On September 8, 2015, the word mark RATPAC was registered at the Benelux Office for Intellectual Property in the name of the respondent under number 0201465 (filing date June 17, 2014, published on June 29, 2015; hereinafter: the Benelux Trademark). The Benelux Trademark is registered for classes 36 (movie financing services), 41 (production and distribution of motion pictures and television programs; book publishing; casinos) and 43 (hotel, restaurant and bar services).

**The claims, the court's decision, and the grievances**

2. Rat Pack DE, insofar as still at issue on appeal and after limiting it by in brief, requested that Ratpac US be ordered to
   1. cease and desist all use in the Netherlands of the (trade) name RATPAC, including use on business documents and advertising, more specifically in the opening title particularly in the opening title and/or credits of new films yet to be released, as well as on the websites that are partly or exclusively aimed at the Netherlands;
   2. cease and desist all use in the Netherlands of the service mark RATPAC, or in any event, cease all use of the sign RATPAC to designate the services of services of Ratpac US, such as film production and film financing, whereby use shall in any case be understood to mean use of that sign on business documents and advertising, and more specifically the use of that sign in the opening title opening title and/or the credits of new films yet to be released, as well as on websites that are partly or exclusively aimed at the Benelux;
   3. the website which can currently be consulted via the URL www.ratpackentertainment.com or another URL containing the element ratpac by means of geoblocking in such a way that it so that it can no longer be consulted from the Netherlands;

Case number: 200.273.637/01

All this on pain of forfeiture of a penalty and with an order for Ratpac US to pay the costs of the proceedings on the basis of article 1019h Rv.

3. Rat Pack DE bases its claims on its trade name, arguing that it also uses it in the Netherlands and it has a protectable reputation in the Netherlands. She claims that Ratpack US is infringing her trade name (rights) and is acting unlawfully by mentioning the trade name RATPAC (ENTERTAINMENT)/ the trade mark RATPAC in the opening title and the credits of films shown in the Netherlands.

4. The court rejected the claim. To this end, it considered that the use of the name RAT PACK in the Netherlands did not generate sufficient notoriety to qualify for protection as a trade name. It also considered that from all the facts and circumstances put forward by Rat Pack DE taken together, it may be deduced that the name RAT PACK is so well known (to the professional public, the Court of Appeal understands), that "it can derive protection therefrom against other similar or only slightly different trade names that give rise to a risk of confusion among professionals in the Dutch film world", but that there is no likelihood of confusion among that public.

5. Grievances 1 through 3 are directed against the opinion of the District Court that there is no question of sufficient renown of the name RAT PACK in the Netherlands to qualify for protection as a trade name. Grievance 4 is directed against the opinion that, if there would be sufficiently well known among the professional public, there is no question of a likelihood of confusion among that public. Grievance 5 is directed against the dismissal of the claims that are still pending. Grievance 6 is directed against ordering Rat Pack DE to pay the costs of the proceedings. The subsidiary ground of appeal is directed against the extent of the costs of the proceedings that Rat Pack DE has been ordered to pay.

**The assessment on appeal**

*Grievances 1 to 3: Protectable fame?*

6. No objection was made to the opinion of the District Court in paragraph 4.7 of its ruling that for a foreign company to invoke the protection of Article 5 of the Trade Name Act (hereafter: Hnw) it is decisive whether the trade name enjoys such a reputation in the Netherlands that confusion is to be expected among the public here in the country, that it is not important whether this reputation has arisen through the use of this name in the Netherlands, or in any other way, and that purely summary use is insufficient to derive protection.

7. The right to a trade name arises because a company lawfully uses the trade name. This requires that the name is used in commerce. This can be done in many different ways. However, there must be some sustainability; using a name once or several times will usually be insufficient[1]. The extent of the right is determined by the protectable reputation of a trade name, which means that (at least for companies with more than local significance) there must be such a reputation that the public is likely to confuse it with another trade name[2].

---

[1] HR 2 June 1978, NJ 1980, 295, Kooy, and HR 28 September 2001, EC LI:NL: HR:200 I : ZC3656, Hooters.
[2] Cf. HR 2 June 1978, Kooy aforementioned, HR 29 June 1990, lER 1990, 94 Matrix and HR 13 September 1996, NJ 1997, 213, Lido.

Case number: 200.273.637/01

4

If a trade name is not or no longer used in the Netherlands, it may nevertheless enjoy a sufficiently high level of protection, i.e. a level of recognition such that the aforementioned confusion is likely to occur. The above means that the criterion for determining the likelihood of confusion on the part of the public is the criterion of protectable reputation, both for a trade name of a Dutch company and for that of a foreign company. If a defendant relies on prior use as a defense against a claim under Article 5 of the Hnw, there is probably a relevant difference between a foreign company and a Dutch company in the sense that it is sufficient for a Dutch company to use the older trade name in order for this defense to succeed [3], whereas a foreign company needs to have a protectable reputation for the trade name[4]. However, a reliance on prior use is not at issue in this case.

8.  Based on the above, in order for the trade name claims to be granted, it is in any case necessary for the name RAT PACK (FILMPRODUKTION) to have a protectable reputation as a trade name in the Netherlands. Grievances 1 to 3 are directed against the District Court's opinion that this is not the case.

9.  Rat Pack DE has claimed that its trade name RAT PACK (FILMPRODUKTION) has been used in various ways in the Netherlands since 2002 and that such use is sufficient for a protectable reputation. The following uses in the Netherlands have been acknowledged by Ratpac US, or at least not (substantiated) disputed:
    I . the mentioning in the following manner of the name RAT PACK FILMPRODUKTION in the opening title and/or the credits (productions 9 RPD and 10 RUS) of the by Rat Pack DE produced films, which are/were shown in the cinema are/were in the cinema and/or on TV and/or on DVD/Blu ray and/or online:



---

[3] HR 28 September 200 I , Hooters aforementioned . [4] HR 29 June 1990, Matrix voomoemd .



2. The mention of RATPACK FILMPRODUKTION on DVD and Blu ray sleeves of DVDs and Blu-ray available in the Netherlands on the bottom, small, but legible (productions 6, 22, 24 RPD);

3. The mention of RAT PACK FILMPRODUKTION in the series "Wir sind die Welle" which can be viewed from 2020 on Netflix as shown below (page 3 pleading Rat Pack DE on appeal (hereinafter: pleading hb)



4. The use of the name RAT PACK in connection with the participation by Rat Pack DE in the children's and youth film festival Cinekid festival in Amsterdam, organized in principle annually since 2009, for which it has submitted films with the entry indicated under 1 indicated has been submitted.

Based on what RatPack DE, not or insufficiently motivated, has disputed in this respect, has put forward, the court of appeal assumes, with respect to the extent of that use
- that the following films have been shown and/or offered in the Netherlands in or after the year indicated have (been) offered:
    a. Hunt for the hidden relic (2002);
    b. Rats 2 (2004);
    c. Die Welle (2008);
    d. Wickie the Viking (2009)
    e. The Crocodile Gang (2009);

Case number: 200.273.637/01

6

    f. The Crocodile Gang 2/The crocodile gang strikes back (20 IO);
    g. The Crocodile Gang 3/The Crocodile Gang - friends forever (2011);
    h. Wickie the Viking 2/Wickie the Viking and the City of the Gods (2011);
    i. The House of Crocodiles (2012);
    j. Lena Love (2016);
    k. At eye level (20 I 7);
    l. Jim Button and the City of Dragons (2019);
    m. Wir sind die Welle (2020);

- That these films were/are available in the Netherlands on DVD, Blu-ray and/or online;
- That a number of these films, namely The Crocodile Gang, The Crocodile Gang 2 and 3 (see productions 22 and 7 RPD), The House with the Crocodiles (production 5 RPD) and At Eye Level (page 7 pleading hb), usually several times, have been broadcast on TV broadcasted;
- that some of these films have been shown in theaters in the Netherlands. It is not disputed that the films Wickie the Viking, The Crocodile Gang (productions 22 and 31 RPD), Wickie the Viking 2 (production 9 RPD) and The Crocodile Gang 2 and 3 were screened in Dutch cinemas (compare also legal consideration 4.11 of the judgment). As for the film Die Welle, it can be derived from productions 8 and 23 RPD that this film was shown in Paradiso in the Netherlands. It is true that Ratpac US has contested this, stating that this film was only released in Belgium, but the Court considers this contestation to be insufficiently substantiated. Furthermore, Rat Pack DE has undisputed and substantiated at oral arguments in appeal that the film Jim Button and the City of Dragons (2019) was shown in the cinema and that the film Lena Love was shown at the Vlier Film Festival;
- that the 2009 film Wickie the Vicking, which was released dubbed in 2010 Netherlands and screened in the cinema (compare productions 5, 8 and 9 RPD) has attracted attracted at least 100,000 visitors (production 10 RPD);
- that trailers of a number of the aforementioned films were and are shown on You Tube, in which Rat Pack can be seen in the opening title in the aforementioned manner (production 5 RPD);
- That the children's and youth film festival Cinekid festival in Amsterdam is the largest, or at least a large audience festival for children's and youth films, which also plays a role in the distribution of youth films in the media industry, according to the statement of Sanette Naeyé, former director of the Cinekid Foundation (production 21 RPD).

11. The fact that Rat Pack DE works with German agents for the distribution of its films, who offer the films to third parties in the Netherlands, among other countries, does not alter the fact that 1) this is use with the consent of Rat Pack DE and 2) this use contributes to the awareness of the name in the Netherlands. The latter also applies to the mentioning in messages of third parties about films of Rat Pack DE, such as the statement that the film was (partly) produced by Rat Pack (Filmproduktion) (see productions 8, 10, 23 RPD). Unlike the District Court, the Court agrees with Rat Pack DE that the use of the name in films and in notices by third parties counts for the assessment whether the trade name enjoys a protectable reputation in the Netherlands.

12. Taking into account Rat Pack DE's undisputed assertion that it is customary for the trade name of a film producer to be mentioned in the opening title and the credits of a film produced by it, the Court of Appeal is of the opinion that the aforementioned use of the name RAT PACK (FILMPRODUKTION) is trade name usage. The public will recognize this name as the name under which the company, which has (co)produced the film, presents itself for identification purposes.

This is all the more true now that the word filmproduktion is part of the name used. The fact that the name is only briefly visible in the opening title and the credits and that other names are also mentioned there, does not detract from this. does not alter this sufficiently.That the public does not see or can not remember the name RAT PACK (FILMPRODUCTION) because of this, has not been argued nor proved. It is also the intention that the public sees and remembers this. Furthermore, the Court of Appeal is of the opinion that the aforementioned trade name use, taken together, is sufficient to assume that there is a protection worthy reputation among the general film watching public (the end customers) and among the professional public. The defense of Ratpac US that the use is limited to the period from 2002 to 2013 and that after 2013, at least 2015, there has been no more use is rejected on the basis of the overview given above, which also shows use thereafter. The fact that Rat Pack DE is based in Germany, does not have an office here and has a primarily German-language website and Facebook page does not detract from this familiarity. Grievances 1 to 3 therefore succeed..

*Grievance 5: Infringement of the trade name?*

13. By grievance number 5, Rat Pack DE objects to the rejection of its trade name claims. With this ground, Rat Pack DE intends to present the trade name law dispute in its full Court in its entirety. Based on its trade name (right) Rat Pack DE can be prohibited from using a younger trade name that only slightly differs from her trade name if by doing so Rat Pack DE can prohibit the use of a younger trade name that only slightly differs from her trade name if that use causes (direct or indirect) confusion between the companies for the relevant public. public (direct and indirect) confusion between the companies is to be feared.

14. It is established that the name (and its corresponding service mark) RATPAC of Ratpac US in combination with the smaller spelled word ENTERTAINMENT is used in the opening title and credits of films financed by it in the following manner:

Case number: 200.273.637/01

8





This regularly includes mentions of a production by RatPac Entertainment and another, as in entries such as "Sony Pictures and RatPac Entertainment present", "A Bron Studios and RatPac Entertainment production", A Benderspink / Ratpac Entertainment production" etc. (see section 3.3. MoU).

15. The Court of Appeal is of the opinion that this use must also be considered trade name use for the same reasons as why the use of the name RAT PACK (FILMPRODUKTION) of Rat Pack DE in the opening title and credits is to be considered trade name use. The fact that the use may also constitute use as a service mark does not detract from this. It happens regularly that the use of a sign can be qualified as trade name use..

16. Furthermore, it is not disputed that films on which the foregoing depictions of RATPAC ENTERTAINMENT appear have been shown in the Netherlands in cinemas, that these are mostly blockbusters, which have generated billions of dollars in cinema sales and have thus been seen by many visitors and that such films are very regularly are released.

Case number: 200.273.637/01

9

17. For a prohibition under Article 5 of the Hnw it is necessary and sufficient that the use thereof may lead to confusion on the part of the public between the company which uses and/or wishes to use this trade name and a company which has previously been run under the same name, or a name that differs from it only slightly. This can be direct confusion (the public mistakes one company for the other) or indirect confusion (the public assumes that the two companies are economically linked). Whether confusion is likely must be assessed taking into account all the circumstances of the case, including, but not limited to, the nature of the undertakings/the type of business carried on. This involves a global assessment of the entire trade names in terms of their visual, aural and conceptual characteristics, in relation to the nature of the undertakings and all other circumstances of the case. Visual characteristics include logos used and any other visual design. Furthermore, the question of whether confusion is likely must be assessed from the perspective of the normally attentive public and its possible (specialist) knowledge of the relevant market segment. If the trade names are used nationwide, the place of establishment of the companies involved, as mentioned in Article 5 Hnw, does not play a role as a relevant circumstance. [5]

18. Ratpac US states regarding the relevant audience that the eligible audience for film financing companies consists of companies or individuals producing or seeking financing for films and excludes the normal (viewing) audience. Film financing is not a business-to-consumer (B2C) activity, but exclusively a business-to-business (B2B) activity, so the eligible audience is a knowledgeable audience with specific knowledge, according to Ratpac US. It argues that the eligible audience for film producers consists of knowledgeable audiences with specific knowledge, namely companies or individuals who wish to participate in the production of a film and that film production is also not a B2C, but a B2B activity. It relies in this respect to a number of decisions in (administrative) trademark cases.

19. In the context of a trademark case, the relevant public to be considered is more limited than the relevant public in a trade name case. To assess the question of whether there is a trade name infringement, the relevant public must be considered to be the general public consisting of all persons who in any way come into contact with the products of the parties, in this case the films to the realization of which Rat Pack DE or Ratpac US cooperated. This includes not only the above mentioned professional companies and persons and other professional audiences such as distributors, TV broadcasters, cinema operators, DVD traders etc., but also and in particular the consumer/end-user of the films, who watches the films or trailers (in the cinema, via TV, internet, streaming services or DVD/Blu ray). This general film-viewing audience sees both the films of Rat Pack DE, where the opening title and credits list RAT PACK FILMPRODUKTION as the producer, and the films financed by Ratpac US, where RATPAC ENTERTAINMENT is listed in the same places. The circumstance that Rat Pack DE produces primarily children's and youth films and Ratpac US is involved in major Hollywood productions does not alter the fact that the general movie-viewing audience that comes into contact with these films will be at least partially the same.

---

[5] Cf. HR 19 February 2021, ECLl:NL:HR:2021 : 269 (DOC Dairy Partners) .

Case number: 200.273.637/01

10

Not only does Rat Pack DE also make films for adults that are screened or available in the Netherlands, such as Die Welle, Fack Ju Göthe and Wir sind die Welle, but in addition, adults (as companions to the cinema, financer of DVDs and film visits etc and by watching via TV, internet, etc.) also come into contact with children's and youth films and children automatically become adults.

20. The court considers that the trade name RAT PACK ENTERTAINMENT differs from the trade name RAT PACK FILMPRODUKTION only to a very small extent. The elements RAT PACK and RATPAC are the most decisive for the overall image of both trade names, as the elements ENTERTAINMENT and FILMPRODUKTION are descriptive. RATPAC and RAT PACK are aurally identical. The logo in the trade name of Ratpac US will not be pronounced. It is not disputed that the names are conceptually identical in that they can both be understood as referring to the legendary group of Hollywood actors known as The Rat Pack: Frank Sinatra, Dean Martin, Sammy Davis Jr, Yoey Bishop and Peter Lawford. The fact that RATPAC is also a contraction of the surnames of the company's founders does not change that, now that the relevant audience will generally be unaware of it. Although there is a visual difference between the trade names, in the opinion of the Court this is insufficient to judge differently about the aforementioned similarity between the trade names, also taking into account the aural and conceptual similarity. After all, words are in general more decisive for the overall picture than logos and in the opinion of the Court of Appeal this is also the case here, while the depicted logo of Ratpac US (which, as the Court of Appeal observes, is a stylized combination of an R and a P) also refers to the name RATPAC.

21. In terms of the nature and activities of the companies, they are related, as both companies are involved in the creation of films: Rat Pack DE produces films, while Ratpac US is involved in the production of films to the extent that it or a company belonging to its group finances them. The activities of both companies result in a similar product, namely a film, for the general film-viewing public. The parties disputed the answer to the question of whether, and if so to what extent, Ratpac US also plays a role in the creative content decisions made in the production of a film. In the opinion of the court of appeal this is not decisive for the assessment of the relatedness of the companies. It has not been argued or shown that the relevant general movie-viewing public knows the differences between the activities of Rat Pack DE and Ratpac US, or at least will attach decisive importance to them. This applies all the more since Ratpac US presents itself in the opening title and credits as co-producer of the film (see consideration 16). The fact that the parties have different places of business and have no other commercial activities in the Netherlands than those mentioned above does not alter this.

22. In view of the aforementioned similarity between the trade names used, the nature of the companies as presented to the general movie watching public and the circumstance that this public is confronted with the trade names in practically the same manner when watching a movie, namely in the opening title and the credits, the Court of Appeal is of the opinion that (indirect) confusion between the companies is to be feared among this public. As Ratpac US rightly argues, there can only be a likelihood of confusion in the Netherlands if the Dutch public is or will actually be confronted with both trade names. As considered above, both films in which RATPAC ENTERTAINMENT is mentioned and films in which RAT PACK FILMPRODUKTION is mentioned have been and are being screened in the Netherlands.

In addition, the trade name RAT PACK FILMPRODUCTION has, also on the basis of other uses, a protectable reputation in the Netherlands. The films with the mention RATPAC ENTERTAINMENT are films with a large turnover and ditto visitor numbers. The Dutch audience that watches films is therefore confronted with both trade names. The fact that Rat Pack DE focuses on children's/youth films and art house films that are basically in German and Ratpac US focuses on large Hollywood productions in English, does not detract from the likelihood of confusion. The audience that watches Hollywood films and the audience that watches children's/youth and/or arthouse films will overlap at least in part. It has not been argued or shown that there are relevant differences between arthouse films and Hollywood films in this respect. The fact that adults also view children's and youth films has been considered above. Since it is sufficient for an infringement to be assumed that there is a likelihood of confusion, it is not necessary for the trade name of Ratpac US to have a reputation worthy of protection, or that there is demonstrable actual confusion.

23. Now that the court is of the opinion that between the companies of Ratpac US and Rat Pack DE there is a likelihood of confusion in the Netherlands among the general film-viewing public due to the use of the trade name RAT PAC (ENTERTAINMENT) in the Netherlands, Rat Pack DE can oppose the use of that trade name in the Netherlands. The use of that trade name will therefore, for the reasons stated below in limited form, be prohibited. A prohibition is not precluded by Ratpac US's assertion that the film financing is provided by various companies belonging to the Ratpac group. Nor has it drawn the conclusion from this assertion that the claims must be dismissed for this reason. The trade name / the service mark of which Ratpac US is the holder is apparently mentioned (partly) on its instructions, or at least with its permission, in the opening title and the credits, and from its defense with respect to the running-off period (numbers 110 to 112 Conclusion of Reply) it can also be concluded that it has the power to stop this use (or have it stopped).

24. Based on the above, grievance 5 succeeds and Rat Pack DE has no interest in dealing with grievance 4, directed against the judgment that no confusion is to be expected among the professional public, has no interest..

*The claims*

25. Rat Pack DE seeks a general ban on using the designation RATPAC as a trade name and service mark in the Netherlands, including use on business documents and advertising, more specifically in opening titles or the credits of films as well as on websites that are partly or exclusively aimed at the Netherlands.

26. Ratpac US has disputed the claim to prohibit it from using its trade name on its websites, stating reasons. It argues that its website(s) is not aimed at the Netherlands and that it (therefore) does not use its trade name or trademark through its website(s) in the Netherlands, so that there can be no likelihood of confusion, (in which respect it notes that Rat Pack DE has not even suggested that any use on any website of Ratpac US would cause confusion) and that Rat Pack DE also has no legitimate interest in this claim. On the same grounds it disputes the claim to order it to set up its website www.ratpacentertainment.com or any other URL containing the element ratpac by means of geoblocking in such a way that it can no longer be consulted from the Netherlands. Now that Rat Pack DE has not responded to this, the Court deems it insufficiently established to assume that Ratpac US uses (a) website(s) that is (are) also aimed at the Netherlands and the claims related to websites of Ratpac US will be dismissed.

27. Insofar as the claims relate to use other than use of the trade name in the opening title and/or credits of films, the claims will also be rejected for lack of any substantiation. Rat Pack DE has not claimed anything about other use in the Netherlands. It is true that Rat Pack DE has submitted some DVD covers on which RATPAC is mentioned (as production 12), but it has not claimed anything about use of DVDs or DVD covers in the Netherlands, while the submitted covers, in view of the German text on them, are apparently destined for the German-speaking market. The Court of Appeal will therefore limit the prohibition to mentioning the designation RATPAC in the opening title and/or the credits of films to be screened in the Netherlands. After Ratpac US had objected in first instance to a prohibition with regard to films that had already been released, Rat Pack DE limited its claim to films that were to be newly released. During oral arguments on appeal, it confirmed that it is also limiting its claim to this extent on appeal. The prohibition to be awarded will therefore be limited to this extent. The Court understands that this implies that the run-off period included in the petition is no longer part of the claimed claim. That Rat Pack DE also has a legitimate interest in a prohibition of the use of the service mark RATPAC has not been (reasoned) stated or demonstrated. To that extent the claimed will be rejected. Also in view of the defence put forward against the amount of the claimed periodic penalty payment, the amount of the periodic penalty payment will be reduced as indicated in the operative part. the dictum. The Court of Appeal will not maximize the amount of the periodic penalty payment, because there are always new films are being released all the time and the films in which Ratpac US is involved involve large amounts of money.

**Conclusion and costs**

28. The above means that the judgment will be set aside and that Ratpac US will as yet be prohibited from using the designation RATPAC as trade name in the Netherlands in the opening title and credits of new films to be released after service of this judgment. Ratpac US will be ordered to pay the costs of the proceedings at first instance and on appeal as the party that is largely unsuccessful. Ground 6, directed against the order of Rat Pack DE to pay the costs of the proceedings in the first instance, therefore also succeeds. The subsidiary/contingent ground for appeal, directed against the amount of the legal costs in which Rat Pack DE was ordered to pay, does not need to be addressed, because the condition has not been met.

29. Rat Pack DE sought an order that Ratpac US pay reasonable and proportionate costs pursuant to section 1019h of the Code of Civil Procedure. claimed. In the first instance she submitted a specification of the costs of her lawyer and her other costs (excluding VAT and office costs) in that instance amounting to € 13,852.11. She submitted a specification of the costs of her lawyer and of her other costs in appeal (excluding office costs and VAT) amounting to € 11,021.21. Based on the judgment of the Supreme Court of 4 December 2015, ECLI:NL:HR:2015:3477 (LMR), the court of appeal has to decide on its own initiative on the awardability of the legal costs and their amount. The Court of Appeal is of the opinion, together with Rat Pack DE, that this case in the first instance and on appeal is to be regarded as a normal case on the merits within the meaning of the applicable Indication Tariffs in IP Cases of the District Courts and the Court of Appeal respectively, for which the maximum indication tariff is €17,500 and €20,000 respectively. Taking into account that Rat Pack DE itself is of the opinion that 80% of its costs in the first instance are to be attributed to IP-related grounds and that this is not less in the opinion of the Court of Appeal, the Court of Appeal will also proceed on the basis of this. Therefore, 80% of the lawyers' fees in the first instance to the amount of € 12,499 will be awarded, to be increased by € 271.20 (20% on the basis of the liquidation rate, calculated in conformity with the judgment in section 4.22) and the specified other (undisputed) costs to the amount of € 1,353.11, so a total of € 11,623.51. In appeal no significant attention has been paid to non-IE legal grounds and the Court of Appeal will award the claimed costs, which are less than the aforementioned maximum indicative rate.

Case number: 200.273.637/01

13

**Decision**

The court:

annuls the judgment of 9 October 2019 rendered between the parties by the District Court of The Hague and rendering new justice,

- prohibits Ratpac US from using the designation RATPAC in the Netherlands in the opening title and/or the credits of films, which are released for the first time after service of this judgment;

- Decides that Ratpac US shall forfeit a penalty payment of € 2.000, per day that it does not comply with this prohibition;

- orders Ratpac US to pay the costs of the proceedings in first instance, estimated on the side of Rat Pack DE at € 11,623.51; rejects the more' or otherwise claimed;

- Rejects the more or otherwise claimed;

orders Ratpac US to pay the costs of the appeal, estimated at € 11,021.21;

declares the above mentioned orders to be provisionally enforceable;

rejects the more or otherwise claimed on appeal.

This judgment was rendered by A.D. Kiers-Becking, M.P.J. Ruijpers and R.S Le Poole and was pronounced at the public hearing on 14 September 2021, in the presence of the Registrar.

Voor grosse aan:
Uitgegeven aan mr. D.-E- Stols
Advocaat van: app./geïnt.
De Griffier van het Gerechtshof
te Den Haag