

# MARITIME AND COMMERCIAL COURT JUDGMENT

**issued on 1 November 2021**

**Case BS-33436/2020-SHR**

RatPac Entertainment, LLC
(Christian L. Bardenfleth, lawyer, v Pelle Clapp, lawyer)

vs.

The Board of Appeal for Patents and Trade Marks

(Sanne H. Christensen, lawyer)

Lead intervener for the defendant:
Rat Pack Filmproduktion GmbH
(lawyer Mikkel Kleis)

This decision has been taken by Vice-President Mads Bundgaard Larsen together with the expert members Henrik Gundelach and Tina Bøggild.

**Background to the case and the parties' submissions**

This action, brought on 27 August 2020, is directed against the decision of the Board of Appeal for Patents and Trade Marks of 8 April 2021 refusing registration of the word mark applied for, RATPAC, for 'production and distribution of television programs and films' in Class 41.

More specifically, the issue in the case is whether Rat Pack Filmproduktion GmbH had, as stated in the Board of Appeal's decision, acquired trade mark rights through the use of the word mark RAT PACK in Denmark for film production, within the meaning of Article 3(1)(2) of the current Trade Mark Act, prior to the priority date of RatPac Entertainment's application for registration of the word mark RATPAC on 17 June 2014.

The applicant, RatPac Entertainment, LLC, claims that the Court should

Order the Board of Patent and Trademark Appeals to recognize the applicant's provisionally registered mark VR 2015 02390 RATPAC <w> may be registered definitively for all the services applied for in Class 41.

Pleas in law and main arguments

Re head of claim 2: Dismissal of the appeal.

The defendant, the Board of Appeal for Patents and Trade Marks, claims that the Court should dismissal of the action.

The main intervener, Rat Pack Filmproduktion GmbH, claims that the Court should Form of order sought

Claim 1

RatPac Entertainment, LLC shall admit that Rat Pack Filmproduktion GmbH prior to the priority date of VR 2015 02390 RATPAC <w> created a right to trade mark RAT PACK for film production in Denmark.

Claim 2

RatPac Entertainment, LLC shall acknowledge that use of the mark RATPAC <w> for 'production and distribution of television programs and films' and 'financing of feature films' in Denmark constitutes an infringement of Rat Pack Filmproduktion GmbH's rights in the trademark RAT PACK.

The information in the case

The companies involved RatPac Entertainment, LLC (hereinafter RatPac Entertainment) is an American film producer, founded in 2013 by Brett Ratner and James Packer. RatPac Entertainment has co-produced a number of major Hollywood films.

Rat Pack Filmproduktion GmbH (hereinafter Rat Pack GmbH) is a German film producer, founded in 2002 by Christian Becker and Constantin Film AG. Rat Pack GmbH produces both cinema and television films, video-on-demand series and international event productions.

The course of the case

RatPac Entertainment filed an EU trade mark application for the word mark RATPAC with priority from 17 June 2014, which was then converted into a Danish trade mark application on 18 June 2015, maintaining the original priority date.

On 5 May 2017, the Patent and Trade Mark Office decided opposition proceedings VR 2015 02390 RATPAC <w> between opponent Rat Pack GmbHand proprietor RatPac Entertainment.

The decision states, inter alia:

"**Assessment of the opponent's in use trade mark right, cf. section 15(4)(2) of the Trade Mark Act**
The opponent has claimed a right to the trade mark RAT PACK by putting it into use in Denmark.

2

The opponent has submitted documentation showing that the opponent has acted as a production company on a series of children's films, consisting of 3 films, which were released in Denmark in 2013. The information on the film indicates that one of the production companies behind the film is Rat Pack Filmproduktion. On the back of the DVDs shown, the name appears in a logo design:



In addition, the objector has shown documentation for the production of the  film  Wave, broadcast in Denmark in 2009. The opponent  has submitted figures for the opponent's paid-out revenues from the Danish market for the children's film series for the period January-June 2015.

In addition to the information on the film releases, the respondent has shown that the children's film series can be purchased in Danish online shops and can be borrowed from the library.

It is the Board's opinion that the opponent has not proven that a trademark right has been acquired through use. The Respondent has shown that it has acted as a production company on 1 film series consisting of 3 films, released in 2013 and a single film in 2009. It is not possible to ascertain the distribution of the film series and hence the extent of the opponent's use from the information on payments in the first half of 2015.

It is not sufficiently clear from the evidence as a whole what the extent of the opponent's use of the mark has been, and the examples of use shown does not make it possible to establish that third parties had the opportunity to become acquainted with the use of the mark.

The Board is therefore of the opinion that the opponent has not proved a right in use which is eligible for protection under Section 15(4)(2) of the Trade Mark Act."

The decision of the Patent and Trade Mark Office was then appealed to the Board of Appeal for Patents and Trade Marks, which on 28 February 2018 upheld the decision appealed against. In that connection, the Board of Appeal stated, inter alia, the following:

"The assessment of whether the complainant has obtained trade mark rights for RAT PACK for 'film production' in Denmark prior to the filing of the application for registration of the converted EU trade mark RATPAC on 16 June 2014 must be made on the basis of a concrete overall assessment of the facts of the case.

It is clear from the evidence submitted that the complainant's company name, RAT PACK FILMPRODUKTION, is reproduced in the body text on the back of the covers of four films and that the RAT PACK logo is reproduced in figurative form as one of several other logos on the backs of those covers.

It also appears from the information in the file that the films in question were released on the Danish market in the period 2008 - 2011. The complainant has submitted turnover figures for three of the films for the period January to June 2015, as well as an undated transcript of a search via the

3

Google search engine, which shows that copies of the films in question were available for sale at that time.

The complainant has also submitted a statement of the number of printed covers for three of the films, without, however, indicating whether they were all used in connection with the sale of copies of the three films during the relevant period. In addition, a single screen print from the uploaded version of one of the four films on YouTube was provided, in which the RAT PACK logo is reproduced.

In the opinion of the Board of Appeal for Patents and Trade Marks, the abovementioned material does not prove that the sign RAT PACK was in use as a trade mark in Denmark at the relevant time in the proceedings on 16 June 2014.

In addition, the complainant has provided evidence that the four films have been lent to varying degrees at 22 different libraries in Denmark in the years 2009-2014, in the form of inventories made at the libraries in question. However, it is not clear from the material submitted whether
and, if so, how the sign RAT PACK is used in that connection, and the lending of the specific copies of the films cannot therefore be regarded as in itself constituting trade mark use of the complainant's sign.

On balance, therefore, the Board of Appeal does not consider that the evidence submitted proves that the appellant has made use of the sign RAT PACK for "film production" in Denmark at the time of filing of the application for registration of the converted trademark RAT- PAC, on 16 June 2014.

For similar reasons, the Board of Appeal considers that it has not been established that the appellant's trade name RAT PACK FILMPRODUKTION enjoys such protection in Denmark that it may constitute an obstacle to registration of the contested mark pursuant to Paragraph 14(4) of the Markengesetz.

Furthermore, the Complainant has not demonstrated to the Board of Appeal that the Respondent was or should have been aware of the Complainant's use of the trade mark RAT PACK at the time of the application for the converted trade mark RATPAC on 16 June 2014. The fact that the Complainant filed an opposition to the registration of the now converted EU trademark does not in itself exclude the Respondent's trade mark from registration under Section 15(3)(3) of the Trade Mark Law, nor has the Complainant otherwise established that the Complainant had or should have had knowledge of the trade mark RAT PACK on 16 June 2014.

**Then it is determined:**
The contested decision is upheld."

On 26 April 2018, Rat Pack GmbH appealed the decision of the Board of Appeal to the Maritime and Commercial Court. During the proceedings, Rat Pack GmbH submitted a number of new documents, which were described in the reply of 12 October 2018 as follows:

"... A screenshot from Statistics Denmark is presented as Annex 64, which shows that 18,091 cinema tickets were sold for the film Die Welle (in Danish: The Wave) in 2008. It should be noted that Statistics Denmark obtains the figures on the basis of reports from Danish cinemas.

4

Annex 65 contains a review of 11 September 2008 in Jyllands Posten, which states that Die Welle premiered in the cinemas Gloria and Vester Vov Vov, Copenhagen, Cafe-Biografen, Odense, Øst for Paradis, Århus and Biffen, Aalborg.

…

A screenshot from the Danish Film Institute's ("DFI") website is provided as Annex 66, showing that The Crocodile Gang is available for streaming for educational use via the Film Centre. It further states that the film can be streamed at local libraries. In addition, a Google search is provided as Annex 67, which shows that the film The Crocodile Gang has been available to the public on the DFI website since 21 January 2010 via the link provided in Annex 66.

A screenshot from the Film Centre's website is attached as Annex 68, showing that the film The Crocodile Gang is available for viewing. In addition, Annex 69 contains email correspondence between the applicant and the Film Centre, which shows that The Crocodile Gang has been available as educational material since 26 June 2013 and that the website has had 7 064 unique page views since that date.

Attached as Annex 70 is a screenshot from the DFI website indicating that the film Die Welle is available on the Videoteket. The annex also shows that the film has premiered in the cinemas Vester Vov Vov, Café Biografen (Odense), Biffen (Aalborg), Gloria, Øst for Paradis (Århus) and Empire. Finally, the annex shows that the film has been reviewed in BT, Berlingske Tidende, Børsen, Ekstra Bladet, Information, Kristeligt Dagblad, Metroxpress, Morgenavisen Jyllandsposten, Politiken and Wee- kendavisen. In addition, a Google search is provided as Annex 71, which shows that the information on the film has been available to the public on the DFI website since 12 September 2008 via the link provided in Annex 70.

Annex 72 contains a screenshot from the Film Centre showing that educational material on the film Die Welle is available.

Annex 73 contains the poster for the film Die Welle, which is available in Annex 4 of the Film Centre's teaching material and which was used for the launch of the film in 2008. It shows the trade marks of the applicant at the bottom of the poster.

Attachment 74 provides evidence that the PDF version of the movie file, shown in Attachment 73, was created on December 19, 2008.

Annex 75 contains email correspondence between the applicant and the Film Centre, from which it appears that the material concerning Die Welle set out in Annex 72 has been available since 26 June 2013 and that the website has had 33,302 unique page views since that date.

…

In addition, it should be noted that all films on loan in the libraries are systematically displayed in their original packaging in the libraries. Annex 76, which shows the DVD cover of the lending copy of Die Welle from Herlev Library sent by librarian Pia Hansen, is provided as documentation of this.

As can be seen, the film is lent in the original DVD cover, on which the applicant's trade marks appear.

This means that all visitors to the Danish libraries where the film can be borrowed, see Annexes 50-53 - and not just the 1,075 or more people who have borrowed applicant's films in the period up to the priority date of the proprietor's trade mark - had the opportunity to acquaint himself with the applicant's trade marks.

As further evidence of the use of the applicant's trade mark RAT PACK, Annex 77 contains a screenshot from IMDB of the film Wickie Auf Grosser Fahrt (Vickie and the Treasure of the Gods), showing that the applicant is the production company for the film.

A screenshot from IMDB is presented as Annex 78, showing that Fil men Vickie and the Treasure of the Gods has won the Politiken Audience Award at the Danish Buster Film Festival 2012.

Exhibit 79 is a screenshot from Youtube showing that the applicant's trademark RAT PACK appears in the trailer for the film Vickie and the Treasure of the Gods.

Annex 80 contains a screenshot from IMDB of the film Wir sind die Nacht (We Are the Night), which shows that the applicant is the production company for the film.

A screenshot of the program of the Copenhagen film festival MIX Copenhagen 2012 is presented as Annex 81, showing that the film We Are the Night will be screened twice at Empire Bio, on Saturday 20 October 2012 and Sunday 21 October 2012.

Attached as Exhibit 82 is a screenshot from Youtube showing that the plaintiff's trademarks and company name appear in the trailer for the film We Are the Night..."

On the basis of this information, the Board decided to reopen the case, which led to a reversal of the Board's previous order of 28 February 2018 by order of 30 June 2020, which states, inter alia:

"**The Board of Appeal states:**
During the proceedings, the complainant submitted new material showing how the complainant's figurative mark, RAT PACK, was used in connection with the sale, distribution and lending of the complainant's films in Denmark, and how the figurative mark was reproduced in connection with the actual playing of these films and in the trailers for them.

The Board of Appeal considers that the evidence submitted proves that the complainant made use of the trade mark RAT PACK for 'film production' in Denmark at the time of filing the application for registration of the converted trade mark RATPAC, on 16 June 2014, in accordance with Article 15(4)(2) of the Trade Mark Law in force at the time of the opposition.

The mark applied for, RATPAC, has a high degree of similarity, both visually and phonetically, to the complainant's mark, RAT PACK. Since the services covered by the application in Class 41, namely 'production and distribution of television programs and films', are identical or similar to the service 'film production', the Board of Appeal considers that there is a likelihood of confusion

6

between the mark applied for and the appellant's mark within the meaning of Article 15(1)(2) of the Trade Mark Law in respect of those services.

**Then it is determined:**
The trade mark applied for is refused for 'production and distribution of television programs and films' in class 41.

On the basis of this order, RatPac Entertainment filed an application in the present case on 27 August 2020, requesting the Board of Appeal to recognize the provisional trade mark registration VR 2015 02390 as definitive for all classes applied for, including 'production and distribution of television programs and films' in Class 41.

During the preparation of the present proceedings, the Board decided to reopen the case on an unlawful basis, considering that a not insignificant procedural error had occurred.

By order of 8 April 2021, which is the subject of the present appeal, the Board of Appeal subsequently annulled its order of 30 June 2020 and, at the same time, took a new decision refusing registration of the mark applied for in respect of 'production and distribution of television programs and films' in Class 41. The order of 8 April 2021 states, inter alia, the following:

"In its reply of 19 January 2021, the applicant (defendant) argued, inter alia, that the Board of Appeal's decision of 30 June 2020 does not explain the weight given to the evidence. The Board of Appeal then found that it was obliged to reopen the case on an unlawful basis, since the Board of Appeal's reasoning in AN 2020 00003 did not contain the main considerations which determined the outcome of the decision and that this is a not insignificant procedural error.

**The Board of Appeal states:**
The Board of Appeal annuls its order of 30 June 2020 and reopens the case on an unlawful basis.

After reopening the case, the Board of Appeal reassessed whether the complainant had proved that it had acquired trade mark rights through the use of Rat Pack prior to the priority date of the defendant's provisional trade mark registration, in accordance with Article 15(4)(2) of the Trade Mark Law in force at the time of the opposition.

The use of a characteristic for the service "film production" can be documented by providing evidence that the characteristic has been used in Denmark in connection with the films produced by the proprietor and marketed and distributed on the Danish market.

The complainant has provided evidence of the use of the RAT PACK for and in connection with four such films, namely the film THE WAVE and the three films in the Crocodile Gang series, namely THE CROCODILE GANG, THE CROCODILE GANG RETURNS and THE CROCODILE GANG - ALL FOR ONE.

As regards the film THE WAVE, it was shown and seen in Danish cinemas, see Annex 70 and Annex 64, and has been available on DVD. The complainant's figurative mark, RAT PACK, is

7

clearly reproduced as an independent characteristic on the film poster, see inter alia Annex 73, just as it clearly appears on the cover of the DVD copy of the film, see inter alia Annex 76.

The complainant's figurative mark also appears clearly and as an independent distinctive sign on the covers of the DVD copies of the three films about the Crocodile Gang that are available in English, see Annexes 24, 34 and 44, and the mark is reproduced in the trailers for the films that have been published on YouTube, see Annexes 22, 32 and 42.

It is against this background that the Board of Appeal finds that the Complainant has established trade mark use of Rat Pack for 'film production' prior to the priority date of the Respondent's provisional trade mark registration, pursuant to Section 15(4)(2) of the Trade Mark Law.

The mark applied for, RATPAC, has a high degree of similarity, both visually and phonetically, to the complainant's mark, RAT PACK. Since the services covered by the application in Class 41, namely 'production and distribution of television programs and films', are identical or similar to the service 'film production', the Board of Appeal also considers that there is a likelihood of confusion between the mark applied for and the appellant's mark, within the meaning of Article 15(1)(2) of the Trade Mark Law, in respect of those services.

### The following are then determined
The order of the Board of Appeal of 30 June 2020 is set aside.

The trade mark applied for is refused for 'production and distribution of television programs and films' in class 41.

For the purposes of the decision of the Maritime and Commercial Court in the case, Rat Pack GmbH has submitted a number of documents, including lists of the number of library loans, screen prints from various websites, turnover statements, e-mails with information on the number of cinema tickets sold, distribution agreements, film posters, DVD11 covers, term sheets, etc., all relating to the films "The Wave", "The Crocodile Gang 1-3", "Vickie and the Treasure of the Gods" or "We are the Night". During the main hearing, trailer clips and introductions to several of the films mentioned above were also shown.

This material was also submitted to the Board of Appeal and it can therefore be assumed that no new information was submitted to the court in relation to the basis of the Board of Appeal's decision of 8 April 2021.


### Views of the parties
For RatPac Entertainment, LLC, the proceedings have been conducted substantially in accordance with the Summary of Proceedings dated August 17, 2021, which states:

"...**3  APPEALING**

In support of the action, the applicant submits, in general, that Rat Pack Filmproduktion GmbH did not acquire trade mark rights by putting the mark 'Rat Pack' into use prior to the priority date of the applicant's previously registered trade mark VR 2015 02390 RATPAC <w> on 17 June 2014.

In their previous decisions, both the Patent and Trade Mark Office and the Board of Appeal have taken a position and considered that both the extent and the nature of the use of the trade mark "Rat Pack" by Rat Pack Filmproduktion GmbH do not satisfy the requirements for the creation of trade mark rights in the trade mark as a result of that use.

The applicant submits that the evidence submitted by Rat Pack Filmproduktion GmbH in Annex 7, which appears to have been decisive for a contrary decision of the Board of Appeal, merely confirms the extent and nature of Rat Pack Filmproduktion GmbH's use of the trade mark 'Rat Pack', as it had already been submitted to the Patent and Trade Mark Office and the Board of Appeal in their previous decisions.

It is therefore submitted that the Board's subsumption and application of Section 3(1)(3) of the Trade Mark Act in AN 2020 00003 and AN 2021 00008 is incorrect and contrary to its own earlier decision in the same case (AN 2017 00014), and that the decision consequently results in too lenient a threshold for the establishment of trade mark rights through use, contrary to current Danish and European case-law in trade mark law.

Thus, it is submitted that the decision of the Board of Appeal in case AN 2020 00003 as well as AN 2021 00008 is in fact a reassessment of the same factual information that was available in case AN 2017 00014, as in the applicant's view no new factual information has emerged in the case.

### 3.1    Requirements for the creation of trade mark rights by use

It follows from Article 3(1)(3) (then Article 3(2)) of the Trade Marks Act that trade mark rights may be established by "use of an individual trade mark in this country in respect of the goods or services for which the trade mark is put to genuine use, where such use is of a more than local character. "

The applicant refers to the fact that the assessment of whether the trade mark is established by use is based on the same criteria as the assessment of whether the obligation to use the trade mark is fulfilled, see in this respect the judgment of the Court of Justice in Case C-12/12, paragraph 33 (Levi Strauss). The establishment of trade mark rights is thus assessed according to a number of criteria, but the guiding principle will always be whether the mark is actually perceived as indicating the origin of a product. "The essential function of the trade mark is to identify to consumers the undertaking from which the product originates", C-12/12, paragraph 26.

The obligation to use was, for example, the reason why MOBIL had its trademark revoked in the case AN 2005 0004,6 since the specific documented use of the word MOBIL was not trademark use.

Reference can also be made to the judgment of the Court of Justice in C- 689/15, which concerned the obligation to use a mark used by a number of manufacturers as a special quality mark. The criterion for such a quality mark to be considered in use was that it "... guarantees to the consumer that those goods come from a single undertaking which controls the production of those goods and which can be held responsible for their quality".

Furthermore, the Patent and Trademark Office's guidelines on "Rights in Trademarks Created by Use" state that there are "(...) certain requirements as to the intensity, duration and geographical extent of use".

To this end, the Board sets out as an overall criterion that: 'the essential thing is that the relevant public has had the opportunity to become aware of the use made of the mark in a sufficiently effective manner."

### 3.2     The documentation provided to support the use of the "Rat Pack"

In the proceedings before the Patent and Trade Mark Office, the Board of Appeal and the Maritime and Commercial Court respectively, Rat Pack Filmproduktion GmbH has referred to the marketing of four feature films ('Die Welle' from 2008 and 'Die Vorstadtkrokodile' 1-3 from 2009, 2010 and 2011) as the basis for having used the trade mark 'Rat Pack' and has submitted evidence in support thereof relating to the nature and extent of the distribution of those films.

The applicant submits in general terms, in relation to the evidence submitted, that the nature of the use shown of the mark 'Rat Pack' itself in the marketing of the abovementioned films is so minor and inconsistent that the relevant public has not had the opportunity to become aware of the use of the mark shown in a sufficiently effective manner. In the light of the fact that the films in question have achieved an extremely modest circulation and income in Denmark, there is therefore no basis for Rat Pack Filmproduktion GmbH to have established trade mark rights. to the trade mark 'Rat Pack' within the meaning of Paragraph 3(1)(3) of the Markengesetz.

The documented use of Rat Pack Filmproduktion GmbH's "Rat Pack" brand in Denmark shows only very limited use of the "Rat Pack" brand in the marketing of the films. It can be mentioned for each film that the films are not marketed as a "Rat Pack" or "Rat Pack Film- produktion GmbH" film.

By way of illustration, the film credits provided in sub-annexes 5.18, 5.19, 5.29, 5.30, 5.39, 5.40, 7.68 and 7.72 show no mention of the Rat Pack Filmproduktion GmbH brand or even the name Rat Pack Filmproduktion GmbH. Sub-Annex 7.66 even lists "Constantin" as the producer of the film "Krokodilbande", while Sub-Annex 5.20 lists the studio as "Angel Films" and the publisher as "Imperial Entertainment", but no reference to Rat Pack Filmproduktion GmbH or "Rat Pack" as a sign.

This is further evidenced by the DVD covers provided by Rat Pack Filmproduktion GmbH for "Krokodillebanden", "Krokodillebanden Vender Tilbage!" and "Krokodillband Alle Für Einen!", that "Angel Films presents" (on the front of the cover), where Angel Films' website and "© Angel Films All rights re- served" text also appear on the back of the cover cf. sub-annexes 5.24, 5.34, 5.44 and 5.45. However, the 'Rat Pack' sign is placed at the bottom of the back of the covers in question, among between 9 and 14 different logos, without any particular emphasis, and 'Rat Pack Filmproduktion' is only included in the body text in small print at the bottom of the back.

Similarly, the film "Die Welle" ("The Wave") is marketed with the "Atlantic" logo on the front of the DVD cover, whereas "Atlanticfilm.se" appears on the back of the cover, see sub-exhibit 6.10. Here, "Rat Pack" appears on the back alone, placed in a row of 7 logos, with 10 other logos in a row further down in the same size.

10

The alleged use of "Rat Pack" on the films themselves is therefore extremely limited and of a minor nature and does not constitute trade mark use as marketed.

Rat Pack Filmproduktion GmbH has provided a number of attachments related to trailers for the above films on YouTube. Sub-Annex 5.21 (and 5.22) refers to a trailer which has been viewed 14,000 times, Sub-Annex 5.31 (and 5.32) refers to a trailer which has been viewed 10,000 times, while Sub-Annex 5.41 (and 5.42) refers to a trailer which has been viewed 96,000 (118,000 as of today) times. Common to these trailers, however, is that it is not known how many times they have been viewed in the period from when they were made available (autumn 2013) to the priority date in 2014, as all annexes involve screen prints made several years after the priority date, and it is not known to what extent they involve viewings in Denmark or abroad. Therefore, the evidential value in terms of number of views will be limited. As regards the use of the figurative sign "Rat Pack Film Production" as shown in screenshot submitted as sub-annexes 5.22, 5.32 and 5.42, it is noted that this display appears as number 2 out of 3 characters which are shown in a quick sequence of 2 seconds in total, so that it is clear for all trailers that a viewer will not be able (or only to a very limited extent) to perceive the use of the figurative sign "Rat Pack Filmproduktion" in the trailer, which is thus shown in a fraction of a second, as also argued by the Board of Appeal in the defence, see Annex 6. Furthermore, it should be noted that "Rabalder Bio" is the sender of the video (as shown in sub-annexes 5.22, 5.32 and 5.42).

In addition to the very limited use of the 'Rat Pack' label on the films themselves, the films have only been distributed to a very limited extent in Denmark, as Rat Pack Filmproduktion GmbH's own statement also shows in 'Supporting Annex 1', sub- Annex 5.54a. Moreover, a number of the lending figures provided relate to a period after the date of application and cannot therefore be taken into account in the assessment.

The limited distribution of the films in Denmark is clearly confirmed by the turnover figures submitted to the Maritime and Commercial Court, which show Rat Pack Filmproduktion GmbH's turnover in Denmark in sub-annexes 5.23, 5.33 and 5.43. These figures all show an identical turnover of EUR 5 000 for each film, which - apart from having to be regarded as a very small turnover for a feature film - must therefore be assumed to be solely an expression of the advance payment made by Rat Pack Filmproduktion GmbH, in accordance with the distribution agreements submitted in sub-annexes 5.26 and 5.36 (point 10) and sub- annex 5.47 (point 9), and not turnover vis-à-vis consumers, which could not therefore have exceeded the advance payment agreed with the distributor Atlantic.

### 3.3   The Board of Appeal's assessment of the evidence submitted

The applicant submits that the Board of Appeal had already ruled on, assessed and rejected that the evidence submitted for the marketing of four feature films ('Die Welle' from 2008 and 'Die Vorstadtkrokodile' 1-3 from 2009, 2010 and 2011) could form the basis for Rat Pack Filmproduktion GmbH's use of the 'Rat Pack' mark, see the Board of Appeal's decision in Case AN 2017 00014.

In its response (Annex 6, p. 3), the Board of Appeal argued that the annexes (Annex 5 with sub-annexes) and information on the four films submitted in the summons had already been taken into account in the Board of Appeal's assessment and did not prove that the mark 'Rat Pack' had been put to use as a trade mark:

"Rat Pack Filmproduktion GmbH **has not shown that there are grounds for rejecting the Board of Appeal's finding that Rat Pack Filmproduktion GmbH had not acquired trade mark rights in the distinctive sign** RAT PACK through use prior to 16 June 2014. The Board of Appeal understands the information in the application to mean that Rat Pack Filmproduktion GmbH has used the Rat Pack mark in Denmark only in connection with the distribution of the four films 'Die Welle' from 2008 and 'Die Vorstadtkrokodile' 1-3 from 2009, 2010 and 2011.

**However, the information on the four films, which was also included in the case before the Board of Appeal, does not prove that Rat Pack Filmproduktion GmbH had put the RAT PACK trademark into use** in Denmark before 16 June 2014."

Against this background, the applicant understands that the basis for the Board of Appeal's decision to reopen the case and a decision to the contrary in Case AN 2020 00003 is based on Rat Pack Filmproduktion GmbH's annexes submitted in reply (Annex 7 with sub-annexes).

The applicant submits that the document shown in Annex 7 (with sub-annexes) does not contain any new factual information (of relevance) concerning the use of the trade mark 'Rat Pack' by Rat Pack Filmproduktion GmbH which has not already been included in the Board of Appeal's previous decision. The defendant therefore submits that the Board's decision in AN 2020 00003 is not based on a new factual basis different from the Board's decision in AN 2017 00014, and that the Board's subsumption and application of Article 3(1)(3) of the Trade Mark Law in AN 2020 00003 is therefore incorrect and contrary to its own earlier decision in the same case.

The documentation provided in sub-annexes 7.64-7.82 consists of documentation which merely confirms the documentation already provided on the use of the Rat Pack or documentation which does not show the use of the Rat Pack mark (e.g. film clips without use of/references to the Rat Pack).

The same applies in relation to the new decision of the Board of Appeal in case AN 2021 00008. There is thus nothing in the Board's new decision of 8 April 2021 (Annex A) (AN 2021 00008) to alter the fact that the Board's subsumption and application of section 3(1)(3) of the Trade Marks Act is incorrect and contrary to its own earlier decision in the same case.

In the period between the new decision of the Board of Appeal of 8 April 2021 and the earlier decision of 30 June 2020, no new evidence has been submitted in support of the entry into service. The Board's new decision on entry into service is therefore based on the same evidence as the previous decision, the only difference being that the Board has now specified in the new decision the evidence which was given more precise weight in the decision. The Board of Appeal does not therefore refer to such new material in the decision.


As regards the film The Wave, the Board of Appeal states in its new decision that the figurative mark Rat Pack is 'clearly' reproduced as a distinctive sign on the film poster and the cover of the DVD copy of the film, and refers in that

Annexes 73 and 76. Similarly, the Board finds that the Rat Pack logo appears "prominently" and as a distinctive feature on the covers of the DVD copies of the three Crocodile Gang films and refers to Exhibits 24, 34 and 44.

RatPac in particular disputes that the use should be obvious. In that connection, it must be emphasised that the relevant factor to be considered in relation to the question of putting into service is the Rat Pack word element in the examples shown, in which the figurative mark is included.
In particular, the word element is very small and difficult to read, measuring approximately 2 millimetres in height out of the total DVD cover of approximately 185 millimetres. The use is therefore extremely limited and of a minor nature and does not constitute trade mark use in the way in which the films are marketed.

Moreover, the annexes referred to by the Board of Appeal in its response in support of the Board of Appeal's new assessment have very limited probative value (if any) on the question whether a trade mark right was created by putting into use on 17 June 2014.

In general, any evidence supporting that a trade mark right should have been created by putting it into use must show both how the mark has been used, the intensity of such use and the geographical extent of such use (foreign use obviously does not count) which pre-dates the relevant priority date. This also follows from the Patent and Trademark Office's guide- lines on "Rights in Trademarks Created by Use".

When the Board of Appeal refers in its response to printouts from the website IMDB.com (Annexes 7.78 and 7.80), these are therefore annexes which are of extremely limited value (if any at all) in terms of documenting the use of a trade mark in Denmark, since they are not websites directed at Denmark (on the contrary).

Similarly, a statement in Annex 7.75 (documentation for the screening of the print presented in Annex 7.70) from the Danish Film Institute that since the 26 June 2013 has been 33,302 unique views, also very uninformative about the intensity of use shown, as these views are a count over a period of more than 5 years, of which only 12 months fall within the relevant period, i.e. before the priority date of 17 June 2014. This is legal evidence, to which the Board of Appeal specifically refers in its reply, and which has very limited probative value.

In addition, the reply gave the impression that the DVD cover of the film "The Wave" (shown in both Annex 5.10 and Annex 7.76) was only submitted after the first decision of the Board of Appeal, which is not correct, as this DVD cover was already included in the Board of Appeal's consideration in the first decision, see e.g. Annex 4, p. 9. As already noted, the nature of the use of the trade mark Rat Pack on this cover is extremely minimal, with 'Rat Pack' appearing only on the back placed in a row of 7 logos, with a further 10 logos on a row further down in the same size. The film is actually marketed primarily under the "Atlantic" label on the front cover of the DVD, with "Atlantic-film.se" appearing on the back cover.

It must also be rejected that the German trailer for the film "Vickie and the Treasure of the Gods" on YouTube (Annex 7.79) or an English trailer on YouTube for the German film "We are the Night" (Annex 7.82) can have any probative value in the question of the use of a trademark in Denmark.

With regard to the evidence provided on the distribution of the film "Bølgen" / "Die Welle", the Board of Appeal refers to the figures provided on turnover (Annex 5.5), cinema tickets sold (Annex 7.64) and the trailer for the film (Annex 5.9).

However, the turnover does not show the Main Intervener's earnings from the film (which must be assumed to be considerably lower); and the number of cinema tickets sold must be seen in the light of the fact that this number of cinema tickets sold places the film in 101st place for most cinema tickets sold in Denmark in 2008 according to Statistics Denmark, which only underlines that this is a niche film. When this is coupled with the fact that the film is not marketed as a 'Rat Pack Filmproduktion GmbH' film or under a brand containing 'Rat Pack', the distribution of the film 'Bølgen' thus does not demonstrate any brand usage, whereby the relevant circle of sales has the opportunity to become aware of such a brand.

RatPac does not dispute that a global assessment of all the facts of the case must be made as to whether trade mark rights have been established upon putting into service.

Nor is it correct that RatPac's views in the case are based on a suggestion that the Board made 'a fragmented and isolated assessment of the individual documents' in its assessment. On the contrary, RatPac's views in the present case are based on all the evidence submitted concerning the use of the trade mark 'Rat Pack' (or lack thereof).

On the other hand, the fact that the Board of Appeal, in its response, places particular emphasis on documentary evidence which, according to current trade mark practice, has very little probative value for the use of a trade mark (if any), clearly indicates that the Board of Appeal's assessment of the evidence is incorrect.

As has already been stated in the application, for each of the films shown in the proceedings with a fairly narrow distribution in Denmark (the films in the "Krokodillbande"' series and 'Bølgen'), it can be stated that they are not marketed as 'Rat Pack' or 'Rat Pack Filmproduktion GmbH' films. The nature of the use shown of the trade mark 'Rat Pack' itself in connection with the marketing of the abovementioned films is so subordinate and
inconsistent that the relevant public has not had the opportunity to become aware of the use shown of the trade mark in a sufficiently effective manner.

That must be seen in the light of the fact that the films in question have achieved a very limited distribution and income in Denmark, and there is therefore no basis for Rat Pack Filmproduktion GmbH to have established trade mark rights in the mark 'Rat Pack', within the meaning of Paragraph 3(1)(3) of the Markengesetz.

### 3.4 The Maritime and Commercial Court must carry out a thorough and exhaustive examination of the decision of the Board of Appeal

RatPac submits that the Maritime and Commercial Court must carry out an exhaustive review of the Board of Appeal's assessment of the evidence in the contested decision.

In the second decision of the Board of Appeal in AN 2020 00003, the Board of Appeal did not give reasons for the weight given to the evidence, reaching an opposite assessment to that in its original decision, where the Board of Appeal found that the Main Intervener had not established the trade mark by putting the mark 'Rat Pack' into use prior to the priority date of June 17, 2014. Only after

the reopening (case AN 2021 00008), where the Board of Appeal reopened the case "because the grounds of the Board of Appeal in AN 2020 00003 did not contain the main considerations which determined the outcome of the decision" ("a not insignificant procedural error"), did the Board of Appeal provide reasons as to which evidence was more precisely taken into account in the decision.

In case law and administrative law literature, it is assumed that the administration's procedural errors may intensify judicial review and contribute to a more thorough examination of the substantive content of the decision.

In the present case, the Board of Appeal reopened the case precisely on an unlawful basis, as the Board of Appeal's reasoning in AN 2020 00003 did not contain the main considerations determining the outcome of the decision and that this was "a not insignificant procedural error", see the Board of Appeal's decision of 8 April 2021 (Annex A), p. 27. The Board of Appeal itself has thus acknowledged that a not insignificant procedural error has been committed.

RatPac submits that the existence of this not insignificant procedural error must lead the Maritime and Commercial Court to carry out a thorough and complete review of the Board of Appeal's most recent decision, including whether the Main Intervener has proved putting into service by trade mark use of Rat Pack for 'film production' prior to the priority date for RatPac's provisional trade mark registration, in accordance with Article 15(4)(2) of the Trade Mark Law.

The fact that the Board of Appeal has amended/adjusted its decision on three occasions underlines all the more the need for the Maritime and Commercial Court to carry out a thorough and complete review of the Board of Appeal's decision, including the factual information on which the decision is based and the substantive content of the decision. There is an essential consideration to be given to RatPac, which must reasonably have clarification of its trade mark legal position after the first received administrative decisions in two instances refusing a previously established trade mark right in use, and therefore now need a decision taken on a proper and fully tested basis, in which the decision takes into account all the relevant circumstances of the case and sets a reasonable threshold for the establishment of a trade mark right in use in accordance with Danish trade mark law.

### 3.5    Claim 2 of the main intervener

In support of RatPac's claim that the General Intervener's claim 2 should be dismissed, it is pointed out that RatPac has registered a trade mark in Class 36 for the financing of feature films for the word mark RATPAC, where the Board of Appeal did not therefore refuse registration of RatPac's trade mark for those services, see also the Board of Appeal's response.

The main intervener has thus had its opposition in respect of Class 36 rejected by the Board of Appeal, including the main intervener's argument that the services in Class 36 are similar to 'production and distribution of television programmes and films' in Class 41.

The main intervener has not chosen to challenge the decision of the Board of Appeal on this point, and the main intervener's plea in that regard must therefore be rejected on that ground alone, since the time-limit for challenging the decision of the Board of Appeal has expired.

Before the <u>Board of Appeal for Patents and Trade Marks, the</u> proceedings have been conducted essentially in accordance with the statement of claim dated 17 August 2021, which states:

**"… 3. APPLICANT**
In general, it is submitted that there is not the requisite certainty to overrule the Board of Appeal's finding that there were grounds for reopening the proceedings and that there were grounds for refusing definitive registration of the mark RATPAC for Class 41, since trade mark rights had been created by putting the mark RAT PACK into use prior to the date of priority.

**3.1     Court review**
It follows from the Supreme Court's case law that just because some doubt may be raised about an authority's assessment, the courts should not necessarily overrule the authority's decision. The courts must assess separately whether there is a sufficient basis for setting aside the authority's decision, cf U.2018.1160H.

A set aside of the decision of the Board of Appeal requires that there is a sufficiently certain basis for it.

In the judicial review of the decision of the Board of Appeal, it must be borne in mind that the Board is composed of a chairman and a number of members who must possess the best possible expertise, in particular as regards trade marks. In addition, the decisions of the Board of Appeal are taken on the basis of an assessment of the facts of a given case. In order to do so, it is necessary to have a sound basis for setting aside the decision of the Board of Appeal, cf. in particular U.2020.715V and the judgment of the Vestre Landsret of 18 August 2020.

The burden of proof is on RatPac Entertainment LLC, as the party seeking to have the Board's decision set aside.

The company has not met this burden of proof.

What RatPac Entertainment LLC does not agree with is the Board of Appeal's specific evidentiary assessment of the evidence available at the time of the decision concerning Rat Pack Filmproduktion GmbH's use of the RAT PACK mark.

RatPac Entertainment LLC supports the summons on the same grounds as were submitted to the Board of Appeal on 25 June 2020. The Board of Appeal then took those views into account and, after a specific overall assessment, considered that there were grounds for refusing definitive registration of the mark.

The summons must be understood as meaning that what RatPac Entertainment LLC is challenging is the actual assessment of the evidence by the Board of Appeal. It cannot lead to the annulment of the decision.

**3.2     The specific case**
The Board of Appeal was right to consider that there were grounds for reopening the proceedings and that there were grounds for refusing definitive registration of the mark RATPAC for Class 41,

since trade mark rights had been created by putting the mark RAT PACK into use before the priority date.

The authorities may reopen cases on unlawful grounds where new factual information has become available which is of such importance to the case that there is a reasonable probability that the outcome of the case would have been different if the information had been available when the authority originally took its position on the case.

The Board of Appeal was right to consider that there were grounds for reopening the case, since new information had come to light during the earlier proceedings which was material to the case and which might have led to a different result if it had been forwarded to the Board of Appeal when it originally took a decision on the case.

On the basis of an overall assessment of the file, including the annexes submitted with the reply to the proceedings before the Board of Appeal (Annexes 7.64 to 8.84), the Board of Appeal found that Rat Pack Filmproduktion GmbH had proved that the trade mark RAT PACK had been taken in use for trade mark purposes on the priority date of 16 June 2014, in accordance with Section 15(4)(2) of the Trade Mark Act then in force, and that RatPac Entertainment LLC's trade mark RATPAC was therefore not registrable in Class 41, in accordance with Section 15(1)(2) of that Act.

The RAT PACK brand has been used for and in connection with four films; The Wave and the three films in the Crocodile Gang series – The Crocodile Gang, The Crocodile Gang Returns and The Crocodile Gang -All for One.
The film Bølgen was shown and viewed in Danish cinemas, see Annex 7.70 and Annex 7.64, and has been available on DVD. The RAT PACK is clearly reproduced as an independent feature on the film poster, see inter alia Annex 7.73, and it is also clearly shown on the cover of the DVD copy of the film, see inter alia Annex 7.76.

Annex 7.70, which is a screenshot from the teaching website, www.dfi.dk, shows that Rat Pack Filmproduktion GmbH is the production company of the film "Bølgen" (English title). The Danish Film Institute (DFI) has stated in Annex 7.75 that since 26 June 2013 there have been 33,302 unique views of this film.

The figurative mark also appears clearly and as an independent feature on the covers of the DVD copies of the three films about the Crocodile Gang that are available in Danish, see Annexes 5.24, 5.34 and 5.44, and the mark is reproduced in the trailers for the films that have been published on YouTube, see Annexes 5.21, 5.22 and 5.31, 5.32, 5.41 and 5.42.

Rat Pack Filmproduktion GmbH also appears as the producer of the film but on the cover of the DVD edition of the film (Exhibit 7.76), as well as on the IMDB pages for the films "Vickie and the Treasure of the Gods" (Exhibit 7.78), "Vickie and the Treasure of the Gods, Buster Award" (Exhibit 7.79) and "We are the Night" (Exhibit 7.80). In the trailer for "Vickie and the Treasure of the Gods", available on YouTube, Rat Pack Filmproduktion GmbH's brand is clearly visible 15 seconds into the video (Exhibit 7.79), as is Rat Pack Filmproduktion GmbH's name as producer in the trailer for "We are the Night" 2:08 seconds into the video (Exhibit 7.82).

17

In addition, there was information already available to the Board of Appeal, including that the RAT PACK mark had been used in Denmark in connection with the distribution of the four films "Bølgen" from 2008 and "Krokodillbande" 1-3 from 2009, 2010 and 2011.

Transcripts from Boxofficemojo.com (Annex 5.5) show that the film "The Wave" was shown in Denmark for four weeks in 2008 and had total earnings in Denmark of approximately DKK 366,000. A total of 18,091 cinema tickets were sold for the film in Denmark (Annex 7.64). The trailer of the film from YouTube shows the label "Rat Pack Filmproduktion" for 2 seconds (Annex 5.9).

In addition, the figurative mark, RAT PACK, has been used in connection with the sale, distribution and lending of Rat Pack Filmproduktion GmbH's films in Denmark, see, for example, Exhibits 5.54.1-5.54.26.

After a concrete discretionary assessment of all the evidence of use of the mark, the Board of Appeal found that Rat Pack Filmproduktion GmbH had made use of its mark on the priority date of 16 June 2014 and had thus acquired trade mark rights in the sign RAT PACK prior to that date.

RatPac Entertainment LLC submits in its application, p. 4, that the decision of the Board of Appeal is in fact a reassessment of the same facts as those found in the original decision (Annex 5.1) and that, therefore, no new facts have emerged. The Board of Appeal does not agree.

The fact that the Board of Appeal did not consider, prior to receipt of the documents produced in the proceedings between the Board of Appeal and Rat Pack Filmproduktion GmbH, that there was sufficient proof that a trade mark right had been created by the putting into use of the trade mark RAT PACK in Denmark and, after receipt of the documents, considered that there was now sufficient proof, is an expression of the specific discretion which the Board of Appeal must exercise in all cases. As stated above, the Board of Appeal considered, precisely on the basis of an overall assessment, that the earlier files in the original case, together with the new factual information provided by the reply, constituted sufficient evidence of putting into service.

RatPac Entertainment LLC's views in the case are based on the assumption that the Board of Appeal made a fragmented and isolated assessment of the individual documents in assessing whether RatPack Filmproduktion GmbH had established trade mark rights in the mark RAT PACK upon putting it into use.

As stated above, the Board of Appeal has made a specific overall assessment of the facts of the case, and not whether the individual example of the use of the RAT PACK mark (alone) constitutes sufficient evidence of putting into service.

RatPac Entertainment LLC has therefore not demonstrated that there is a sufficient basis in law to set aside the decision of the Board of Appeal.

The Board of Appeal must therefore be dismissed. ..."

For Rat Pack Filmproduktion GmbH, the proceedings have essentially been conducted in accordance with the statement of claim of 17 August 2021, which states:

**"… 2. Applicant**

**2.1.     The pleas in law and main arguments**

The case between RatPac Entertainment, LLC and the Board of Appeal concerns a review of the decision of the Board of Appeal, i.e. the question whether the trade mark RATPAC can be finally registered or whether the trade mark should be refused final registration for the service 'production and distribution of television programs and films' in Class 41 by reference to the earlier rights in use of Rat Pack Filmproduktion GmbH, in accordance with Paragraph 15(4)(2) of the earlier Trade Mark Law, see Paragraph 3(1)(2) and Paragraph 14(4).

Rat Pack Filmproduktion GmbH's independent claims concern the question whether RatPac Entertainment, LLC should be obliged to recognise the existence of Rat Pack Filmproduktion GmbH's prior right to the trade mark RAT PACK for film production and whether Rat Pack Filmproduktion GmbH's actual use or future use of the trade mark RATPAC in Denmark constitutes an infringement of Rat Pack Filmproduktion GmbH's trade mark rights within the meaning of Paragraph 4(1) of the former Trade Mark Law.
1, no. 2, cf. § 3, paragraph 1, no. 2.

The application to intervene was lodged pursuant to Article 251 of the Code of Judicial Procedure. It is submitted that Rat Pack Filmproduktion GmbH has standing to bring the two independent claims as they are so interrelated to RatPac Entertainment, LLC's original claim that the claims should be dealt with in the proceedings. This view is not disputed by
RatPac Entertainment, LLC and the Board of Appeal.

**2.2.     General assessment by the Court**

Neither Ratpac Entertainment, LLC nor the Board of Appeal has contested in the present case that there is a likelihood of confusion between the marks at issue in the proceedings, RATPAC and RAT PACK, in relation to the service of film production. The case therefore essentially concerns whether Rat Pack Filmproduktion GmbH has established a right to RAT PA- CK as a trade mark, sign and/or company name in Denmark prior to the prioritydate of VR 2015 02390 RATPAC <w> on 17 June 2014.

The decision must be based on an overall assessment of whether all the documents submitted concerning the use of the word marks 'Rat Pack' and 'Rat Pack Filmproduktion' and the figurative mark



(collectively,   the 'RAT PACK mark') constitutes sufficient evidence that Pack Filmproduktion GmbH created a trade mark right prior to the priority date of the mark VR 2015 02390 RATPAC <w>. It is submitted that this is true irrespective of whether and in what extent to which the Board of Appeal may have weighed the evidence in making the order under appeal.

It is submitted that the element 'film production' in the company name and trade mark of the main intervener is descriptive of the service which is relevant to the case, namely film production. That element must therefore be disregarded in assessing both whether the main intervener has established a right to the trade mark RAT PACK for film production in Denmark through use and

19

whether there is a likelihood of confusion with between the trade marks RAT PACK and RATPAC under Paragraph 4(1)(2) and Paragraph 15(4)(2) of the former Trade Mark Law.

### 2.3. The main intervener has created a trade mark right by putting into use the trade mark RAT PACK for film production prior to the priority date of VR 2015 02390 RATPAC <w>

#### 2.3.1. General requirements for placing in service

The relevant criteria follow from Section 3(1)(2) of the former Trade Mark Act. It must therefore be assessed whether, prior to the priority date of VR 2015 02390 RATPAC <w>, the trade mark RAT PACK was put to use in this country for the relevant service of film production and whether, at that time, the trade mark was in continuous use for that service.

The trade mark RAT PACK has undoubtedly an inherent distinctiveness for film production. Consequently, the same requirements cannot be imposed on the proof of use of the trade mark under Paragraph 3(1)(2) of the earlier Trade Mark Law as must be imposed on the proof of acquisition of distinctive character through use under Paragraph 3(3) of the Trade Mark Law.

It is therefore submitted, in general, that the trade mark right in RAT PACK must be regarded as having been established from the first time that genuine use is made of the trade mark in relation to the public, in a manner which can be described as normal trade mark use in the sector and which results in the public becoming aware of the trade mark.

In this respect, it is argued that film production activities are rarely marketed other than in the context of the marketing of the films produced. The name and trade mark of the film production company are therefore usually marketed only in connection with the publishing, marketing, sale, exhibition and other publicity of the films produced.

The requirements for establishing a trade mark right by putting it into use are in practice modest, as there is no requirement that the use made of the trade mark must be substantial, either in terms of volume or geographical area.

#### 2.3.2. The main intervener has proven the use of RAT PACK as a trademark for film production

The evidence submitted by Rat Pack Filmproduktion GmbH concerning the use of the trade mark RAT PACK may be summarised as follows:

Documentation concerning the use of the trademark RAT PACK by Rat Pack Filmproduktion GmbH, including its partners:
- Use of the trade mark RAT PACK on DVD covers distributed in Denmark: Annexes 5.10, 5.11, 5.24, 5.34, 5.44 and 5.45
- Use of the trade mark RAT PACK on film posters: Annexes 7.73 and 7.74
- Use of the trademark RAT PACK in the introduction of films distributed in Denmark: Annexes 5.12, 5.25, 5.35 and 5.46

The documentation concerning the scope of use of the trademark RAT PACK:
- Cinema tickets sold: annexes 5.15 and 7.64 (concerning
    Denmark), 5.27 and 5.37 (concerning Germany and Austria)
- Turnover from sales of DVDs in Denmark: Annexes 5.23, 5.33 and 5.43
- Printed Danish versions of DVD covers: annex 5.48
- Use of the trade mark RAT PACK in international media directed at Denmark:
   Annexes 5.21, 5.22, 5.31, 5.32, 5.41 and 5.42
- Use of the trade mark RAT PACK in international media, which are applicable from Denmark:
   Annexes 5.8, 7.77, 7.79, 7.80 and 7.82
- Mention of the trade mark RAT PACK in articles in the Danish media: Annexes 5.6, 5.7, 5.17,
   5.28 and 5.38
- Distribution of DVDs via Danish libraries 5.49 - 5.54 and 7.76 and annex Adc. A, which shows
   a summary of the minimum number of DVDs lent via Danish libraries in the period 1 January
   2009 – 16 June 2014 (at least 1,075 copies of the films The Wave and The Crocodile Gang 1 -
   3).

Documentation which does not directly show the use of the RAT PACK trademark, but which
supports the other documentation for the use of the trademark:
- Documentation on distribution channels for DVDs: Annexes 5.19, 5.20, 5.29, 5.30, 5.39 and
   5.40
- Distribution agreements: annexes 5.13, 5.14, 5.26, 5.36, 5.39, 5.40 and 5.47
- Documentation for access to streaming via Danish websites: annex 7.66 - 7.69
- Mentions of films produced by Rat Pack Filmproduktion GmbH and prizes awarded: Annexes
   5.18, 7.70, 7.71, 7.78 and 7.81
- Use of films produced by Rat Pack Filmproduktion GmbH as teaching material: Annexes 7.72
   and 7.75

It is submitted in general terms, with reference to the evidence submitted, that the public has had
the opportunity to acquaint itself with that the films at issue were produced by the main intervener.
It is therefore submitted that the criterion laid down in Article 3(1)(3) of the former Trade Mark Law
is satisfied, since the trade mark RAT PACK has been used in accordance with the basic function
of the trade mark, which is to indicate the origin of the services marketed under the trade mark
(function of origin).

It is argued that use which is not made with the direct authorisation of Rat Pack Filmproduktion
GmbH, for example through mentions in articles and other media, also constitutes relevant
evidence of the creation of the right to RAT PACK through use.

By consistently using the descriptive word 'Filmproduktion' in addition to the distinctive part of the
trade mark RAT PACK of Rat Pack Filmproduktion GmbH, it was clear to the public that Rat Pack
Filmproduktion GmbH had produced the films in question.

The evidence submitted by Rat Pack Filmproduktion GmbH thus shows overall that RAT
PACK has been used as a trade mark in this country in accordance with the mark's function
of origin prior to the priority date of VR 2015 02390 RATPAC <w>.

### 2.3.3.   The use of the trade mark RAT PACK has been persistent

The documentation provided by Rat Pack Filmproduktion GmbH shows that there has been continuous use of the trade mark RAT PACK in Denmark for approximately 6 years from the release of the film "Bølgen"/"Die Welle" in 2008 until the priority date for VR 2015 02390 RATPAC <w>.

It is submitted that the right to a trade mark in use can lapse only if use has ceased definitively. During the relevant period for which Rat Pack Filmproduktion GmbH has proved use of the trade mark RAT PACK, there has been continuous use by, inter alia, showing films in cinemas and continuously selling and lending DVDs and launching new films on the Danish market. There has thus at no time been a cessation, let alone a definitive cessation, of use of the trade mark in Denmark.

### 2.3.4.   The use of the trade mark RAT PACK is of a more than localised nature

The requirement of use of the trade mark to an extent which is more than locally limited is the only requirement in the current trade mark law, § 3, paragraph 1, point 3, for the quantitative extent of use of the trade mark.

However, this requirement did not exist in the version of the Trade Mark Law in force on the priority date of VR 2015 02390 RATPAC <w>, cf.

Notwithstanding the foregoing, it is submitted that the use of the trade mark RAT PACK is more than local in nature.

For example, Annex 7.65 shows that the film "Bølgen"/"Die Welle" was shown in cinemas in the four largest cities in Denmark (Copenhagen, Odense, Aarhus and Aalborg).

Also from the overview of the libraries' lending of the DVDs of the films produced by Rat Pack Filmproduktion GmbH presented as Annex Adc. A, it appears that distribution has been nationwide.

In addition, the media that have covered the films and reproduced the RAT PACK brand in the same context have had a nationwide reach.

> **4.The use of the trade mark RATPAC <w> by the main intervener for "production and distribution of television programs and films" and "financing of feature films" in Denmark constitutes an infringement of the main intervener's rights in the trade mark RAT PACK**

If the court finds that Rat Pack Filmproduktion GmbH has established a right to the trade mark RAT PACK for film production in Denmark, the establishment confers an exclusive right on Rat Pack Filmproduktion GmbH, cf.

The exclusive right covers signs which are identical with the trade mark and are used in connection with services which are identical with those for which the trade mark is protected, within the meaning of Article 4(2)(1) of the Trade Mark Law, as well as signs which are identical with or similar to the trade mark and the services are of the same or similar kind, where there is a likelihood of

22

confusion, including a presumption of a connection with the trade mark, within the meaning of Article 4(2)(2) of the Trade Mark Law.

Given the phonetic and conceptual identity and the high degree of visual similarity between the marks RAT PACK and RATPAC, it is submitted that there is a very high degree of similarity between the marks.

Since the service 'production and distribution of television programs and films' covered by VR 2015 02390 RATPAC <w> is identical to the service 'film production' in respect of which Rat Pack Filmproduktion GmbH has established a trade mark right, the use of the trade mark RATPAC <w> for 'production and distribution of television programs and films' would constitute an infringement of Rat Pack Filmproduktion GmbH's rights under Paragraph 4(1) of the Trade Mark Law. (2)(1), or in the alternative (2) of Paragraph 4(2).

In this respect, it is argued that "financing of feature films", which is covered by VR 2015 02390 RATPAC <w>, is equivalent to the service of film production.

It should be noted that the classification of "financing of motion pictures" in class 36 in a different class of the NACE classification than film production in class 41 is not decisive for the assessment of the similarity between the services. What is decisive is that the financing of feature films will inherently involve the financing of film production. There are thus two services which are in practice interdependent, i.e. complementary, and the services are provided in the same sector, namely the film industry. In addition, the companies financing feature films and producing feature films will typically both be marketed to the same clientele in the marketing of a feature film.

It is therefore submitted that customers could confuse the trademarks RAT PACK and RATPAC, or assume that there is a link between those trademarks, if the trade mark RATPAC is used in connection with the financing of feature films.

The use of the trade mark RATPAC <w> for 'financing of feature films' would therefore constitute an infringement of Rat Pack Filmproduktion GmbH's rights under Paragraph 4(2)(2) of the Trade Mark Law.

Ratpac Entertainment, LLC submits that the Board of Appeal rejected the main intervener's opposition with respect to the services in Class 36, including the contention that those services are similar to 'production and distribution of television programs and films' in Class 41. However, this view is not correct, as Rat Pack Filmproduktion GmbH's original opposition to VR 2015 02390 RATPAC <w> was directed solely at the services in Class 41, as set out in its submission of 17 December 2015 (Annex Adc. B). As a result, neither the Patent and Trademark Office nor the Board of Appeal has addressed the issue of similarity between the services in Class 36 and Class 41, respectively, as alleged by Ratpac Entertainment LLC, and there are therefore no grounds to reject the main intervener's plea on that ground.

## 2.5.    The main intervener's characteristics constitute an obstacle to the registration and use of the trade mark RATPAC

If, despite the content of the documents produced, the Court does not find that the applicant has established a trade mark right in respect of RAT PACK, it is submitted, in the alternative, that the

23

applicant has proved that the designation RAT PACK has been put to use in such a way as to create for the applicant an acquired right in that designation, which constitutes a ground for registration of VR 2015 02390 RATPAC <w>, cf. Article 15(4)(2) of the former Trade Marks Act and Article 22 of the Marketing Act.

### 2.6.  The company name of the main intervener constitutes an obstacle to the registration and use of the trade mark RATPAC

The main intervener has used the company name Rat Pack Filmproduktion GmbH in Denmark for film production at least since 2008, see inter alia Annexes 5.5 and 7.64. This use must, by virtue of the above is considered to have been continuous and persistent until the priority date of VR 2015 02390 RATPAC <w>.

Since the main intervener has used its company name in Denmark to identify the main intervener's services to customers and business partners, the proprietor's trade mark must be refused registration in Class 36 for the financing of feature films and Class 41 for the production and distribution of television programs and films, in accordance with Paragraph 14(4) of the former Trade Mark Law, and the use of the trade mark RATPAC would infringe the main intervener's rights.

### 3. Conclusion

On the basis of the documents submitted, it is submitted that Rat Pack Filmproduktion GmbH has proved that it has established a right to RAT PACK as a trade mark, sign and/or company name in Denmark prior to the priority date of VR 2015 02390 RATPAC <w> on 17 June 2014.

Since there is a high degree of similarity between the trademarks RAT PACK and RATPAC and identity between, on the one hand, film production, for which the trade mark RAT PACK is used and, on the other hand, the sub-sector 'production and distribution of television programs and films' in Class 41, for which VR 2015 02390 RATPAC <w> has been provisionally registered, VR 2015 02390 RATPAC <w> must be refused final registration for those services, in accordance with Article 8(1)(b) of Regulation No 40/94. Section 15(4)(2) of the former Trade Mark Law, see Section 3(1)(2). The Board of Appeal must therefore uphold its plea of inadmissibility.

For the same reasons, RatPac Entertainment, LLC must acknowledge that, prior to the priority date of the mark VR 2015 02390 RATPAC <w>, Rat Pack Filmproduktion GmbH established a right to the mark RAT PACK for film production in Denmark, and RatPac Entertainment, LLC must acknowledge that use of the mark RATPAC in Denmark constitutes an infringement of Rat Pack Filmproduktion GmbH's trademark rights under the Trademark Act Section 4(2)(2), cf. the former Section 3(1)(2) of the Trade Mark Act.

Given that 'financing of feature films' is equivalent to the production of feature films and that the services are complementary, it is submitted that there is a likelihood of confusion if RatPac Entertainment, LLC uses the trade mark RATPAC in Denmark for that service. RatPac Entertainment, LLC must therefore acknowledge that the use of the trade mark RATPAC for the financing of feature films in Denmark constitutes an infringement of Rat Pack Filmproduktion GmbH's rights within the meaning of Section 4(2)(2) of the Trade Mark Act, as amended by Section 3(1)(2) of the former Trade Mark Act..."

24

**Reasons and findings of the Court of First Instance**

This appeal is directed against the decision of the Board of Appeal for Patents and Trade Marks of 8 April 2021 refusing registration of the word mark 'RATPAC' for 'production and distribution of television programmes and films' in Class 41 on the ground that Rat Pack GmbH had proved the trade mark use of 'Rat Pack' for 'film production' prior to the priority date of the provisional trade mark registration of RatPac Entertainment, pursuant to Article 15(4)(2) of the current Trade Mark Law.

The Court's review fully covers the factual basis and the legal application of the Board of Appeal's decision, whereas the setting aside of discretionary assessments requires a secure basis, see in this respect the Supreme Court's judgment of 27 November 2019, published in UfR 2020.524. The Court's review is not intensified as a result of the fact that it appears from the Board of Appeal's decision that the Board of Appeal had committed a not insignificant procedural error in a previous decision in the same case. The same applies to the fact that the Board of Appeal had previously reached a different result on a different factual basis.

The question of whether Rat Pack GmbH had acquired trade mark rights through the use of 'Rat Pack' for film production prior to the priority date of 17 June 2014 depends on a concrete overall assessment of all the relevant factors, the decisive factor being whether the use made of the mark, in qualitative and quantitative terms, has led overall to sufficiently effective use as a trade mark in relation to the relevant public.

The Court considers that, in its decision of 8 April 2021, the Board of Appeal assessed the case within the legal framework provided, taking into account the relevant and necessary factual information, and that there is no sufficient basis in law for setting aside the Board of Appeal's discretionary assessment of the question of putting into use under Paragraph 3(1)(2) of the current Trade Mark Law.

In the light of the foregoing, the Court dismisses the action and upholds the first head of claim of Rat Pack GmbH.

With regard to claim 2 of Rat Pack GmbH, the Court considers that Rat Pack GmbH, as the main intervener, has an independent legal interest in the assessment of claim 2. Furthermore, since the existence of a likelihood of confusion, within the meaning of Article 4(2)(2) of the Trade Mark Law, can be assumed as undisputed, the claim is upheld.

The overall result is therefore that the Board of Appeal is dismissed and Rat Pack GmbH's claims 1 and 2 are upheld.

Following the outcome of the proceedings, RatPac Entertainment is ordered to pay the costs incurred by the Board of Appeal and Rat Pack GmbH. The costs of the proceedings before the Board of Appeal shall be fixed at DKK 25,000 including VAT, in accordance with the nature, scope

and course of the proceedings, and shall relate to the costs of legal assistance. The costs of the proceedings before Rat Pack GmbH are fixed on the same basis at DKK 25,000 inclusive of VAT.

## FOR IT IS KNOWN

Dismisses the action

RatPac Entertainment, LLC shall acknowledge that prior to the priority date of VR 2015 02390 RATPAC <w>, Rat Pack Filmproduktion GmbH has established a right to the trademark RAT PACK for film production in Denmark.

RatPac Entertainment, LLC shall acknowledge that use of the RATPAC <w> for the 'production and distribution of television programmes and films' and 'the production of feature films' in Denmark constitutes an infringement of Rat Pack Filmpro- duktion GmbH's rights in the trade mark RAT PACK.

Orders RatPac Entertainment, LLC to pay to the Patent and Trade Mark Appeal Board the sum of DKK 25 000 including VAT and the sum of DKK 25,000 including VAT to Rat Pack Filmproduktion GmbH.

The costs must be paid within 14 days and bear interest in accordance with Article 8a of the Interest Act.

Published to the portal on 01-11-2021 at 10:00
Advokat (H) Mikkel Kleis, Applicant RatPac Entertainment, LLC, Advokat
(H) Christian Løvenørn Bardenfleth, Lead Intervener Rat Pack
Filmproduktion GmbH, Advokat (H) Sanne H. Christensen, Defendant
Board of Appeal for Patents and Trademarks