JESSICA B. DO (SBN 317517)
jessica.do@afslaw.com
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013
Telephone:     213.629.7400
Facsimile:     213.629.7401

LINDSAY KOROTKIN (*Pro Hac Vice Pending*)
lindsay.korotkin@afslaw.com
**ARENTFOX SCHIFF LLP**
1301 Avenue of the Americas, 42nd Floor
New York, NY  10019
Telephone:     212.484.3900
Facsimile:     212.484.3990

Attorneys for Defendant
WARNER BROS. ENTERTAINMENT INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAT PACK FILMPRODUKTION GMBH, a German limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RATPAC ENTERTAINMENT, LLC, a Delaware limited liability company; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-4790-MEMF-AS(x)<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANT WARNER BROS. ENTERTAINMENT INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Lindsay Korotkin; Request for Judicial Notice; [Proposed] Order re Request for Judicial Notice; and [Proposed] Order re Motion]<br><br>Date:       Thursday, December 14, 2023<br>Time:       10:00 a.m.<br>Judge:      Hon. Maame Ewusi-Mensah Frimpong<br>Ctrm:       8B<br><br>Date Action Filed: June 19, 2023 |

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)

DEF. WARNER BROS. ENTERTAINMENT INC.'S MOTION TO DISMISS THE COMPLAINT

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

NOTICE IS HEREBY GIVEN THAT, on Thursday, December 14, 2023, at 10:00 a.m. before the Honorable Maame Ewusi-Mensah Frimpong, in Courtroom 8B of the United States District Court, Central Division of California, Western Division, First Street Courthouse, 350 W. 1st Street, Los Angeles, California, Defendant WARNER BROS. ENTERTAINMENT INC. ("Warner"), moves to dismiss Plaintiff RAT PACK FILMPRODUKTION GMBH's ("Plaintiff") Complaint for (1) False Designation Of Origin [15 U.S.C. § 1125(a)]; (2) Statutory Unfair Competition [Cal. Bus. & Prof. Code § 17200 et seq.]; (3) False Designation of Origin [Austria]; (4) False Designation of Origin [the Netherlands]; and (5) False Designation of Origin [Denmark] ("Complaint") in the above-captioned action in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This Motion is made following the conferences of counsel pursuant to Local Rule 7-3, which took place on August 4, 2023, after Warner's delivery of a letter detailing the grounds of its proposed Motion to Plaintiff's counsel.

This Motion is based on this Notice of Motion and Motion; accompanying Memorandum of Points and Authorities; the Declaration of Lindsay Korotkin and exhibits filed concurrently; a Request for Judicial Notice filed concurrently; the pleadings and papers filed in this action; and such further argument and matters as may be offered at the time of the hearing of this Motion.

Warner also hereby joins in the Motion to Dismiss the Complaint filed by Defendant Ratpac Entertainment LLC on August 24, 2023 [ECF No. 27].

Dated: August 25, 2023                     **ARENTFOX SCHIFF LLP**


By: */s/ Jessica B. Do*
_____
LINDSAY KOROTKIN (*pro hac vice pending)*
JESSICA B. DO

Attorneys for Defendant
WARNER BROS. ENTERTAINMENT INC.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................- 8 -

II.   FACTS ....................................................................................................- 11 -

III.  LEGAL STANDARD..............................................................................- 12 -

IV.  ARGUMENT ..........................................................................................- 14 -

    A.    Laches Applies to Bar Plaintiff's Claims...........................................- 14 -

        1.    A Presumption of Laches Applies Because Plaintiff Knew and Should Have Known of the Accused Conduct Over Four Years Ago..- 16 -

        2.    All the E-System Factors Support Applying Laches ...........................- 17 -

    B.    Plaintiff's Count One Claim for False Designation of Origin Under the Lanham Act Fails as a Matter of Law...............................................- 20 -

        1.    The Complaint Does Not Plausibly Allege Unregistered U.S. Common Law Rights in a Distinctive Mark with Priority....................- 21 -

        2.    The Complaint Does Not Allege How Warner's Alleged Use Of The Accused Mark is Likely to Cause Confusion or Mistake, or to Deceive Consumers.........................................................................- 23 -

        3.    The Lanham Act Does Not Permit Relief for Foreign Conduct ...........- 24 -

    C.    Plaintiff's California Unfair Competition Claim Fails as a Matter of Law ......- 24 -

        1.    Plaintiff Has Not Plausibly Alleged Standing for its UCL Claim ........- 25 -

        2.    Plaintiff's UCL Claim is Time-Barred...............................................- 25 -

    D.    Plaintiff's Counts Three Through Five for Foreign Trademark Infringement in Austria, the Netherlands, and Denmark Should Be Dismissed for Lack of Jurisdiction and Forum Non Conveniens.........................................................- 26 -

        1.    Plaintiff Has Not Pled a Basis for Diversity Jurisdiction and the Court Should Decline to Exercise Supplemental Jurisdiction Over the Foreign Claims .........................................................................- 26 -

        2.    Plaintiff's Foreign Claims Must Also Be Dismissed for Forum Non Conveniens .....................................................................................- 29 -

V.   CONCLUSION......................................................................................- 32 -

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*555-1212.com, Inc. v. Commc'n House Intern., Inc.*,
157 F.Supp.2d 1084 (N.D. Cal. 2001) ...............................................................................23

*Abitron Austria GmbH v. Hetronic International, Inc.*,
143 S. Ct. 2522 (June 29, 2023)................................................................. 22, 24, 28

*Applied Info. Scis. Corp. v. eBAY, Inc.*,
511 F.3d 966 (9th Cir. 2007)....................................................................... 20

*Arroyo v. Rosas*,
19 F.4th 1202 (9th Cir. 2021) ..................................................................... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................. 13, 24

*Ass'n of American Medical Colleges v. United States*,
217 F.3d 770 (9th Cir. 2000)....................................................................... 14

*Ayco Farms, Inc. v. Ochoa*,
862 F.3d 945 (9th Cir. 2017)....................................................................... 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................... 12, 13, 24

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999)...................................................................... 20

*Cabell v. Zorro Prods. Inc.*,
No. 5:15-CV-00771-EJD, 2017 WL 2335597 (N.D. Cal. May 30, 2017)............................ 15

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016)...................................................................... 13

*City of Chicago v. Int'l College of Surgeons*,
522 U.S. 156 (1997) ............................................................................... 14

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994)....................................................................... 25

*Columbia Pictures Industries, Inc. v. Embassy Pictures*,
No. CV 82-2376-Kn, 1982 WL 1274 (C.D. Cal. May 27, 1982) ........................................ 23

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001)............................................................... 14, 19, 20

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)          - 4 -          DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

*Doe v. Holy*
    557 F.3d 1066, 1073 (9th Cir. 2009)..................................................................................... 14

*E-Systems, Inc. v. Monitek, Inc.*,
    720 F.2d 604 (9th Cir. 1983)....................................................................................... *passim*

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016)............................................................................................... 13

*EVO Brands, LLC v. Al Khalifa Group LLC*,
    No. 2:22-cv-03909-AB-MAR, 2023 WL 2768743 (C.D. Cal. Feb. 23, 2023) ....................... 23

*Fitbug Ltd. v. Fitbit, Inc.*,
    78 F.Supp.3d 1180 (N.D. Cal. 2015) ............................................................................... 14, 18

*FLIR Systems, Inc. v. Sierra Media, Inc.*,
    965 F.Supp.2d 1184 (D. Or. 2013) ..................................................................................... 15

*Gateway Network Connections, LLC v. Matulich*,
    No. 1:22-CV-00024, 2022 WL 19456371 (D. Guam Dec. 16, 2022) ................................... 27

*Grupo Gigante SA De CV v. Dallo & Co.*,
    391 F.3d 1088 (9th Cir. 2004)............................................................................. 17, 18, 19, 22

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
    No. 2:20-CV-08222-AB-SKX, 2023 WL 2942991 (C.D. Cal. Apr. 10, 2023) ............... 17, 18

*Ibrani v. Mabetex Project Eng'g*,
    No. C-00-0107 CRB, 2002 WL 1226848 (N.D. Cal. May 31, 2002) .................................... 13

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002)............................................................................................... 20

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998)............................................................................................. 20

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375 (1994) ............................................................................................................ 13

*Landrum v. Tyson*,
    No. CV 10-4795-VBF(RCX), 2011 WL 13217114 (C.D. Cal. May 16, 2011)...................... 14

*Levi Strauss & Co. v. AmericanJeans.com, Inc.*,
    No. 5:10–CV–05340 JF (PSG), 2011 WL 1361574 (N.D. Cal. Apr. 11, 2011) ......... 27, 28, 29

*Lockman Found. v. Evangelical All. Mission*,
    930 F.2d 764 (9th Cir. 1991)............................................................................................... 30

*Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*,
    No. C 11-01036 JSW, 2011 WL 13152817 (N.D. Cal. July 14, 2011) ................................ 27

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                          - 5 -                     DEF. WARNER BROS. ENTERTAINMENT
                                                                          INC.'S MOTION TO DISMISS THE
                                                                          COMPLAINT

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001)............................................................................................ 29, 30

*Mathew Enter., Inc. v. FCA US, LLC*,
No. 16-CV-03551-LHK, 2016 WL 6778534 (N.D. Cal. Nov. 16, 2016), *aff'd*,
751 F. App'x 983 (9th Cir. 2018) ...................................................................................... 13

*Mintz v. Subaru of Am., Inc.*,
716 F. App'x 618 (9th Cir. 2017) ...................................................................................... 13

*OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.*,
897 F.3d 1008 (9th Cir. 2018)........................................................................................... 21

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
894 F.3d 1015 (9th Cir. 2018)........................................................................ 15, 16, 18, 19

*Putzmeister Am., Inc. v. Pompaction Inc.*,
586 F.Supp.3d 868 (E.D. Wis. 2022).................................................................................. 27

*Rainero v. Archon Corp.*,
844 F.3d 832 (9th Cir. 2016).............................................................................................. 27

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016)............................................................................................................ 27

*Russell v. Thomas*,
129 F.Supp. 605 (S.D. Cal. 1955) ...................................................................................... 15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)....................................................................................... 13, 14

*Schele v. Mercedes-Benz USA, LLC*,
No. C 10-1643 RS, 2011 WL 1088760 (N.D. Cal. Mar. 11, 2011) ...................................... 22

*Starbuzz Tobacco, Inc. v. Fantasia Distrib., Inc.*,
No. SACV 12-1328 JVS (JPRx), 2012 WL 12892505 (C.D. Cal. Dec. 5, 2012)................... 23

*Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*,
465 F.3d 1102 (9th Cir. 2006)............................................................................................ 15

*Voda v. Cordis Corp.*,
476 F.3d 887 (Fed. Cir. 2007)............................................................................................ 28

*Webpass Inc. v. Banth*,
No. C14-02291 HRL, 2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) .................................. 21

*Zamfir v. CasperLabs, LLC*,
No. 21-CV-474 TWR (AHG), 2022 WL 14915618 (S.D. Cal. Oct. 25, 2022) ...................... 25

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

**Statutes**

15 U.S.C. § 1065 ............................................................................................... 11, 22

15 U.S.C. § 1072 .................................................................................................... 16

15 U.S.C. § 1125 .............................................................................................*passim*

15 U.S.C. § 1127 .................................................................................................... 22

28 U.S.C. § 1367 .................................................................................................... 14

Cal. Bus. & Prof. Code § 17200 ....................................................................... 24, 25

Cal. Bus. & Prof. Code § 17208 ............................................................................. 25

**Other Authorities**

Fed. R. Civ. P. 1 .................................................................................................... 29

Fed. R. Civ. P. 8 .................................................................................................... 12

Fed. R. Civ. P. 12 ...........................................................................................*passim*

Paris Convention art. 2, Apr. 26, 1970, 21 U.S.T. 1683 ......................................... 28

Trade-Related Aspects of Intellectual Property Rights art. 41, Apr. 15, 1994, 1867
    U.N.T.S. 154, 33 I.L.M. 1144 ......................................................................... 28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                    - 7 -                    DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

Defendant Warner Bros. Entertainment Inc. ("Warner") respectfully requests that this Court dismiss the Complaint pursuant to the Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6), and under the doctrine of laches, the statute of limitations, and *forum non conveniens*. Plaintiff Rat Pack Filmproduktion GmbH ("Plaintiff" or "Rat Pack") is a German company that purports to have used the words RAT PACK abroad in connection with German foreign language works distributed in Europe. The boilerplate Complaint vaguely alleges that Warner (when even identified by name) infringed Plaintiff's alleged rights in the words RAT PACK in the United States, Denmark, the Netherlands, and Austria and unfairly competed with Plaintiff in California. Taken in the light most favorable to Plaintiff, the Complaint claims that this infringement and unfair competition occurred through Warner's *de minimis* reference in unidentified blockbuster English language motion pictures to the RATPAC U.S. trademark registration (or the "Ratpac Entertainment" business name) owned by its co-financing partner's affiliate, Ratpac Entertainment LLC ("RPE"). None of these claims are adequately pled or have merit. The U.S. claims must be dismissed for failure to state a claim upon which relief can be granted, in addition to doctrine of laches and the statute of limitations. And Plaintiff's ill-defined foreign claims warrant dismissal because the Court lacks or should decline jurisdiction over them under its discretionary power or the doctrine of *forum non conveniens*.

The Court may apply the equitable doctrine of laches to bar at least Plaintiff's U.S. claims simply by taking the Complaint's allegations as true, as it must at this stage. First, a presumption of laches applies because Plaintiff both knew and should have known of the accused conduct by no later than June 19, 2019 (the date the applicable four year limitations period began). The Complaint proudly admits this knowledge: Plaintiff knew of Defendants' use of the words RATPAC or Ratpac Entertainment in connection with motion pictures since at least as early as 2014, but opted to only take action against certain RPE trademark filings abroad and to sleep on its purported rights (if any exist) *in the U.S. and against Warner*. Making matters worse, through judicial notice, the Court can conclude as a matter of law that Plaintiff should have known of use of the accused RATPAC mark

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                          - 8 -                          DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

by the 2016 registration date of RPE's U.S. trademark registration for RATPAC (which issued without being opposed by Plaintiff). While Plaintiff touts its filing of a few foreign trademark registration administrative proceedings against RPE abroad, trademark rights are territorial. As such, any alleged objections to RPE's trademark filings abroad do not absolve Plaintiff of its obligations to take action in the U.S. (or against Warner directly, to the extent it believes it has any non-frivolous claims to bear) under well-settled law. Thus, these foreign proceedings demonstrate—rather than excuse—Plaintiff's delay and unreasonable failure to take any actions against Defendants *in the United States* for *nearly a decade*.

Second, based on the allegations in the Complaint, the equitable factors that courts consider in determining whether to apply laches all weigh in favor of Warner. Plaintiff admits its "RAT PACK" mark is weak and in fact serves to identify a group of Hollywood actors—not Plaintiff and its works. Plaintiff was not diligent in its decade-long delay in taking enforcement action *against Warner in the United States.* As the Complaint admits, Defendants invested significant resources into the accused motion picture works and continued to co-finance motion pictures under or in connection with the RATPAC name during Plaintiff's long period of delay. As a result, Defendants would be severely prejudiced if the Court granted the monetary damages and burdensome, exorbitant injunctive relief that Plaintiff now seeks. On the other hand, Plaintiff will not be harmed if relief is denied, as it has virtually no presence, operations, or entitlement to use the words RAT PACK as a trademark in the U.S.; plus, Plaintiff's German foreign language offerings do not compete with Warner's English blockbuster motion pictures. Lastly, Warner was operating openly and notoriously and in good faith ignorance of Plaintiff or its claim—Plaintiff does not allege otherwise—and Warner should not be punished for Plaintiff's delay. While the application of laches at this early stage is rare-but-possible, the facts of this case (as pled by Plaintiff) warrant the equitable relief of dismissal with prejudice.

Separate from laches, Plaintiff's claims also fail as a matter of law on the merits. Plaintiff's First Cause of Action for False Designation of Origin under the Lanham Act, 15 U.S.C. § 1125(a), must be dismissed under Rule 12(b)(6). Among other defects, the Complaint does not plausibly allege that Plaintiff owns valid and enforceable trademark rights in the terms RAT PACK *in the*

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)          - 9 -          DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

*United States*. Instead, Plaintiff voluntarily admits that the words RAT PACK refer to a famous group of Hollywood actors from the 20th Century—not Plaintiff—and were selected for this very reason. Despite this damning admission, nowhere in the Complaint does Plaintiff set forth any plausible facts to support a claim that the words RAT PACK have become distinctive and recognizable to *U.S. consumers* as a source-identifier *for Plaintiff* and its alleged goods and services (let alone that this occurred prior to RPE's priority rights in RATPAC in the U.S., which date back to 2013). But the existence of valid trademark rights, and priority in those rights over Defendants, are foundational elements of cognizable U.S. infringement and unfair competition claims. Additionally, the Complaint's barebones, formulaic, and conclusory allegations barely even mention Warner. Plaintiff does not make specific allegation setting forth how or when it alleges that Warner used the accused RATPAC trademark or the specific actions allegedly taken by Warner that could amount to infringement or unfair competition. In addition, Plaintiff appears to demand that the Court grant it Lanham Act recovery for alleged infringement *internationally*, but that is improper under controlling Supreme Court law. Thus, even if this claim is otherwise allowed, the prayer for relief must be limited to U.S. soil.

Plaintiff's Second Cause of Action for Unfair Competition under Section 17200 of the California Business and Professional Code fares no better under Rule 12(b)(6). Among other defects, the Complaint fails to allege that misconduct or injuries occurred in California, which is a requirement for standing under the statute. Plaintiff's boilerplate allegation that Warner resides in California is insufficient to establish standing under well-settled law. Therefore, dismissal is warranted. Plus, even if allowed, this claim would be restricted by the four-year limitations period. Thus, the Complaint's admission that Plaintiff was aware of use of RATPAC by Defendants at least as early as 2014 (more than four years before the Complaint was filed) is also fatal to this claim.

Lastly, Plaintiff's Third, Fourth, and Fifth Causes of Action for False Designation of Origin in Denmark, the Netherlands, and Austria fail for lack of jurisdiction under Rule 12(b)(1). These vague claims are based on alleged foreign rights and conduct, yet fail to even identify the specific foreign laws or authorities on which they are based. This Court lacks direct jurisdiction over such far-flung claims and diversity jurisdiction has not been adequately pled (if applicable). Even if

Plaintiff met its burden to plead jurisdiction, the Court would have strong grounds for dismissal under *forum non conveniens*, or denial of supplemental jurisdiction in light of the U.S.'s obligations under conventions and treaties, in consideration of comity, and for purposes of judicial economy. Thus, the Complaint should be dismissed as a matter of law *in toto*.

## II.   FACTS

Warner is an entertainment company and global leader in the creation, production, distribution, licensing and marketing of all forms of entertainment. (*See* Dkt. 1 ¶ 14). The Complaint alleges that Warner is a Delaware entity with a principal place of business in California. (*Id.* ¶ 3). In or around 2013, Warner or its affiliates entered into an agreement with an entity related to co-defendant RPE—also alleged to be a Delaware entity with a principal place of business in this state[1] (*id.* ¶ 2)—to jointly finance certain motion picture works. (Dkt. 1 ¶ 14). These blockbuster English language motion pictures were released and promoted under distinctive titles such as Gravity, American Sniper, and Wonder Woman—not RATPAC or RAT PACK. (*Id.*). RPE selected the name "Ratpac" as a "pun created by combining" the last names of its two founders (Brett Ratner and James Packer)—not to refer or relate to Plaintiff. (*Id.*).

During the period that Warner or its affiliates collaborated with RPE or its related entities, RPE owned a federal U.S. trademark registration for the mark RATPAC in International Class 36 for "financing services" and International Class 41 for "production and distribution of motion pictures and television programs", U.S. Trademark Registration No. 5,010,559 (the "RATPAC U.S. Registration"). *See* Request for Judicial Notice (concurrently filed), Declaration of Lindsay Korotkin ("Korotkin Decl."), Exs. 1-2. The RATPAC U.S. Registration issued on August 2, 2016, and is still partially active and incontestable in Class 36 under the Lanham Act, 15 U.S.C. § 1065. *See* Korotkin Decl., Exs. 1-3. Plaintiff never petitioned to cancel the RATPAC U.S. Registration. *See* Korotkin Decl., Ex. 1.

Plaintiff purports to be a German limited liability company with its principal place of business in Munich, Germany.[2] (Dkt. 1 ¶ 1). Plaintiff did not invent or "coin" the name RAT PACK.

---

[1] The Complaint does not identify this entity's members or their citizenship.
[2] The Complaint does not identify this entity's members or their citizenship.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)          - 11 -          DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

(Dkt. 1 ¶ 12). Rather, "RAT PACK" refers to "an informal group of A-list Hollywood actors who met from time to time in the Holmby Hills home of Humphrey Bogart and Lauren Bacall. During the 1960s, members of the 'rat pack' included Frank Sinatra, Dean Martin, Sammy Davis, Jr., Joey Bishop, and Peter Lawford." (*Id.*). Plaintiff does not allege to be affiliated with the "rat pack" or any members of that group. (*See generally id.*). Importantly, "Plaintiff has never sought registration of the [RAT PACK] mark in the United States." (Dkt. 1 ¶ 13). The Complaint does not expressly allege that Plaintiff owns "common law" unregistered trademark rights in the United States for RAT PACK. (*See generally* Dkt. 1). Tellingly, the Complaint neither informs the Court of RPE's RATPAC U.S. Registration, nor alleges the specific date by which Plaintiff allegedly established U.S. common law trademark rights in RAT PACK to support a claim of priority over RPE. (*Id.*).

The Complaint includes five counts for relief: (1) False Designation of Origin under the federal Lanham Act, 15 U.S.C. § 1125(a); (2) Statutory Unfair Competition under California's Business & Professions Code § 17200 et seq.; (3) False Designation of Origin under the laws of Austria; (4) False Designation of Origin under the laws of the Netherlands; (5) False Designation of Origin under the laws of Denmark (Count 3-5 are the "Foreign Claims"). As to the Foreign Claims, the Complaint fails to identify any specific legal or statutory authority, or what relief is available under these foreign laws (e.g. monetary, equitable, or both). (*Id.* ¶¶ 38-55).

## III.    LEGAL STANDARD

A complaint may be dismissed as a matter of law under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction" or Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), with enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). A complaint must state facts that "raise a right to relief above the speculative level." *Id.,* (citation omitted). A complaint must also be "plausible on its face," meaning that it must set forth "more than a sheer possibility that a defendant has acted unlawfully" and must state allegations that are "entitled to the

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                              - 12 -                    DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A district court may properly dismiss a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

For Rule 12(b)(6) purposes, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). On review of a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. A court also "is not obligated to make 'unwarranted deductions of fact, or unreasonable inferences'" in favor of the non-moving party. *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 621 (9th Cir. 2017). As such, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Mathew Enter., Inc. v. FCA US, LLC*, No. 16-CV-03551-LHK, 2016 WL 6778534, at *4 (N.D. Cal. Nov. 16, 2016), *aff'd*, 751 F. App'x 983 (9th Cir. 2018).

Under Rule 12(b)(1), dismissal is proper when a plaintiff fails to properly plead subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Even though defendants are moving to dismiss, plaintiff bears the burden of proving that this Court has jurisdiction to decide his case." *Ibrani v. Mabetex Project Eng'g*, No. C-00-0107 CRB, 2002 WL 1226848, at *2 (N.D. Cal. May 31, 2002); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."). A jurisdictional attack may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the

allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. When the motion attacks the complaint on its face, the court considers the complaint's allegations to be true, and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

District courts have discretion to exercise supplemental jurisdiction over claims for which federal courts lack subject-matter jurisdiction, provided that they are so related to federal claims in the action that they are part of the same case or controversy under Article III of the Constitution. However, courts may decline supplemental jurisdiction for exceptional circumstances, such as the values of judicial economy, convenience, fairness, and comity. *See* 28 U.S.C. § 1367(a), (c)(4); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997). Plaintiff has the burden of establishing a basis for supplemental jurisdiction. *See Ass'n of American Medical Colleges v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000). In assessing the "exceptional circumstances" basis to decline supplemental jurisdiction under Section 1367(c)(4), courts must conduct a two-part inquiry. First, the district court must "articulate why the circumstances of the case are exceptional." *Arroyo v. Rosas*, 19 F.4th 1202, 1210–11 (9th Cir. 2021). Then, the court should consider what "best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.*

As shown below, the Complaint fails to plausibly state a claim for relief and Plaintiff has not adequately pled a basis for a U.S. federal court's jurisdiction over the Foreign Claims.

**IV.   ARGUMENT**

   **A.   Laches Applies to Bar Plaintiff's Claims**

The Complaint should be dismissed under the doctrine of laches. "Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950–51 (9th Cir. 2001) (internal quotation marks omitted).[3] This doctrine may be applied at the motion to dismiss stage.[4]

---

[3] Laches applies to both Lanham Act and California state law UCL claims. *See Fitbug Ltd. v. Fitbit, Inc.*, 78 F.Supp.3d 1180, 1186 (N.D. Cal. 2015). For the Foreign Claims, the Complaint does not identify the specific foreign laws relied on to determine if laches may bar them as well.

[4] *Landrum v. Tyson*, No. CV 10-4795-VBF(RCX), 2011 WL 13217114, at *2 (C.D. Cal. May 16, 2011) (dismissing complaint with prejudice under laches when delay of as least fourteen years supported a

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)          - 14 -          DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

Courts in this Circuit analyze the laches defense for trademark claims with a two-step process, both of which support the application of laches under these facts.

First, courts "assess the plaintiff's delay by looking to whether the most analogous state statute of limitations has expired." *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018). The laches limitations period "starts from the time the plaintiff knew or should have known about its potential cause of action." *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) (citation and internal quotation marks omitted). Here, a four year statute of limitations applies for trademark infringement claims. *Pinkette*, 894 F.3d at 1025 ("The most analogous state statute of limitations in this case is California's four-year statute of limitations for trademark infringement actions."). "If the most analogous state statute of limitations expired before suit was filed, there is a strong presumption in favor of laches." *Id*. Thus, if Plaintiff knew or should have known of accused conduct more than four years prior to filing the Complaint—by June 19, 2019—then a presumption of laches applies.

Second, even if a presumption of laches applies, courts go on to assess the equity of applying laches. To do so, courts consider and weigh the following factors: (1) "strength and value of trademark rights asserted;" (2) "plaintiff's diligence in enforcing [the] mark;" (3) "harm to [the] senior user if relief [is] denied;" (4) "good faith ignorance by [the] junior user;" (5) "competition between [the] senior and junior users;" and (6) "extent of harm suffered by [the] junior user because of [the] senior user's delay." *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983). In analyzing these factors, "[t]he issue is not how many factors favor each party but their weight." *FLIR Systems, Inc. v. Sierra Media, Inc.*, 965 F.Supp.2d 1184, 1204 (D. Or. 2013) (citation omitted). If the *E-System* factors weigh in favor of laches, then the Court may apply laches to bar a claim.

As shown below, based on the face of the Complaint, in addition to judicially-noticeable

---

presumption of laches, and the face of the complaint supported a finding of economic and evidentiary prejudice); *Cabell v. Zorro Prods. Inc.*, No. 5:15-CV-00771-EJD, 2017 WL 2335597, at *10 (N.D. Cal. May 30, 2017) (granting motion to dismiss claim under laches because "[i]n order to . . . demonstrate the reasonableness of the delay under the doctrine of laches [] Plaintiff must plead specific facts . . . Plaintiff has not done so here."); *Russell v. Thomas*, 129 F.Supp. 605, 605–06 (S.D. Cal. 1955) (dismissing complaint under laches due to delay of over three years).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                              - 15 -                              DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

records of the U.S. Patent and Trademark Office, laches should be applied to bar Plaintiff's claims.

1. *A Presumption of Laches Applies Because Plaintiff Knew and Should Have Known of the Accused Conduct Over Four Years Ago*

Under the applicable four year limitations period, a presumption of laches should apply here. Plaintiff's admissions in the Complaint, coupled with judicially-noticeable records of the U.S. Patent and Trademark Office, demonstrate as a matter of law that Plaintiff both knew and should have known of the Defendants' accused conduct by no later than June 19, 2019. But Plaintiff delayed filing the Complaint until June 19, 2023. (Dkt. 1). Laches can be applied based on either standard—actual knowledge ("knew") or constructive knowledge ("should have known")—and both exist here. Therefore, the totality of the evidence supports a presumption of laches here.

In the Complaint, Plaintiff admits it had actual knowledge of the accused conduct prior to the June 19, 2019 triggering date. In fact, Plaintiff openly alleges that it was aware of Defendants' use of the accused RATPAC mark as early as 2014 and thus "knew" of Defendants and the accused conduct at least nine years before filing the Complaint in June *2023*. (*See, e.g.*, Dkt. 1 ¶¶ 15, 19-20, 22). This far surpasses the June 19, 2019 filing deadline under the applicable four year limitations period. *Pinkette*, 894 F.3d at 1025. Therefore, a presumption of laches applies because Plaintiff "knew" of the accused conduct within the limitations period.

In addition, the Court may also apply a presumption of laches based on a finding that Plaintiff "should have known" of the accused conduct. Under Ninth Circuit law, a federal trademark registration triggers the laches clock and failure to timely sue for infringement in connection with use of that mark is a basis to apply laches to such claims. *Id.* (applying a presumption of laches and finding party "should have known about its claims no later than when [the U.S. trademark] registration issued"). Here, judicially noticeable records of the U.S. Patent and Trademark Office records demonstrate that Defendant RPE's RATPAC U.S. Registration issued on August 2, 2016. This registration serves as constructive notice of RPE's nationwide rights in the RATPAC mark as of the registration date. *See* 15 U.S.C. § 1072 ("Registration of a mark . . . shall be constructive notice of the registrant's claim of ownership thereof."). This puts the laches clock at August 2, 2020 under the constructive knowledge "should have known" standard. But Plaintiff did not commerce

this action until June 19, 2023, which is outside the limitations period. *See supra* Section II. This case is akin to *E-Systems*, 720 F.2d at 607, where the court applied a presumption of laches because "[defendant] registered its trademark in 1972," "[b]ut plaintiff did not file suit for infringement . . . until 1978." Therefore, as a matter of law, Plaintiff "should have known" of the accused conduct within the limitations period, but declined to act.

In sum, whether by way of a finding of actual or constructive knowledge, the record at this stage makes clear that the Complaint was filed outside the four year limitations period. As such, a presumption of laches should apply as a matter of law.

2.    *All the E-System Factors Support Applying Laches*

The second step of the laches test also supports dismissing Plaintiff's Complaint because all the *E-System* factors favor Defendants. First, the "strength and value" of the asserted RAT PACK mark is low. *E-Systems*, 720 F.2d at 607. "A mark's strength is evaluated based on two components: the mark's inherent distinctiveness (i.e., its conceptual strength) and its recognition in the market (i.e., its commercial strength)." *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, No. 2:20-CV-08222-AB-SKX, 2023 WL 2942991, at \*7 (C.D. Cal. Apr. 10, 2023) (internal citations and quotation marks omitted). As noted above, Plaintiff's RAT PACK mark is weak and not distinctive for its services. *See supra* Section II; *infra* Section IV(B)(1). The Complaint also admits that Plaintiff has little-to-no U.S. market presence, which means the commercial strength of the asserted mark in the U.S. is non-existent or low. *Id.* Therefore, the first factor favors laches.

Second, Plaintiff clearly was not diligent in enforcing its alleged mark against Defendants in the U.S., as it waited nearly a decade to file this action. (Dkt 1 ¶¶ 15, 19-20, 22). Plaintiff's filing administrative trademark registration proceedings against RPE's marks in other countries around the world does not excuse its delay in the U.S. or against Warner. For example, in *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004), the Ninth Circuit found a plaintiff lacked diligence when it merely attempted to contact a defendant during, but failed to file suit in the U.S. within, the statutory period. Thus, the second factor favors laches.

The third factor of "harm to senior user if relief denied" also favors laches. *E-Systems*, 720 F.2d at 607. This factor "turns largely on the court's analysis of the likelihood of confusion." *Grupo*,

391 F.3d 1at 1103. But as noted above, there can be no likelihood of confusion as a matter of law since Plaintiff has not plausibly alleged valid U.S. trademark rights in the name RAT PACK. *See supra* Section II; *infra* Section IV(B)(1). Even if Plaintiff had alleged valid U.S. trademark rights in the name RAT PACK, it has not alleged any conduct by Warner that could trigger any likelihood of confusion. *See supra* Section II; *infra* Section IV(B)(2). Nor is it plausible that there could be any confusion between *de minimis* "credits" reference to Ratpac Entertainment in Warner's blockbuster English motion pictures and any "credits" reference to Rat Pack Filmproduktion GmbH in Plaintiff's German foreign language works. *See supra* Section II. Furthermore, as other courts have found, "even assuming this factor weighs strongly in [plaintiff's] favor . . . it would still be insufficient to sway the overall weight of the factors." *Fitbug*, 78 F.Supp.3d at 1194.

Fourth, the Complaint effectively concedes that Warner acted in "good faith ignorance", which weighs in favor of laches. *E-Systems*, 720 F.2d at 607. Although the Complaint fails to allege any conduct directly attributable to Warner, it appears to complain about *de minimis* references to RPE's RATPAC U.S. Registration in certain motion picture credits. The Complaint contains no allegations that Warner acted with knowledge of Plaintiff's alleged U.S. rights (if any) or bad faith in using the federally-registered RATPAC U.S. Registration/Ratpac Entertainment name in connection with its internationally distributed blockbuster motion pictures. This case is akin to *Pinkette*, where the Court found "good faith ignorance" when "[t]here was no indication that Pinkette was ever trying to hide its use of the mark; it was open and notorious." *Pinkette*, 894 F.3d at 1028; *see also Harman*, 2023 WL 2942991 at *10 (applying laches and finding that "voluminous sales" that were "open and notorious" supported a finding of "operating in good faith"). Thus, the fourth factor favors laches.

The Court can also find that the fifth factor favors laches because there is no "competition between [the] senior and junior users." *E-Systems*, 720 F.2d at 607. The Complaint admits that Plaintiff operates "primarily in Europe" producing only German foreign language films. (Dkt. 1 ¶¶ 11, 14). Such niche works do not compete with Warner's internationally released blockbuster English language motion pictures and Plaintiff has not and cannot plausibly allege otherwise. But even if competition between the parties was presumed at this early stage, this factor is not

dispositive and would not outweigh all the other factors in favor of laches. For example, in *Grupo*, 391 F.3d at 1105, the court found that "[o]n balance, the *E–Systems* factors weigh in" favor of laches, even though there was evidence of direct competition between the parties.

Lastly, the final factor of the "extent of harm suffered by [the] junior user because of [the] senior user's delay" also favors laches here because the Court can find prejudice as a matter of law at this stage. *E-Systems*, 720 F.2d at 607.[5] "[A] defendant can make the required showing of prejudice by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights," *Grupo*, 391 F.3d at 1105, or that "it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Danjaq*, 263 F.3d at 955. The face of the Complaint admits that Defendants have been prejudiced and harmed by Plaintiff's delay. For example, the Complaint admits that the Defendants entered into an agreement that "involved the investment of $450 million for . . . up to 75 feature films" and that "[o]ver time" the co-financed works included international blockbuster motion pictures like Gravity, American Sniper, and Wonder Woman. (Dkt. 1 ¶ 14). Defendants' operation and expansion of business under a financing relationship in connection with the RATPAC name is more than sufficient evidence of harm caused by Plaintiff's delay in taking any action against the Defendants in the U.S. *See supra* Section II. In fact, the Complaint seeks monetary damages for *nearly a decade of blockbuster motion picture releases*, as well as the extraordinary relief of "destruction, or . . . alter[ation of] . . . any and all labels, signs, prints, packages, wrappers, receptacles, DVDs, movies, shows, trailers, audiovisual materials, and advertisements in the possession or under the control of Defendants bearing the 'Ratpac' mark". (*Id.* at 15 ¶ 1(b)). If Plaintiff "had filed suit sooner, [Warner] could have invested its resources in" making minor modifications to its credits or packaging *prior to the release of 75 blockbuster motion pictures* to satisfy Plaintiff's demands (if they had merit)—attempting to do so after the works have entered and been in the stream of commerce for many years would be virtually impossible and unduly

---

[5] Under the *Pinkette* standard, the question of prejudice is considered within the context of the *E-System* factors. *See Pinkette*, 894 F.3d at 1027–28 (addressing prejudice under the sixth and final *E-Systems* factor and stating "[i]t is precisely these elements of delay find prejudice that the *E-Systems* factors are meant to identify.").

burdensome. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 839 (9th Cir. 2002). Indeed, the Ninth Circuit has also stated its agreement that investment of hundreds of millions of dollars in the development, production, marketing, and distribution of movies during a period of delay constitutes economic prejudice and that "it would be inequitable to permit [a plaintiff] to wait [for] years, [and] then to profit." *Danjaq*, 263 F.3d at 956. The potential harm to Warner is significant.

Therefore, because all the *E-Systems* factors weigh in favor of laches and it would be inequitable to permit Plaintiff to pursue its stale claims after knowingly sleeping on its alleged rights, this Court should apply laches to dismiss the Plaintiff's Complaint as a matter of law.

**B.      Plaintiff's Count One Claim for False Designation of Origin Under the Lanham Act Fails as a Matter of Law**

Plaintiff's failure to plausibly allege the elements of its false designation of origin claim under the Lanham Act, 15 U.S.C. § 1125(a), is a basis for dismissal under Rule 12(6)(6). To establish this claim, Plaintiff must show that "(1) it has a valid, protectable trademark, and (2) that [defendant's] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046–47 (9th Cir. 1998) (stating plaintiff must establish "distinctiveness" of the asserted mark).[6] But the Complaint does not plausibly allege facts to support a claim that Plaintiff owns unregistered trademark rights for a distinctive term RAT PACK in the U.S., let alone that such rights existed before Defendants' alleged use and remain active and enforceable in the present day. Nor are there any concrete allegations as to Warner that would support a claim that Warner's use is likely to cause confusion. Therefore, for the reasons set forth below, Count One of the Complaint must be dismissed for failure to state a claim. In addition, any attempt by Plaintiff to use this Lanham Act claim to recover relief for foreign conduct would be improper under controlling

---

[6] *See Columbia Pictures*, 1982 WL 1274 at *4 ("In order to prevail on a claim for trademark infringement of an unregistered trademark under Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a), the plaintiff must show first that the mark has become identified with the holder by acquiring a 'secondary meaning' and second, that the defendant has created a likelihood of confusion as to the origin of its product."). "The key distinction between trademark infringement and false designation of origin is that the former 'applies to federally registered marks' while the latter applies 'to both registered and unregistered trademarks.'" *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                              - 20 -

DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

Supreme Court precedent and should be rejected as a matter of law.

                1.     *The Complaint Does Not Plausibly Allege Unregistered U.S. Common Law Rights in a Distinctive Mark with Priority*

The Complaint is defective as it fails to plausibly establish the existence of protectable trademark rights in the U.S. for RAT PACK and priority over Defendants as to those rights, even though these are key elements of Plaintiff's Lanham Act claim. As the Complaint admits, "Plaintiff has never sought registration of the [RAT PACK] mark in the United States." (Dkt. 1 ¶ 13). Thus, Plaintiff bears the burden to establish common law trademark rights *in the United States* to support Count One. *See OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018) ("If a trademark is not registered, then a plaintiff may still assert a claim for infringement of its protectable trade dress right, but that plaintiff bears the burden to establish distinctiveness and non-functionality."). But the Complaint fails at this task. Therefore, Count One fails as a matter of law.

Plaintiff concedes that its alleged mark "RAT PACK" is not distinctive and does not have secondary meaning as a source identifier for *Plaintiff's* goods or services. Rather, according to the Complaint, "[t]he original 'rat pack' was an informal group of Hollywood actors who met from time to time in the Holmby Hills home of Humphrey Bogard and Lauren Bacall. During the 1960s members of the 'rat pack' included Frank Sinatra, Dean Martin, Sammy Davis, Jr., Joey Bishop, and Peter Lawford." (Dkt. 1 ¶ 12). Nowhere in the Complaint does Plaintiff provide any plausibly support for the requisite point that U.S. consumers could somehow recognize RAT PACK as a source identifier for *Plaintiff* and its foreign offerings, rather than a group of Hollywood actors. Plaintiff's failure to plausibly allege enforceable trademark rights is grounds for dismissal. *See, e.g.*, *Webpass Inc. v. Banth*, No. C14-02291 HRL, 2014 WL 7206695, at *3 (N.D. Cal. Dec. 18, 2014) (dismissing claim when "the Complaint does not contain any allegations regarding [] ownership of a protectable trademark, service mark, trade name, or other designation . . ."). Furthermore, that Plaintiff may have allegedly been involved in one-off screenings alleged to have taken place in the U.S. is insufficient. The Complaint lacks any specificity as to the time and location of those events, nor any basis to conclude that the term RAT PACK was prominently used

as a consumer-facing and source-identifying trademark at those alleged events. (*See* Dkt. 1 ¶¶ 11-13). Either way, "priority of use in one geographic area within the United States does not necessarily suffice to establish priority in another area." *Grupo,* 391 F.3d at 1096. Thus, even if plausibly alleged, occasional sporadic use of RAT PACK at niche film festivals in singular locations in the U.S. would be insufficient to establish or maintain common law rights enforceable under the Lanham Act under Count One. *Id.*

Plaintiff's alleged remote and regional use in Europe is also insufficient to establish enforceable trademark rights in the United States. Trademark rights are territorial. *Abitron Austria GmbH v. Hetronic International, Inc.*, 143 S. Ct. 2522, 2533 (June 29, 2023); *Schele v. Mercedes-Benz USA, LLC*, No. C 10-1643 RS, 2011 WL 1088760, at *3 (N.D. Cal. Mar. 11, 2011). Thus, "[p]riority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world. Earlier use in another country usually just does not count." *Schele*, 2011 WL 1088760 at *3 (citations and internal quotation marks and alterations omitted). The outcomes of Plaintiff's foreign trademark registration proceedings against RPE and Plaintiff's alleged foreign trademark rights are therefore irrelevant to Count One and cannot be used as a basis to plausibly support U.S. trademark claims, even though the bulk of the Complaint is devoted to them.

The Complaint also fails to acknowledge that Warner's co-defendant RPE owns the incontestable RATPAC U.S. Registration, which issued in 2016 with a November 8, 2014 application filing priority date and a first use in commerce date of at least as early as September 30, 2013. *See supra* Section II; Request for Judicial Notice; Korotkin Decl., Exs. 1-3; *see generally* 15 U.S.C. § 1065. Plaintiff has not plausibly alleged facts to claim that it established unregistered trademark rights to "RAT PACK" in the US *prior* to these critical dates, or that any such alleged rights once established were maintained through continuous national use to be valid and enforceable in 2023 as asserted in the Complaint. *See generally* 15 U.S.C. § 1127 (defining "use in commerce"). These pleading errors are also fatal. "A plaintiff claiming an unregistered trademark must [] allege[] *sufficient facts* to support its assertion that it has a valid ownership interest in the mark. When a plaintiff claims priority by alleging that the plaintiff used the mark in commerce

before a defendant, that plaintiff must allege the plaintiff's date of first use." *EVO Brands, LLC v. Al Khalifa Group LLC*, No. 2:22-cv-03909-AB-MAR, 2023 WL 2768743, *7 (C.D. Cal. Feb. 23, 2023) (citations omitted). But these facts are missing from the Complaint.[7] Thus, the Complaint fails for the additional reason that Plaintiff has not plausibly alleged the existence of valid U.S. trademark rights with priority over RPE's registered incontestable RATPAC U.S. Registration *in the United States. See, e.g.*, *Starbuzz Tobacco, Inc. v. Fantasia Distrib., Inc.*, No. SACV 12-1328 JVS (JPRx), 2012 WL 12892505, at *6-7 (C.D. Cal. Dec. 5, 2012) (dismissing complaint for failure to adequately allege priority trademark rights).

> 2.      *The Complaint Does Not Allege How Warner's Alleged Use Of The Accused Mark is Likely to Cause Confusion or Mistake, or to Deceive Consumers*

The Complaint also fails to set forth how or when Warner could have created any likelihood of confusion, even though this is the final requisite element of Plaintiff's Lanham Act claim. *See Columbia Pictures Industries, Inc. v. Embassy Pictures*, No. CV 82-2376-Kn, 1982 WL 1274, at *6 (C.D. Cal. May 27, 1982). Rather, Plaintiff merely pleads in conclusory fashion the legal elements of the claim. The Complaint never sets forth how or when it alleges that Warner used the accused RATPAC trademark. Indeed, the Complaint barely even mentions Warner, which raises questions as to why Warner was even named as a defendant. The few mentions of specific Warner conduct do not provide a basis for Lanham Act liability. For example, that Warner "str[uck] a deal" with Ratpac and another entity named Ratpac-Dune Entertainment to co-finance "up to 75 feature films" does not amount to trademark use. (Dkt. 1 ¶ 14). Privately entering into an agreement for the financing of movies cannot create a likelihood of consumer confusion. *Cf. 555-1212.com, Inc. v. Commc'n House Intern., Inc.*, 157 F.Supp.2d 1084, 1092 (N.D. Cal. 2001) ("[M]ere reservation of a domain name, without use in connection with any commercial enterprise, fails to trigger infringement by confusion under the Lanham Act."). The allegation in Paragraph 14 that "pursuant

---

[7] In paragraph 12, Plaintiff generally alleges that "[s]ince January 2002, Plaintiff has marketed its products and services, both in Europe and the United States, under the trademark 'Rat Pack'." (Dkt. 1 ¶ 12). But Plaintiff does not expressly allege a specific U.S. first use date, even though it concedes that its films "have been distributed primarily in Europe." (*Id.* ¶ 11). That its operations began in Europe in 2002 and have since allegedly come to touch on the U.S. is vague and insufficient. The other allegations lack specificity as to time, location, or extent of alleged trademark use to support a claim of unregistered U.S. trademark rights.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                    - 23 -                    DEF. WARNER BROS. ENTERTAINMENT INC.'S MOTION TO DISMISS THE COMPLAINT

to the investment between them, Defendants have jointly marketed and distributed these films internationally – including in Europe and the United States – with prominent 'Ratpac" branding" (aside from being incorrect) also lacks specificity; it does not inform Warner of the Warner conduct Plaintiff alleges to be infringing or identify how the sophisticated consumers could be confused between Plaintiff's niche German language works and Defendants' English blockbuster motion pictures. *Id.* And the boilerplate allegations in Paragraphs 27-30 are conclusory and lack specific allegations of infringing conduct by Warner to satisfy the requirements of *Twombly* and *Iqbal*. (Dkt. 1 ¶¶ 27-30). Thus, Plaintiff's conclusory Complaint is insufficient as it fails to plead with particularity that Warner's use is likely to cause confusion, or to cause mistake, or to deceive consumers, and how.

### 3. *The Lanham Act Does Not Permit Relief for Foreign Conduct*

Lastly, to the extent Plaintiff is attempting to use its Lanham Act claim to obtain relief and recovery for alleged foreign conduct, this request fails as a matter of law. (*See, e.g.*, Dkt. 1 at 15 ¶¶ 1(b), 2(a)) (seeking injunctive relief of "destruction" of things and monetary relief for "all unauthorized uses" without any jurisdictional limitations). The Supreme Court recently rejected attempts to extend the reach of trademark claims under the Lanham Act outside of the United States, and held that Section 1114(1)(a) and 1125(a)(1) of the Lanham Act are not extraterritorial and extend only to claims where the infringing use in commerce is domestic. *Abitron Austria GmbH*, 143 S. Ct. at 2534 (reversing jury award of damages for *global* sales under Lanham Act infringement claims). As such, no federal court may impose the U.S. Lanham Act onto claims of purported trademark infringement arising in connection with conduct in foreign jurisdictions because Congress did not intend for the Lanham Act to reach conduct in foreign jurisdictions. *Id.* at *8-9. Therefore, to the extent Count One is not dismissed in its entirety, it should be limited as a matter of law to a prayer for relief limited to conduct *in the United States*.

### C. **Plaintiff's California Unfair Competition Claim Fails as a Matter of Law**

Dismissal under Rule 12(b)(6) of Count Two for unfair competition under Section 17200 California Unfair Competition Law ("UCL") is also warranted. First, dismissal of Count One under the Lanham Act for failure to state a claim necessitates dismissal of the UCL claim. *See generally*

*Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."). In addition, dismissal is warranted due to a lack of standing and the statute of limitations.

### 1. *Plaintiff Has Not Plausibly Alleged Standing for its UCL Claim*

Plaintiff's claim for unfair competition under Section 17200 California Unfair Competition Law ("UCL") fails as a matter of law because the Complaint does not plausibly allege that Plaintiff has standing to assert this claim. California courts recognize that "[S]ection 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." Further, merely alleging that the defendant's principal place of business is in California is not sufficient to evade dismissal. *See, e.g.*, *Zamfir v. CasperLabs,* LLC, No. 21-CV-474 TWR (AHG), 2022 WL 14915618, at *15 (S.D. Cal. Oct. 25, 2022) (holding that the plaintiff lacked standing for the UCL claim where the complaint only alleged that the defendant's principal place of business was in California). Rather, a complaint must allege that there was something more in order to establish standing. *Id.* But here, the Complaint fails to allege facts establishing that the alleged misconduct occurred in California. Rather, the lone allegation that could be construed as attempting to support UCL standing is that Warner has its principal place of business in California. (Dkt. 1 ¶ 2). But this barebones jurisdictional allegation is insufficient to establish standing for a viable UCL claim. Therefore, dismissal is warranted.

### 2. *Plaintiff's UCL Claim is Time-Barred*

Plaintiff's UCL claim should also be rejected under the statute of limitations. This claim is subject to a four year statute of limitations. *See* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."). Therefore, at best, Plaintiff's UCL claim only applies to Warner's alleged conduct (whatever that is, if anything) between June 19, 2019, and June 19, 2023 (when Plaintiff filed the Complaint). (Dkt. 1). However, Plaintiff appears to be seeking damages going back as far as 2013. (Dkt. 1 ¶ 14; Dkt 1 p. 15 ¶ 2(a)). Therefore, to the extent damages are even permitted under the UCL claim, the Complaint's request for damages for conduct prior to June 19,

2019, fails as a matter of law and should be dismissed.

Further, applying the four year statute of limitations at this stage also mandates dismissal of the UCL claim as a whole. The Complaint fails to allege or specify any conduct by Warner between June 19, 2019, and June 19, 2023, to support the UCL claim. Rather, the latest specific conduct alleged as attributable to either Defendant dates back to 2015. (Dkt. 1 ¶ 16). Therefore, the Complaint fails to provide any notice or plausibly allege any facts detailing conduct during the actionable time period that might support a UCL claim. This defect is fatal.

**D.     Plaintiff's Counts Three Through Five for Foreign Trademark Infringement in Austria, the Netherlands, and Denmark Should Be Dismissed for Lack of Jurisdiction and Forum Non Conveniens**

Counts Three, Four, and Five should be dismissed for failure to establish a basis for jurisdiction and *forum non conveniens* and the Court should decline to exercise supplemental jurisdiction over them. These claims ask the U.S. Court to apply foreign trademark laws to allegedly foreign conduct and issue both monetary damages for foreign uses and injunctive relief abroad. Among other things, Plaintiff seeks damages for loss of "substantial sales, profits, and royalties" that it "otherwise would have earned" in Austria (Dkt. 1 ¶ 43), the Netherlands (*Id.* ¶ 49), and Denmark (*Id.* ¶ 55) but for Defendants' alleged conduct in those countries. Plaintiff also seeks global injunctive relief that at least in part is not limited to the borders of the U.S. (*Id.* at p. 15 ¶ 1(b)) (seeking an order without jurisdictional limit "[c]ompelling Defendants to destroy, or deliver to Rat Pack for destruction, or to alter the labeling to some non-infringing form on, any and all labels, signs, prints, packages, wrappers, receptacles, DVDs, movies, shows, trailers, audiovisual materials, and advertisements in the possession or under the control of Defendants bearing the 'Ratpac' mark or any other mark confusingly similar to "Ratpack".). As shown below, dismissal for lack of jurisdiction is appropriate under these facts.

        1.     *Plaintiff Has Not Pled a Basis for Diversity Jurisdiction and the Court Should Decline to Exercise Supplemental Jurisdiction Over the Foreign Claims*

The Complaint makes a cursory reference to diversity jurisdiction without indicating if it is relying on diversity for the Foreign Claims, but either way, the basis for diversity jurisdiction has not been adequately pled. (Dkt. 1 ¶ 6); *see supra* Section II & notes 1-2. "The party seeking to

invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *Rainero v. Archon Corp.*, 844 F.3d 832, 840 (9th Cir. 2016). RPE and Plaintiff are limited liability companies. (Dkt. 1 ¶¶ 1-2 ). "LLCs are citizens of every state of which its owners/members are citizens." *Gateway Network Connections, LLC v. Matulich*, No. 1:22-CV-00024, 2022 WL 19456371, at *1 (D. Guam Dec. 16, 2022).[8] But the Complaint does not address the makeup or citizenship of the Plaintiff or RPE members or owners. This defect is fatal to any request for diversity jurisdiction and demonstrates that Plaintiff has not met its pleading burdens. *Id.* at *2 ("Here, Plaintiffs have failed to sufficiently allege the citizenship of Plaintiff ACE and GTA (members of Plaintiff GNC) within their complaint, which warrants dismissal of their complaint.").[9] These pleading defects warrant dismissal.

The Court should also decline supplemental jurisdiction over the Foreign Claims, which are tied to foreign and distinct conduct and facts from that alleged in the United States. Federal courts, including those within this Circuit, routinely decline supplemental jurisdiction over foreign infringement claims of this ilk that ask U.S. courts to apply *foreign* intellectual property rights and *foreign* laws to *foreign* conduct. *See, e.g.*, *Levi Strauss & Co. v. AmericanJeans.com, Inc.*, No. 5:10–CV–05340 JF (PSG), 2011 WL 1361574, at *2 (N.D. Cal. Apr. 11, 2011); *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*, No. C 11-01036 JSW, 2011 WL 13152817, at *3 (N.D. Cal. July 14, 2011) ("[I]t is almost always an abuse of discretion to use that supplemental power to deal with infringement claims involving foreign patents.") (citation omitted).[10] The case *Levi Strauss*, 2011 WL 1361574 at *2 is particularly instructive. That court declined to exercise supplemental jurisdiction over alleged trademark infringement claims arising under European trademark laws based on multiple factors that are equally applicable here.

---

[8] Authority also supports a finding that "a GmbH is the German equivalent of an LLC in the United States." *Putzmeister Am., Inc. v. Pompaction Inc.*, 586 F.Supp.3d 868, 875 (E.D. Wis. 2022) (finding no diversity jurisdiction at the motion to dismiss stage due to failure to allege facts in support of this claim).

[9] Further, the Supreme Court recently indicated that the presumption against extraterritoriality applies not just to substantive provisions and causes of action but also to statutes that "merely confer[] jurisdiction", which suggests that it would be applicable to foreign plaintiff's claims arising in connection with foreign conduct under foreign laws. *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 351 (2016).

[10] *See also Voda v. Cordis Corp.*, 476 F.3d 887, 902 (Fed. Cir. 2007) (declining supplemental jurisdiction and holding that "foreign patent infringement claims should be left to the sovereigns that create the property rights in the first instance.").

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                    - 27 -                    DEF. WARNER BROS. ENTERTAINMENT INC.'S MOTION TO DISMISS THE COMPLAINT

First, the *Levi Strauss* court found that extending supplemental jurisdiction to the foreign trademark infringement claims would violate obligations that the U.S has under international treaties. In particular, it "would require defining the scope of the trademark right granted to [plaintiff] by the European Union and determining whether [defendant] has trespassed that right" in contravention to "the obligations of the United States under the Paris Convention and TRIPS, which provide for the independence of each country's system for adjudicating trademark rights." *Id.* at *2-3 (citing the Paris Convention art. 2, Apr. 26, 1970, 21 U.S.T. 1683; Agreement on Trade–Related Aspects of Intellectual Property Rights art. 41, Apr. 15, 1994, 1867 U.N.T.S. 154, 33 I.L.M. 1144). The same holds true here.[11]

Second, the *Levi Strauss* court expressed concern for the legal principle of comity, i.e., the "spirit of cooperation" between jurisdictions. Given that intellectual property rights are "territorial", the court noted that exercising supplemental jurisdiction over the European trademark law claims would be improper as "it would be incongruent to allow the sovereign power of one [government] to be infringed or limited by another sovereign's extension of its jurisdiction." *Id.* at *3 (citation omitted; alteration in original). Consequently, the court ruled that "considerations of comity suggest strongly that [plaintiff's] European trademark rights be adjudicated by European courts." *Id*. The same concerns for comity are applicable to Plaintiff's claims under foreign laws.

Lastly, the *Levi Strauss* court determined that the principles of judicial economy would not be furthered by exercising supplemental jurisdiction over foreign trademark claims because "federal courts in the United States have little experience in applying the trademark laws of the European Union." *Id*. As a result of this lack of experience, the federal court proceeding might have been prolonged or subject to augmented costs. *Id.*; *see generally* Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just,

---

[11] The same international concerns lead the U.S. Supreme Court to limit relief under Lanham Act claims to conduct occurring in the U.S. *Abitron Austria GmbH*, 143 S. Ct. at 2534 (noting European Union's *amicus curiae* brief that "gravely warns this Court against applying the Lanham Act 'to acts of infringement occurring ... in the European Union' and outside of the United States. To 'police allegations of infringement occurring in Germany,' it continues, would be an 'unseemly' act of 'meddling in extraterritorial affairs,' given 'international treaty obligations that equally bind the United States.' As the Commission and other foreign amici recognize, the 'system only works if all participating states respect their obligations, including the limits on their power.' *Id*. at *9 (emphasis added; internal citations omitted).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                - 28 -                DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

speedy, and inexpensive determination of every action and proceeding."). Likewise, it is without question that this action would be delayed and needlessly complicated if the Court, parties, and jury were tasked with becoming experts on the distinct trademark laws of three foreign countries to adjudicate the Foreign Claims.

Therefore, like in *Levi Strauss* and other compelling case law, this Court should reject Plaintiff's request for a U.S. court to adjudicate foreign infringement claims based on conduct allegedly committed in foreign jurisdictions in violation of foreign rights and laws. It is obvious that this Court lacks expertise in applying the laws of Austria, the Netherlands, or Denmark, and would not achieve judicial economy by applying all three of these jurisdictions' trademark laws in a single lawsuit. Equally important, the interests of Austria, the Netherlands and Denmark in adjudicating claims based on their own laws and regarding conduct in their own jurisdictions are far greater than the interests of the United States (if any). Nor would dismissal prejudice Plaintiff as it is free to pursue the Foreign Claims in those foreign countries. Therefore, supplemental jurisdiction should be rejected under these facts.

2.      *Plaintiff's Foreign Claims Must Also Be Dismissed for Forum Non Conveniens*

*Forum non conveniens* provides an additional basis for dismissing Plaintiff's Foreign Claims. "In dismissing an action on *forum non conveniens grounds* the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). Especially relevant to the facts here, a foreign plaintiff's choice of forum merits less deference than that of a plaintiff who resides in the selected forum, and the showing required for dismissal is reduced in this context. *See Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 769 (9th Cir. 1991). The private interest factors are: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* at 1145-46. The public interest factors are: (1) local

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)          - 29 -          DEF. WARNER BROS. ENTERTAINMENT
INC.'S MOTION TO DISMISS THE
COMPLAINT

interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Id*. at 1147. If the "balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Lockman Found.*, 930 F.2d at 767. Applying those factors here, it is clear that the private and public interests strongly favor adjudication of the Foreign Claims in Denmark, The Netherlands, and Austria, and not the U.S., such that dismissal under *forum non conveniens* is warranted. *See, e.g.*, *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 769 (9th Cir. 1991) (finding district court did not abuse its discretion in concluding that Japan was an adequate and more convenient forum for adjudicating copyright and other claims).

First, an alternative forum clearly exists here. "[A]n alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum." *Lueck*, 236 F.3d at 1143. To be adequate, "[t]he foreign forum must provide the plaintiff with some remedy for his wrong in order." *Id.* Here, Plaintiff concedes in the Complaint that it could pursue its actions abroad but is voluntarily declining to do so in an act of forum shopping (evidently to try to avoid circumventing the proper process of international enforcement of judgments). (Dkt. 1 ¶ 24) ("Rather than file monetary claims against Defendants in Austria, the Netherlands, and Denmark, and then seek to domesticate any resulting judgments in Los Angeles for the purpose of collection, Rat Pack has elected to come to Los Angeles first."). Thus, an alternative forum in Europe can be found as a matter of law.

California residents do not have particular interest in the outcomes of claims regarding alleged foreign trademark infringement involving foreign trademark rights in Austria, the Netherlands, or Denmark. On the other hand, the residents of each of those countries have particular interests in the proper application of their country's trademark laws and alleged rights. Second, U.S. courts are not familiar with these foreign countries' trademark laws. Third, it would be unduly burdensome on this Court to apply three foreign countries' trademark laws in a single lawsuit. Likewise, U.S. counsel should not have to gain expertise in the trademark laws of these three foreign countries, and it would be better for the adversarial adjudication of these disputes to rely

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                                    - 30 -                    DEF. WARNER BROS. ENTERTAINMENT INC.'S MOTION TO DISMISS THE COMPLAINT

on attorneys and judges in those foreign jurisdictions who have far greater expertise on the laws and rights at hand. Fourth, adjudication of the Foreign Claims would needlessly delay and complicate this proceeding (if not dismissed *in toto*), likely involving the use of foreign experts on these three foreign laws and interpreters or translators. It will also add to the congestion of U.S. federal courts with claims that are of little interest to U.S. citizens and could be resolved more efficiently by foreign courts. Fifth, adjudication of the foreign claims in the U.S. would unnecessarily increase the costs of this action and force counsel and the Court to become experts in at least three foreign countries' laws, even though the Foreign Claims are unrelated to this forum. Together, these public interests all provide a compelling basis for dismissal under *forum non conveniens*.

In addition, the private interests also strongly favor dismissal and adjudication of the Foreign Claims abroad. Plaintiff alleges that it resides in Europe (Dkt. 1 ¶ 1) and that the accused foreign harms occurred overseas (*Id.* ¶¶ 43, 49, 55). Thus, key witnesses, documents, and evidence are likely to be located in Austria, the Netherland, and Denmark, not the U.S. Having the foreign claims adjudicated abroad would be more convenient to the litigants and these witnesses, and far less expensive to the parties. Further, given the importance of the actions and witnesses abroad, unwilling foreign witnesses will likely be unable to be compelled to testify and appear in a U.S. court. There are also open questions as to whether judgments on the foreign claims by a U.S. court would be valid and enforceable considering that the Complaint does not even list the specific statutory authority or law for the Foreign Claims. *See supra* Section II. Lastly, as shown in the exhibits for the Complaint, Plaintiff has already initiated as least three foreign actions involving the foreign marks and allegations at issue here in the Foreign Claims. The private interests also provide a convincing basis for dismissal under *forum non conveniens*.

In sum, the courts of Austria, the Netherlands, and Denmark provide adequate alternative and indeed superior forums for Plaintiff's Foreign Claims, the private and public interest factors support the foreign forums, and any arguments to the contrary would be specious. This case is akin to *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 951 (9th Cir. 2017), in which the Ninth Circuit affirmed dismissal under *forum non conveniens*. In *Ayco Farms*, the courts found that private and

public interests strongly favored adjudication in Mexico when a claim involved a Mexican contract, events that occurred abroad, foreign evidence and witnesses that likely could not be compelled to testify in a U.S. court, a prior filed related action in Mexico, and a dispute that would require application of foreign laws. Like in *Ayco Farms*, the private and public interests also favor a foreign forum, such that this Court should dismiss the Foreign Claims under the doctrine of *forum non conveniens*.

## V.    CONCLUSION

For the foregoing reasons, Defendant Warner respectfully requests that the Court grant its motion and dismiss the Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and/or 12(b)(6) and for all the reasons set forth in the separate Motion to Dismiss filed by RPE on August 24, 2023.

Dated:  August 25, 2023                    **ARENTFOX SCHIFF LLP**


By:  */s/ Jessica B. Do*
_____
Lindsay Korotkin (*pro hac vice pending*)
Jessica B. Do
Attorneys for Defendant
WARNER BROS. ENTERTAINMENT INC.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

2:23-cv-4790-MEMF-AS(x)                    - 32 -                    DEF. WARNER BROS. ENTERTAINMENT INC.'S MOTION TO DISMISS THE COMPLAINT