ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@rossllp.la
Charles Avrith (State Bar No. 96804)
  cavrith@rossllp.la
Eric C. Lauritsen (State Bar No. 301219)
  elauritsen@rossllp.la
1900 Avenue of the Stars, Suite 1225
Los Angeles, California 90067
Telephone: (424) 704-5600
Facsimile: (424) 704-5680

Attorneys for Plaintiff
RAT PACK FILMPRODUKTION GMBH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, CENTRAL DIVISION

| | |
|---|---|
| RAT PACK FILMPRODUKTION GMBH, a German limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>RATPAC ENTERTAINMENT, LLC, a Delaware limited liability company; WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. 2:23−cv−04790 MEMF (ASx)<br><br>Hon. Maame Ewusi−Mensah Frimpong<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT RATPAC ENTERTAINMENT, LLC'S MOTION TO DISMISS**<br><br>Date:   December 14, 2023<br>Time:   10 a.m.<br>Room:  8B<br><br>Action Filed:  June 19, 2023<br>Trial Date:    None set |

# TABLE OF CONTENTS

**Page(s)**

I.      PRELIMINARY STATEMENT ........................................................................5

II.     FACTS ...........................................................................................................5

III.    ARGUMENT ..................................................................................................7

  A.    Rat Pack Has Properly Plead Its Claims............................................7

    1.    Legal Framework........................................................................7

    2.    Rat Pack's Allegations Do Not Establish Ratpac's Laches Affirmative Defense As A Matter Of Law........................................................8

  B.    Dismissal For *Forum Non Conveniens* Is Improper.......................13

    1.    Legal Framework......................................................................13

    2.    This Is An Appropriate, Reasonable, And Convenient Forum .................14

  C.    If Necessary, Leave To Amend Should Be Granted ....................................16

IV.     CONCLUSION...............................................................................................16

PLAINTIFF'S OPPOSITION TO RATPAC'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*24/7 Customer, Inc. v. 24–7 Intouch*,
    No. 5:14–cv–02561–EJD, 2015 WL 1522236 (N.D. Cal. Mar. 31, 2015) .............8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................7

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) ...............................................................13, 14, 15

*Danjaq LLC v. Sony Corp.*,
    263 F.3d 942 (9th Cir. 2001) ...............................................................................8

*Dirk Ter Haar v. Seaboard Oil Co. of,*
    *Del.*, 1 F.R.D. 598 (S.D. Cal. 1940) ....................................................................8

*Dole Foods Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ...........................................................................13

*E-Systems, Inc. v. Monitek*,
    720 F.2d 604 (9th Cir. 1983) .............................................................................11

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 ......................................................................................................13

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
    559 F.3d 985 (9th Cir. 2009) .............................................................................11

*Obesity Research Institute, LLC  v. Fiber Research International, LLC*,
    165 F. Supp. 3d 937 (S.D. Cal. 2016) ..................................................................8

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
    894 F.3d 1015 (9th Cir. 2018) ...........................................................................11

*Piper Aircraft Co v. Reyno*,

PLAINTIFF'S OPPOSITION TO RATPAC'S MOTION TO DISMISS

454 U.S. 235 (1981)...............................................................................................13

*Prudential Ins. Co. of Am. v. Pru.com*,
   546 F. Supp. 3d 476.........................................................................................9

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) .........................................................................14

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) .......................................................................16

*U.S. v. Black*,
   512 F.2d 864 ...................................................................................................11

*WB Music Corp. v. Futuretoday, Inc.*,
   No. 2:18-cv-01238-CAS, 2018 WL 4156589 (C.D. Cal. Aug. 28, 2018) ............10

*Zosma Ventures, Inc. v. Givi*,
   No. 14-cv-00891-RSWL, 2014 WL 12579805 (C.D. Cal. Oct. 28, 2014) ...........15

State Statutes

7 (9th Cir.................................................................................................................11

Rule 12(b)(6) of the Federal Rules of Civil Procedure .........................................7, 8

PLAINTIFF'S OPPOSITION TO RATPAC'S MOTION TO DISMISS

## I.    PRELIMINARY STATEMENT

Plaintiff Rat Pack Filmproduktion GmbH ("Rat Pack") competes with Defendant Ratpac Entertainment, LLC ("Ratpac") and co-defendant Warner Bros. Entertainment, Inc. ("Warner," and together with Ratpac, "Defendants") in the fields of film production and finance in the United States and Europe.  And the trademarks the parties use while doing so—"Rat Pack" and "Ratpac"—are phonetically identical and sufficiently similar visually as to render confusion virtually inevitable among consumers in any market in which the parties both participate.  So, Rat Pack, which started using its mark long before Defendants started using theirs, commenced these proceedings to obtain relief.  Now, after arriving late to this action, Ratpac has filed a motion asking the Court to dismiss it at the pleading stage on the grounds of, first, the affirmative defense of laches, and second, forum non conveniens, a doctrine intended to prohibit plaintiffs from bringing cases in a forum that is unduly inconvenient to defendants.

Ratpac's motion is baseless.  Ratpac has not come close to making the required showing that the face of the complaint demonstrates as a matter of law the existence of laches.  To the contrary, the complaint squarely cuts against the application of the laches defense.  Moreover, Rat Pack has commenced these proceedings in a forum that the Ninth Circuit has described as "quintessentially convenient" under the circumstances of this case.  Ratpac's motion should thus be denied.

## II.    FACTS

Rat Pack is a German company that has been engaged in the field of film finance and production since early 2002.  Complaint (Dkt. 1) at ¶¶ 1, 10, 12.  The company primarily serves the European market, but its films have been widely distributed throughout the United States, as well.  *Id.* ¶ 11.  Several of its films have been commercially released in this country, and its films have been showcased at American film festivals every year since at least 2011.  *Id.*  Moreover, in 2008, one

-5-

of its films was featured at the esteemed Sundance festival, and many of its releases available to American viewers today through premier streaming services like Hulu, Amazon Prime Video, and Netflix. *Id.* ¶¶ 11-12.

Throughout Rat Pack's history, it has included prominent "Rat Pack" branding in its films and associated promotional materials. *Id.* ¶ 12. For example, the mark appears in the opening and closing credits of the company's films themselves, on promotional posters and DVD packages, and even on promotional toys that have been included with McDonalds Happy Meals. *Id.*

In 2013, Brett Ratner and James Packer founded Ratpac, which is also engaged in film finance and production. *Id.* ¶ 14. Shortly after Ratpac's founding, the company reached an agreement with its co-defendant Warner involving the investment of $450 million in the production of up to 75 feature films—a set that would eventually include major titles like "Gravity," "American Sniper," and "Wonder Woman." *Id.* The films produced and distributed pursuant to this agreement have all contained prominent "Ratpac" branding. *Id.*

Rat Pack and Ratpac have been fighting about their respective trademark rights ever since. Ratpac sought to register a trademark for the term "RATPAC" in the European Union in 2014 for film financing and distribution, and Rat Pack opposed it. *Id.* ¶ 15. In response, Ratpac withdrew its application and agreed to refrain from use of the "RATPAC" mark in Germany. *Id.* But Ratpac continued to pursue its trademark rights elsewhere, including by seeking to register the "RATPAC" mark in Austria, the Netherlands, and Denmark in related fields. *Id.* Rat Pack opposed these applications and/or sought cancellation of Ratpac's resulting registrations in these countries, as well, and through appeals processes that have continued through at least November 1, 2021, its efforts have been successful. *Id.* ¶¶ 16-23. Indeed, the applicable tribunals in all three countries have recognized Rat Pack's superior and valid rights in the "Rat Pack" trademark and the inevitability of

consumer confusion in light of the obvious similarities between the "Rat Pack" and "RATPAC" marks. *Id.*

To date, Rat Pack's litigation efforts have not involved the pursuit of money damages or a disgorgement of Defendants' unjust enrichment. *Id.* ¶ 24. At least in part, this is based on a custom in Europe for trademark owners to pursue non-monetary relief first, and then seek monetary relief in separate actions thereafter. *Id.* Rat Pack filed the instant action in Los Angeles—the home jurisdiction of both defendants—to pursue monetary relief based on the European infringements and to pursue declaratory, injunctive, and monetary relief based on the as-yet unlitigated matter of Defendants' infringements within the United States, as well. *Id.*

## III.   ARGUMENT

### A.   Rat Pack Has Properly Plead Its Claims

#### 1.   Legal Framework

Ratpac has moved to dismiss Rat Pack's claims related to infringement in the United States—its first and second claims pled in the complaint—pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). Plaintiffs do not need to plead "detailed factual allegations," but they must allege more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Courts must accept all factual allegations contained in a complaint as true. *Iqbal*, 556 U.S. 678 (citing *id.*).

PLAINTIFF'S OPPOSITION TO RATPAC'S MOTION TO DISMISS

## 2. Rat Pack's Allegations Do Not Establish Ratpac's Laches Affirmative Defense As A Matter Of Law

Ratpac's sole argument for dismissal under Rule 12(b)(6) is that Rat Pack's first and second claims fail under the affirmative defense of laches.  Ratpac's arguments are meritless.

The laches defense applies where a plaintiff delays unreasonably in bringing an action and the delay causes prejudice to the defendant.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).  Ratpac provides a string citation of predominantly out-of-circuit, old, and unpublished authorities for the proposition that laches *may* be found at the motion to dismiss stage, but these authorities are the exceptions, not the rule.  More sound and representative reasoning appears in *Obesity Research Institute, LLC  v. Fiber Research International, LLC*, 165 F. Supp. 3d 937, 954 (S.D. Cal. 2016), where the court stated:

> "A quick review of this law makes it obvious how inappropriate the motion is at this stage of the proceedings.  The issue is primarily a fact-based issue. *See Dirk Ter Haar v. Seaboard Oil Co. of Del.*, 1 F.R.D. 598, 598 (S.D. Cal. 1940) ('The defense of laches...may not be asserted by motion to dismiss, but should be set forth affirmatively in defendant's answer'); *24/7 Customer, Inc. v. 24–7 Intouch*, No. 5:14–cv–02561–EJD, 2015 WL 1522236, at *4 (N.D. Cal. Mar. 31, 2015) ('laches and statute of limitations defenses often require a fact-intensive investigation that is inappropriate on a motion to dismiss.') Looking at the [complaint] and assuming everything in it is true, there are no allegations that support Obesity Research's claim of laches. There is no allegation as to when Fiber Research knew or should have known of the cause of action.  If there was a delay, there is no information as to the cause of

delay.  There is no evidence or allegation that Obesity Research has been in any way prejudiced by any delay." These problems with the application of the laches affirmative defense at the motion to dismiss stage all apply with equal force here.

First, the complaint does not disclose when Rat Pack learned of Ratpac's activities within the United States.  This is true even if news of those activities was reported in the *Hollywood Reporter* and the "Ratpac" mark was registered with the USPTO in 2016—the only two benchmarks Ratpac can point to in its efforts to prove that Rat Pack had actual or constructive notice of Ratpac's use of the Ratpac mark in the United States.  Indeed, neither the allegations in the complaint nor any judicially noticeable outside facts show that Rat Pack keeps abreast of all *Hollywood Reporter* articles or United States film industry developments in real time, and as an entity based abroad, it is not subject to the Lanham Act's rules regarding the constructive notice effects of trademark registrations.  *See Prudential Ins. Co. of Am. v. Pru.com*, 546 F. Supp. 3d 476, 489 n. 15 (E.D. Va. 2021) (requiring evidence that foreign party "play internet ball in the American cyberspace" to be subjected to Lanham Act's registration-based constructive notice rules).

Second, even if the complaint did show as a matter of law that Rat Pack knew or should have known of Ratpac's United States conduct for a period that exceeded the applicable statute of limitations before filing suit, it does not provide the required showing that any delay was unreasonable.  Ratpac itself acknowledges this fatal flaw with its own theory in its motion, stating, "There is no allegation in the Complaint as to <u>why</u> Plaintiff did not bring suit earlier."  Dkt. 27 at 15:21-22 (underlining in original).  To be sure, possible, reasonable explanations abound.  Perhaps, for example, Rat Pack was governed by a famously German sense of efficiency and planned to first obtain equitable relief in those countries that adhere to the European custom referenced in the complaint and then, promptly thereafter, address all of its damage claims in a single action, just as it has done.  But whatever the explanation,

-9-

Rat Pack was not required to allege it in filing suit here because, as Judge Snyder noted in *WB Music Corp. v. Futuretoday, Inc.*, No. 2:18-cv-01238-CAS, 2018 WL 4156589 at *3 (C.D. Cal. Aug. 28, 2018), "[A] complaint's failure to allege facts solely related to affirmative defenses is not a defect in the complaint because affirmative defenses must be pleaded in the answer, not the complaint."

Third, even if the complaint did disclose a delay, and even if it further disclosed that there was no satisfactory explanation for it—neither of which is true—it still did not disclose any prejudice that Ratpac suffered as a result. Ratpac's arguments to the contrary involve the complaint's reference to the announcement of a deal involving the investment of $450 million in the production of up to 75 feature films, as well as the supposed fact that Ratpac has used the "Ratpac" mark since 2013 "based on its belief that its use of the Ratpac trademark in the United States was valid." But neither the actual expenditure of that money (as opposed to a mere announcement that it *would* be spent) nor Ratpac's state of mind with respect to the validity of its use appears in the complaint. Moreover, these alleged facts would not require a finding of undue prejudice as a matter of law. To the contrary, the complaint shows that in the countries where Rat Pack opposed Ratpac's use of the Ratpac mark beginning in 2014, Ratpac forged on with its activities unabated, which raises the reasonable inference that it would have done the same had Rat Pack brought suit in the United States around the same time. Dkt. 1 at ¶ 36. In this way, the complaint shows that Ratpac suffered no prejudice by any delays in the bringing of Rat Pack's United States claims, as the company would have undertaken all of the same activities and investments regardless.

Furthermore, the announced expenditure of $450 million was on the production of the films in question, not the promotion of the "Ratpac" brand. Ninth Circuit authority requires that to establish its laches defense, Ratpac would have to show (at some stage where the consideration of evidence was appropriate) investments aimed at establishing the mark "as the identity of the business in the

-10-
PLAINTIFF'S OPPOSITION TO RATPAC'S MOTION TO DISMISS

minds of the public," rather than merely "promoting the [infringing] name." *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 992 (9th Cir. 2009).  The complaint is silent as to the existence of any such expenditures.

Finally, Ratpac's argument that the mere use of the mark for an extended period is enough standing alone to establish prejudice cannot be true, as such a rule would strip this prong of the laches analysis of its meaning.  *See id.* at 991 ("If this prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay.") (citation omitted).

Ratpac cites *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018), for the principle that there is a "strong presumption in favor of laches" whenever "the most analogous state statute of limitations expired before suit was filed."  Tellingly, however, that case concerned the appeal of a judgment entered after trial, not a motion to dismiss.  The very notion of dealing with a "presumption"—a term that, by definition, relates to evidentiary matters—at the pleading stage makes no sense; we are dealing with allegations, not evidence.  *See generally U.S. v. Black*, 512 F.2d 864, 868 n. 7 (9th Cir. 1975) (exploring definitions of term "presumption," including a Wigmore provision stating, "A rule of presumption is simple a rule changing one of the burdens of proof, i.e., declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced.").

But even if, contrary to the authority cited above, Rat Pack did need to affirmatively plead around a presumption in this area such that analysis of this issue were appropriate at this stage (which is fundamentally not the rule), the complaint supports the inference that the factors from *E-Systems, Inc. v. Monitek*, 720 F.2d 604 (9th Cir. 1983), which govern whether the presumption is overcome, favor Rat Pack, not Ratpac.  As Ratpac notes, the factors include the strength of the plaintiff's mark,

the plaintiff's diligence, the harm to the senior user if relief is denied, the junior user's good faith ignorance, the level of competition between the parties, and the extent of the harm suffered by the junior user based on the senior user's delay. As to the first element, Ratpac flatly asserts "Plaintiff does not have a 'strong mark' because the Rat Pack name is not original to it," noting that it was previously used by a group of Hollywood actors with no relationship to Rat Pack. The lack of a nexus between the group historically associated with the term and Rat Pack itself supports the opposite inference, suggesting that Rat Pack's mark is strong, not weak. Indeed, Ratpac's position would imply that the trademark in the Apple name must be worthless, not worth billions of dollars, because the term was associated with a well-known and unrelated fruit long before the computer company came around. And Rat Pack's success in Europe referenced in the complaint reinforces the conclusion that its mark is entitled to robust protections.

For the second factor, Ratpac claims that Rat Pack "was clearly not diligent in enforcing its mark *in the United States*" because of the alleged delays discussed above. (emphasis added). Once again, this is bootstrapping, with Ratpac improperly recycling analysis that has necessarily already been performed to reach this stage of the inquiry in the first place. Nothing in *this* test implies that it is concerned solely with the United States, and Rat Pack was undeniably diligent in Austria, Denmark, and The Netherlands so as to put Ratpac on notice of its rights long ago. This ties into the fourth factor, then, as these European enforcement proceedings eliminated any possible good faith ignorance on Ratpac's part as to Rat Pack's trademark rights. Next, as to the extent of competition between the parties, Ratpac itself claims in its brief, "Ratpac has consistently used its mark in the same regions, in the same markets, and in the same general industry as Plaintiff since 2014." Dkt. 27 at 15:16-18. The level of competition is thus fierce.

The only remaining factors, then, are the harms to Rat Pack if relief is denied and the harm to Ratpac from the alleged delay. As the complaint notes, harm to Rat

PLAINTIFF'S OPPOSITION TO RATPAC'S MOTION TO DISMISS

Pack is inevitable through ongoing consumer confusion, and Ratpac has not changed its conduct whatsoever based upon its knowledge of Rat Pack and its associated trademark rights.  Like the others, therefore, these factors indicate a strong likelihood that Rat Pack will be able to overcome any presumption of laches at the appropriate time.

For all of these reasons, therefore, Ratpac's motion to dismiss Rat Pack's first and second claims for relief should be denied.

**B.      Dismissal For *Forum Non Conveniens* Is Improper**

**1.      Legal Framework**

As to Rat Pack's third, fourth, and fifth claims, which relate to Defendants' infringement in the three European nations in which Rat Pack has already prevailed in litigation with Ratpac concerning the parties' trademark rights, Ratpac seeks dismissal on the grounds of *forum non conveniens*.  "A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).  The plaintiff's chosen forum is entitled to substantial deference, however, and should "not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." *Id.*; *see also Piper Aircraft Co v. Reyno*, 454 U.S. 235, 255 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum. . . .")  The doctrine is intended to root out cases in which a plaintiff seeks "not simply justice but perhaps justice blended with some harassment," especially where a plaintiff appears motivated to set trial "at a most inconvenient place for an adversary." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507.  The granting of a motion in this area is "drastic" in that it results in dismissal, not mere transfer, so the Ninth Circuit has labeled it "an exceptional tool to be employed sparingly, and not a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Carijano v.*

-13-

*Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citations and quotation marks omitted). *Forum non conveniens* motions in cases brought by foreign plaintiffs are rare, as "foreign plaintiffs typically bring . . . suits in the quintessentially convenient forum for the defendant—the defendant's home forum." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000).

### 2. This Is An Appropriate, Reasonable, And Convenient Forum

Here, Rat Pack has brought suit in the forum encompassing the headquarters of both Ratpac and Warner. Shockingly, rather than celebrating this efficiency and viewing it as a courtesy, Ratpac has labeled Rat Pack's choice "forum shopping." Missing from Ratpac's aspersions, however, is any indication of the supposed benefits that Rat Pack might enjoy from litigating this action in Ratpac's back yard, some 5,000 miles or more away from its own home. It appears, therefore, that there is nothing of substance to overcome the idea that Ratpac has chosen "the quintessentially convenient forum for the defendant." *Id.*

Additional authorities bolster this conclusion. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011), is on point in particular. That case concerned the claims of a Peruvian indigenous group and a California-based non-profit organization against an oil company based on the release of hazardous waste in Peru. The defendant's headquarters was in Los Angeles County, so the plaintiffs' chosen forum was hardly arbitrary. *Id.* at 1222. Still, after removing the case to this District, the defendants moved to dismiss on *forum non conveniens* grounds, arguing that Peru—the home country of most of the plaintiffs and one of the defendants, and the place in which the alleged misconduct actually occurred and injuries were suffered—would have been more convenient. *Id.* The trial court granted the defendants' motion, but the Ninth Circuit overturned the ruling on an abuse of discretion standard. The Ninth Circuit stated, "Concerns about forum shopping, while appropriately considered in the *forum non conveniens* analysis, are muted in a case such as this where Plaintiffs' chosen forum is both the defendant's home

-14-

jurisdiction, and a forum with a strong connection to the subject matter of the case." *Id*. at 1229. This point clearly applies in this action as well, as this District is both Defendants' home and, given the United States claims, connects to the subject matter of the case much more closely that this District connected to the facts in *Carijano*. If the United States claims were removed from the equation, the connection would be equally strong.

In keeping with these broad observations, the *Carijano* court found that the private interest factors, which it labeled residence of the parties, convenience to the parties, evidentiary considerations, and enforceability of the judgment, weighed against dismissal. Notably, the court found that by filing in California, the foreign plaintiffs "indicated a willingness to travel to the United States for trial," which inference may be found here as well. The court further found that the public interest factors, which it styled as the level of local interest in the action and judicial considerations, also counseled against dismissal, finding generally that the district court had "undervalued California's significant interest in providing a forum for those harmed by the actions of its corporate citizens." *Id*. at 1232.

Perhaps the most telling aspect of the *Carijano* opinion, however, is its detailed discussion of such factors as relative court congestion in the prospective fora and the locations and willingness to testify among specifically identified third party witnesses. The court could expound upon these subjects because the defendants appear to have supported their motion with *evidence*, which practice is completely permissible. *See Zosma Ventures, Inc. v. Givi*, No. 14-cv-00891-RSWL, 2014 WL 12579805 at *8 (C.D. Cal. Oct. 28, 2014) ("Similar to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, when considering a motion to dismiss on *forum non conveniens* grounds, the Court may consider evidence beyond the face of the plaintiff's complaint."). Here, Ratpac bloviates that third party witnesses "would all be based in Europe," that "likely, interpreters would be

required," and so on, but it provides no evidence to support these assertions.  Under these circumstances, it can hardly be found to have met its burden.

Notably, despite paying lip service to considerations of judicial economy and congestion, Ratpac's motion ignores the obvious efficiencies associated with trying all of its infringements together in a single action, as Rat Pack seeks to do.  Ratpac shouts, "Claims that Ratpac's conduct in three foreign countries violate Plaintiff's trademarks in those countries, based on the laws of those countries, and seeking damages as authorized by the laws of those countries SHOULD BE ADJUDICATED IN THOSE COUNTRIES." Dkt. 27 at 10:24-28 (emphasis in original).  Why?  "Juries routinely address subjects that are totally foreign to them, ranging from the foreign language of patent disputes to cases involving foreign companies, foreign cultures and foreign languages." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181-82 (9th Cir. 2006).   Given this ability, it makes little sense to require the parties, as Ratpac suggests, to litigate this matter piecemeal.  Rather, the case can, and should, proceed right at home for Defendants, in the forum Rat Pack selected.

### C.    If Necessary, Leave To Amend Should Be Granted

For the reasons set forth above, Ratpac's motion should be denied in full.  In the event the Court is disinclined to agree for any reason, however, Rat Pack respectfully requests leave to amend to cure any perceived defects in the complaint.

## IV.    CONCLUSION

In light of the foregoing, Rat Pack respectfully requests that the Court deny Ratpac's motion in full.

DATED:  September 7, 2023      ROSS LLP

                                        Peter W. Ross
                                        Charles Avrith
                                        Eric C. Lauritsen

By:      */s/ Eric C. Lauritsen*
                  Eric C. Lauritsen

Attorneys for Plaintiff
Rat Pack Filmproduktion GmbH

PLAINTIFF'S OPPOSITION TO RATPAC'S MOTION TO DISMISS