ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@rossllp.la
Charles Avrith (State Bar No. 96804)
  cavrith@rossllp.la
Eric C. Lauritsen (State Bar No. 301219)
  elauritsen@rossllp.la
1900 Avenue of the Stars, Suite 1225
Los Angeles, California 90067
Telephone: (424) 704-5600
Facsimile: (424) 704-5680

Attorneys for Plaintiff
RAT PACK FILMPRODUKTION GMBH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, CENTRAL DIVISION

| | |
|---|---|
| RAT PACK FILMPRODUKTION GMBH, a German limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> RATPAC ENTERTAINMENT, LLC, a Delaware limited liability company; WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 2:23−cv−04790 MEMF (ASx) <br><br> Hon. Maame Ewusi−Mensah Frimpong <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS** <br><br> Date:　December 14, 2023 <br> Time:　10 a.m. <br> Room:　8B <br><br> Action Filed:　June 19, 2023 <br> Trial Date:　　None set |

# TABLE OF CONTENTS

**Page(s)**

I.   PRELIMINARY STATEMENT ..................................................................................6

II.  FACTS ..................................................................................................................7

III. ARGUMENT .........................................................................................................8

  A.  Rat Pack Has Properly Plead Its Claims.............................................................8

    1.  Legal Framework ..........................................................................................8

    2.  Rat Pack's Allegations Do Not Establish Warner's Laches Affirmative Defense As A Matter Of Law................................................................................9

    3.  Rat Pack Has Adequately Alleged Its Mark Is Protectible .......................15

    4.  Rat Pack Has Properly Alleged Defendants' Use Is Likely To Cause Confusion.........................................................................................................17

  B.  Dismissal Of The European Claims For Lack Of Subject Matter Jurisdiction Is Improper.........................................................................................................18

  C.  Dismissal For *Forum Non Conveniens* Is Improper.......................................20

    1.  Legal Framework ........................................................................................20

    2.  Rat Pack's Chosen Forum Merits Substantial Deference ..........................21

    3.  Warner Has Not Met Its Burden Of Showing That The Balance Of Private And Public Factors Favors Dismissal................................................................23

  D.  If Necessary, Leave To Amend Should Be Granted ......................................24

IV.  CONCLUSION....................................................................................................24

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*24/7 Customer, Inc. v. 24–7 Intouch*,
   No. 5:14–cv–02561–EJD, 2015 WL 1522236 (N.D. Cal. Mar. 31, 2015) ...........10

*Abitron Austria GmbH v. Hetronic International, Inc.*,
   143 S.Ct. 2522 (2023)..................................................................................11

*Ahumada v. Converse, Inc.*,
   2019 WL 13079601 (C.D. Cal. Oct. 28, 2019) ......................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................9

*Ayco Farms, Inc. v. Ochoa*,
   862 F.3d 945 (9th Cir. 2017) .................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................9

*Carijano v. Occidental Petroleum Corp.*,
   643 F.3d 1216 (9th Cir. 2011) ..................................................................20, 22, 23

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) .................................................................9

*Death Tobacco, Inc. v. Black Death USA*,
   No. 92-cv-6437-WMB, 1993 WL 761982 .........................................................16

*Dirk Ter Haar v. Seaboard Oil Co. of,
   Del.*, 1 F.R.D. 598 (S.D. Cal. 1940) ....................................................................10

*Dole Foods Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ......................................................................20, 23

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
   782 F. Supp. 457 (N.D. Cal. 1991).............................................................11

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

*E-Systems, Inc. v. Monitek*,
    720 F.2d 604 (9th Cir. 1983) .................................................................................. 14

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)................................................................................................. 21

*Intenze Products, Inc. v. TATLAB Corp.*,
    No. 2:23-cv-02265-RGK, 2023 WL 5209729 (C.D. Cal. Aug. 1, 2023).............. 17

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
    559 F.3d 985 (9th Cir. 2009) ............................................................................ 12, 13

*Kendall-Jackson Winery v. E. & J. Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998) ................................................................................ 16

*Kourtis v. Cameron*,
    419 F.3d 989 (9th Cir. 2005) .................................................................................. 10

*Levi Strauss & Co. v. AmericanJeans.com, Inc.*,
    No. 5:10-cv-05340-JF, 2011 WL 1361574 (N.D. Cal. Apr. 11, 2011)................. 19

*Obesity Research Institute, LLC v. Fiber Research International, LLC*,
    165 F. Supp. 3d 937 (S.D. Cal. 2016) .................................................................... 10

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
    894 F.3d 1015 (9th Cir. 2018) ................................................................................ 13

*Piper Aircraft Co v. Reyno*,
    454 U.S. 235 (1981)................................................................................................. 20

*Prudential Ins. Co. of Am. v. Pru.com*,
    546 F. Supp. 3d 476 (E.D. Va. 2021) .................................................................... 11

*Ravelo Monegro v. Rosa*,
    211 F.3d 509 (9th Cir. 2000) .................................................................................. 21

*SurgiVision Consultants, Inc. v. SurgiVision, Inc.*,
    2011 WL 13214280 (C.D. Cal. Jan. 31, 2011)....................................................... 11

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ................................................................................ 24

*U.S. v. Black*,
    512 F.2d 864 (9th Cir. 1975) .................................................................................. 13

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir. 1992) ................................................................................15

*WB Music Corp. v. Futuretoday, Inc.*,
   No. 2:18-cv-01238-CAS, 2018 WL 4156589 (C.D. Cal. Aug. 28, 2018) ............12

*Zosma Ventures, Inc. v. Givi*,
   No. 14-cv-00891-RSWL, 2014 WL 12579805 (C.D. Cal. Oct. 28, 2014) ...........23

**Federal Statutes**

15 U.S.C. section 1125(a)(1)(A) ................................................................................18

28 U.S.C. section 1367(a)................................................................................................19

28 U.S.C. section 1367(c)(4) .....................................................................................20

28 U.S.C. § 1332(a)(2) ................................................................................................18

**Federal Rules**

Rule 12(b)(1) of the Federal Rules of Civil Procedure .............................................23

Rule 12(b)(6) of the Federal Rules of Civil Procedure ....................................8, 9, 18

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Plaintiff Rat Pack Filmproduktion GmbH ("Rat Pack") competes with Defendant Warner Bros. Entertainment, Inc. ("Warner") and co-Defendant Ratpac Entertainment, LLC ("Ratpac," and together with Warner, "Defendants") in the fields of film production and film finance in the United States and Europe.[1]  And the trademarks the parties use in such competition—"Rat Pack" and "Ratpac"—are phonetically identical and sufficiently similar visually as to render confusion virtually inevitable among consumers in any market in which the parties both participate.  So, Rat Pack, which started using its mark long before Defendants started using theirs, brought this action to obtain relief.  Now, Warner has filed a motion asking the Court to dismiss it at the pleading stage based on a shotgun set of dubious theories.  First, Warner argues that the complaint discloses the applicability of the affirmative defense of laches as a matter of law, as though Rat Pack has explicitly alleged, for example, that it slept on its rights for too long and that its delay caused Warner undue prejudice.  Next, it presents half-baked legal theories to argue that Rat Pack has not plausibly alleged the distinctiveness of its mark or its entitlement to priority over Defendants' uses, or, even more egregiously, that the "Rat Pack" and "Ratpac" marks are in fact similar to one another in the first place.  Finally, it argues that Rat Pack's chosen forum—the home District of both Warner and Ratpac, and the District from which a substantial part of the infringing products were created, where the relevant business decisions were made, and where Rat Pack

---

[1] Rat Pack has filed a separate opposition to a separate motion to dismiss filed by Ratpac (Dkt. 40).  While there are parallels between Defendants' motions, the differences, as well as the timing constraints associated with Defendants' filing of their motions on separate days, has resulted in at least slightly different argumentation throughout Rat Pack's oppositions.  Rat Pack appreciates the Court's indulgence through the parts that do overlap.

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

has suffered at least some of the harm at issue in this case—is inconvenient and improper to the point that dismissal is required.  Warner's theories are baseless, and its motion should be summarily denied.

## II.    FACTS

Rat Pack is a German company that has been engaged in the field of film finance and production since early 2002.  Complaint (Dkt. 1) at ¶¶ 1, 10, 12.  The company primarily serves the European market, but its films have been widely distributed throughout the United States, as well.  *Id.* ¶ 11.  Several of its films have been commercially released in this country, and its films have been showcased at American film festivals every year since at least 2011.  *Id.*  Moreover, in 2008, one of its films was featured at the esteemed Sundance festival, and many of its releases are available to American viewers today through premier streaming services like Hulu, Amazon Prime Video, and Netflix.  *Id.* ¶¶ 11-12.

Throughout Rat Pack's history, it has included prominent "Rat Pack" branding in its films and associated promotional materials.  *Id.* ¶ 12.  For example, the mark appears in the opening and closing credits of the company's films themselves, on promotional posters and DVD packages, and even on promotional toys that have been included with McDonalds Happy Meals.  *Id.*

In 2013, Brett Ratner and James Packer founded Ratpac, which is also engaged in film finance and production.  *Id.* ¶ 14.  Shortly after Ratpac's founding, the company reached an agreement with Warner involving the investment of $450 million in the production of up to 75 feature films—a set that would eventually include major titles like "Gravity," "American Sniper," and "Wonder Woman."  *Id.*  The films Defendants produced and distributed pursuant to this agreement have all contained prominent "Ratpac" branding.  *Id.*

Rat Pack and Ratpac have been fighting about their respective trademark rights ever since.  Ratpac sought to register a trademark for the term "RATPAC" in the European Union in 2014 for film financing and distribution, and Rat Pack

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

opposed it. *Id.* ¶ 15. In response, Ratpac withdrew its application and agreed to refrain from use of the "RATPAC" mark in Germany. *Id.* But Ratpac continued to pursue its trademark rights elsewhere, including by seeking to register the "RATPAC" mark in Austria, the Netherlands, and Denmark in related fields. *Id.* Rat Pack opposed these applications and/or sought cancellation of Ratpac's resulting registrations in these countries, as well, and through appeals processes that have continued through at least November 1, 2021, its efforts have been successful. *Id.* ¶¶ 16-23. Indeed, the applicable tribunals in all three countries have recognized Rat Pack's superior and valid rights in the "Rat Pack" trademark and the inevitability of consumer confusion in light of the obvious similarities between the "Rat Pack" and "RATPAC" marks. *Id.*

To date, Rat Pack's litigation efforts have not involved the pursuit of money damages or a disgorgement of Defendants' unjust enrichment from their infringement. *Id.* ¶ 24. At least in part, this is based on a custom in Europe for trademark owners to pursue non-monetary relief first, and then seek monetary relief in separate actions thereafter. *Id.* Rat Pack filed the instant action in Los Angeles—the home jurisdiction of both Ratpac and Warner—to pursue monetary relief based on the European infringements and to pursue declaratory, injunctive, and monetary relief based on the as-yet unlitigated matter of Defendants' infringements within the United States, as well. *Id.*

## III. ARGUMENT

### A. Rat Pack Has Properly Plead Its Claims

#### 1. Legal Framework

Warner has moved to dismiss Rat Pack's claims related to infringement in the United States—its first and second claims pled in the complaint[2]—pursuant to Rule

---

[2] As noted in the complaint, Rat Pack's United States claims—the first and second ones listed in the complaint—relate to the parties' conduct in this country. Warner's

12(b)(6) of the Federal Rules of Civil Procedure, arguing that Rat Pack has failed to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*").  Plaintiffs do not need to plead "detailed factual allegations," but they must allege more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Courts must accept all factual allegations contained in a complaint as true. *Iqbal*, 556 U.S. 678 (citing id.).

### 2.    **Rat Pack's Allegations Do Not Establish Warner's Laches Affirmative Defense As A Matter Of Law**

Warner's first argument for dismissal under Rule 12(b)(6) is that Rat Pack's first and second claims fail under the affirmative defense of laches.  Warner's arguments are meritless.

### a.    **A Finding Of Laches On A Motion To Dismiss Is Exceptionally Rare**

The laches defense applies where a plaintiff delays unreasonably in bringing an action and the delay causes prejudice to the defendant. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).  Like Ratpac did in its own motion, Warner provides a string citation of weak authorities without significant precedential value in an attempt to prove that laches can even be found at the motion to dismiss stage in the first place.  Such authorities are anomalous, however, marking exceptions to a long-recognized rule that "[l]aches defenses are highly fact-

---

arguments as to the territoriality of the Lanham Act and the impropriety of imposing Lanham Act liability upon foreign conduct are thus irrelevant.

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

dependent and rarely resolvable at the motion to dismiss stage." *Ahumada v. Converse, Inc.*, 2019 WL 13079601 at *3 (C.D. Cal. Oct. 28, 2019); *see also Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005) ("A claim of laches depends on a close evaluation of all the particular facts in a case, and it therefore is seldom susceptible to resolution by summary judgment," let alone a motion to dismiss) (quotation marks omitted). *Obesity Research Institute, LLC v. Fiber Research International, LLC*, 165 F. Supp. 3d 937, 954 (S.D. Cal. 2016), is on point. There, the court stated:

> "A quick review of this law makes it obvious how inappropriate the motion is at this stage of the proceedings. The issue is primarily a fact-based issue. *See Dirk Ter Haar v. Seaboard Oil Co. of Del.*, 1 F.R.D. 598, 598 (S.D. Cal. 1940) ('The defense of laches...may not be asserted by motion to dismiss, but should be set forth affirmatively in defendant's answer'); *24/7 Customer, Inc. v. 24–7 Intouch*, No. 5:14–cv–02561–EJD, 2015 WL 1522236, at *4 (N.D. Cal. Mar. 31, 2015) ('laches and statute of limitations defenses often require a fact-intensive investigation that is inappropriate on a motion to dismiss.') Looking at the [complaint] and assuming everything in it is true, there are no allegations that support Obesity Research's claim of laches. There is no allegation as to when Fiber Research knew or should have known of the cause of action. If there was a delay, there is no information as to the cause of delay. There is no evidence or allegation that Obesity Research has been in any way prejudiced by any delay."

### b.    The Complaint Does Not Allege Unreasonable Delay Or Prejudice

The problems with the application of the laches affirmative defense at the motion to dismiss stage identified in the authorities referenced above all apply with equal force here.

First, the complaint does not disclose when Rat Pack learned or should have learned of Defendants' infringing activities within the United States. This is true even though the complaint implies Rat Pack's knowledge of such conduct in *Europe* as early as 2014, because as Warner itself recognizes elsewhere in its brief despite its contrary argument in this setting, trademark rights are territorial. *Abitron Austria GmbH v. Hetronic International, Inc.*, 143 S.Ct. 2522, 2533 (2023). It is also true even if the "Ratpac" mark was registered in the United States in 2016, because as a foreign party, Rat Pack is not subject to the Lanham Act's rules regarding the constructive notice effects of trademark registrations. *See Prudential Ins. Co. of Am. v. Pru.com*, 546 F. Supp. 3d 476, 489 n. 15 (E.D. Va. 2021) (requiring evidence that foreign party "play internet ball in the American cyberspace" to be subjected to Lanham Act's registration-based constructive notice rules). And indeed, the rule that domestic litigants are charged with constructive notice based upon trademark registrations is not ironclad. *See SurgiVision Consultants, Inc. v. SurgiVision, Inc.*, 2011 WL 13214280 at *30 (C.D. Cal. Jan. 31, 2011) ("Despite this, some courts have found that an infringing mark's registration alone is insufficient to put a trademark holder on constructive knowledge of the infringement if there is no evidence plaintiffs reasonably should have known of defendant's use.") (*citing E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457 (N.D. Cal. 1991).).

Second, even if the complaint did show as a matter of law that Rat Pack knew or should have known of Defendants' United States conduct for a period that exceeded the applicable statute of limitations before filing suit, it does not provide the required showing that any delay was unreasonable. To be sure, there are

-11-

reasonable explanations for any such delay. Perhaps, for example, Rat Pack was governed by a famously German sense of efficiency and planned to first obtain equitable relief in those countries that adhere to the European custom referenced in the complaint and then, promptly thereafter, address all of its damage claims in a single action, just as it has done.  But whatever the explanation, Rat Pack was not required to allege it in filing suit here because, as Judge Snyder noted in *WB Music Corp. v. Futuretoday, Inc.*, No. 2:18-cv-01238-CAS, 2018 WL 4156589 at *3 (C.D. Cal. Aug. 28, 2018), "[A] complaint's failure to allege facts solely related to affirmative defenses is not a defect in the complaint because affirmative defenses must be pleaded in the answer, not the complaint."

Third, even if the complaint did disclose a delay, and even if it further disclosed that there was no satisfactory explanation for it—neither of which is true—it still did not disclose any prejudice that Warner suffered as a result. Warner's arguments to the contrary are apparently based on:  (1) the complaint's reference to the announcement of a deal involving the investment of $450 million in the production of up to 75 feature films; and (2) the supposed fact that Defendants have used the "Ratpac" mark since 2013 in purported good faith ignorance of Rat Pack's rights.  But neither the actual expenditure of that money (as opposed to a mere announcement that it *would* be spent) nor Warner's state of mind with respect to the validity of its use actually appears in the complaint.  And even if that sum of money was in fact spent, the complaint says it was intended to cover costs of production, not promotion of the "Ratpac" brand specifically, which renders the expenditure irrelevant.  *See Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 992 (9th Cir. 2009) (finding expenditures relevant to prejudice inquiry only where they are specifically aimed at bolstering the infringing mark "as the identity of the business in the minds of the public").

Moreover, even if the complaint's actual allegations matched Warner's contorted interpretations, they still would not constitute the required showing of

prejudice as a matter of law.  To the contrary, the complaint shows that in the countries where Rat Pack opposed Ratpac's use of the Ratpac mark beginning in 2014, Defendants forged on with their infringing activities unabated.  Dkt. 1 at ¶ 36. It is reasonable to infer from Warner's conduct in Europe that it would have continued with its infringing activities in the United States even if Rat Pack brought suit here sooner.  Thus, Warner has not shown that it was prejudiced by any delay in filing suit here. And of course, Warner's argument that the mere use of the mark for an extended period is enough standing alone to establish prejudice as a matter of law cannot be true, as such a rule would strip this prong of the laches analysis of its meaning.  *See id.* at 991 ("If this prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay.") (citation omitted).

c.      **The Concept Of A Presumption Of Laches Makes No Sense At This Stage, But The Complaint Overcomes Any Such Presumption Nevertheless**

Warner cites *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018), for the proposition, that there is a "strong presumption in favor of laches" whenever "the most analogous state statute of limitations expired before suit was filed."  Tellingly, however, *Pinkette* concerned the appeal of a judgment entered after trial, not a motion to dismiss.  Indeed, the very notion of dealing with a "presumption"—a term that, by definition, relates to evidentiary matters—at the pleading stage makes no sense; we are dealing with allegations, not evidence.  *See generally U.S. v. Black*, 512 F.2d 864, 868 n. 7 (9th Cir. 1975) (exploring definitions of term "presumption," including a Wigmore provision stating, "A rule of presumption is simple a rule changing one of the burdens of proof, i.e., declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced.").

But even if, contrary to the authorities cited hereinabove, Rat Pack did need to affirmatively plead around a presumption in this area such that analysis of this issue were appropriate at this stage (which is fundamentally not the rule), the complaint supports the inference that the factors from *E-Systems, Inc. v. Monitek*, 720 F.2d 604 (9th Cir. 1983), which govern whether the presumption is overcome, favor Rat Pack, not Defendants. As Warner notes, the factors include the strength of the plaintiff's mark, the plaintiff's diligence, the harm to the senior user if relief is denied, the junior user's good faith ignorance, the level of competition between the parties, and the extent of the harm suffered by the junior user based on the senior user's delay.

As to the first element, Warner characterizes Rat Pack's acknowledgement of the derivation of its mark in the complaint as a "damning admission," as though trademarks are required to be coined terms that are completely original to their users to be strong. That is not the rule. If it were, Apple's multibillion dollar trademark rights would be nullified by a showing that there was, in fact, a fruit called an apple that existed for some time before the company did. Rather, the lack of a nexus between the group historically associated with the term and Rat Pack itself supports the opposite inference, suggesting that Rat Pack's mark is strong, not weak. This conclusion is bolstered by Rat Pack's success in the European actions referenced in the complaint. In addition, Warner claims that Rat Pack must not have a commercially strong mark because it has "little-to-no U.S. market presence." This charge flatly *contradicts* the allegations in the complaint, which state that Rat Pack's films have "circulated widely in the United States." Dkt. 1 at ¶ 11.

For the second factor, Warner claims that Rat Pack "was clearly not diligent in enforcing its mark against Defendants *in the U.S.*" because of the alleged delays discussed above. (emphasis added). However, as discussed above, the complaint does not disclose any unreasonable delay. Moreover, Rat Pack was undeniably diligent in Austria, Denmark, and The Netherlands so as to put Defendants on notice of its rights long ago, and despite Warner's interpretation, there is nothing in *E-*

-14-

*Systems* which suggests that the diligence factor is limited to diligence in the United States. This ties into the fourth factor, then, as Rat Pack's European enforcement proceedings eliminated any possible good faith ignorance on Warner's part as to Rat Pack's trademark rights. Next, as to the extent of competition between the parties, as Ratpac itself admits in its own motion to dismiss, "Ratpac has consistently used its mark in the same regions, in the same markets, and in the same general industry as Plaintiff since 2014." Dkt. 27 at 15:16-18. The level of competition is thus fierce.

The only remaining factors, then, are the harms to Rat Pack if relief is denied and the harm to Warner from the alleged delay. As the complaint notes, harm to Rat Pack is inevitable through ongoing consumer confusion. Warner brazenly argues that further allegations must be included to establish that "Ratpac" and "Rat Pack" are in fact confusingly similar to one another, but the charge is clearly baseless. With respect to the harm to Warner by any delay on Rat Pack's part, as noted above, the complaint demonstrates that Defendants have not changed their conduct whatsoever based upon their knowledge of Rat Pack's senior rights in the mark.

To summarize, the complaint's allegations demonstrate a strong likelihood that Rat Pack will be able to overcome any presumption of laches at the appropriate time in these proceedings.

For all of these reasons, therefore, Warner's motion to dismiss Rat Pack's first and second claims for relief on laches grounds should be denied.

### 3. Rat Pack Has Adequately Alleged Its Mark Is Protectible

Warner next argues that Rat Pack has failed to adequately plead that it possesses a mark that is eligible for protection in the United States in the first place. This argument is incorrect.

Plaintiffs may assert claims for false designation of origin in relation to distinctive marks used in commerce. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992). In general, a mark may be considered inherently distinctive where

there is no strong connection between the mark and the goods or services to which it is applied; otherwise, a mark may be considered "descriptive," and a showing that it has acquired "secondary meaning"—*i.e.*, that the putative mark functions to identify a particular source and has a meaning beyond its literal descriptive qualities—may be required. *See generally Kendall-Jackson Winery v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n. 8 (9th Cir. 1998) (describing differences between descriptive marks, which "define qualities or characteristics of a product in a straightforward way" and which are not inherently distinctive, and suggestive marks, which require consumers to "use imagination or any type of multistage reasoning to understand the mark's significance," and which are inherently distinctive).

In the complaint, Rat Pack explains the derivation of its mark, stating that it is "particularly apt for its business" because of its historical association with Hollywood personalities, on the one hand, and Rat Pack's own activities in the motion picture industry, on the other hand. Crucially, however, the fact that Rat Pack's mark may be linked with Hollywood personalities does not establish that it defines qualities or characteristics of Rat Pack's goods and services in a straight forward way. On the contrary, the link between the "Rat Pack" mark and the goods or services to which the company applies it requires quintessential "multistage reasoning" by the consumers who confront the mark in commerce; such consumers must disregard the literal meaning of the term (i.e. a group of rodents), associate it with a historical group of Hollywood personalities, and then identify some parallel between the activities of that historical group and Rat Pack. This inferential chain is by no means "straightforward." *See Death Tobacco, Inc. v. Black Death USA*, No. 92-cv-6437-WMB, 1993 WL 761982 at *3 n. 10 (C.D. Cal. June 30, 1993) ("Examples of descriptive marks are: 'raisin bran,' 'shredded wheat,' and 'barbecue' beans.").

In light of the above, as noted above, Warner's grasping characterization of Rat Pack's acknowledgement of the derivation of its mark as a "damning

-16-

admission" is unsupported. It bears noting, however, that even if the link between Rat Pack's mark and the company's goods and services were so close as to render the mark descriptive, the complaint clearly supports the inference that a showing of secondary meaning could be made here. Indeed, the complaint contains allegations that Rat Pack has produced over 65 films since 2001, that one of its films was showcased at Sundance in 2008, that it has had other films at American festivals every year since at least 2011, and that it released major films nationwide in the United States in at least 2009, 2010, 2012, and 2013. Together, these allegations strongly suggest that by the time Defendants commenced their infringement in or around 2013, Rat Pack was an established player in the field, and that to the extent its trademark was otherwise descriptive in the first place, the American public had come to understand it as an exclusive reference to Rat Pack. Nothing further is required under *Twombly* or *Iqbal*. *See Intenze Products, Inc. v. TATLAB Corp.*, No. 2:23-cv-02265-RGK, 2023 WL 5209729 at *6 (C.D. Cal. Aug. 1, 2023) (denying motion to dismiss trademark claims related to unregistered, descriptive mark based on allegations of long-term use, sales, and advertising). Moreover, the complaint supports the inference that Rat Pack has maintained its rights from 2013 onward in that, first, Rat Pack's branded titles have been, and remain, distributed through premier streaming services in the United States, and second, the company remains active on the festival circuit. As such, Warner's arguments as to Rat Pack's ineligibility for protection of its mark within the United States (or, relatedly, the priority of its mark) are off base, and none of Rat Pack's claims should be dismissed for this reason.

**4.** **Rat Pack Has Properly Alleged Defendants' Use Is Likely To Cause Confusion**

Warner also argues that Rat Pack has not properly alleged "how or when Warner could have created any likelihood of confusion." Dkt. 33 at 23:11-12. Surprisingly, Warner takes this position despite acknowledging the allegation in

paragraph 14 of the complaint that "Defendants have jointly marketed and distributed these films internationally – including in Europe and the United States – with prominent 'Ratpac' branding."  At the risk of stating the obvious, marketing and distributing films with prominent branding that is likely to cause confusion as to the films' source, origin, or affiliation is a violation of the Lanham Act.  Namely, 15 U.S.C. section 1125(a)(1)(A) imposes liability on

> "[a]ny person who, on or in connection with any goods or
> services, . . . uses in commerce any word, term, name, symbol,
> or device . . . which is likely to cause confusion . . . as to the
> affiliation, connection, or association of such person with
> another person, or as to the origin, sponsorship, or approval of
> his or her good, services, or commercial activities by another
> person."

By distributing films with prominent branding of a term that is phonetically identical and highly visually similar to Rat Pack's mark, Warner has itself violated this statute.

For the foregoing reasons, Warner's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied in full.

**B.    <u>Dismissal Of The European Claims For Lack Of Subject Matter Jurisdiction Is Improper</u>**

Warner next argues that Rat Pack has not properly alleged diversity jurisdiction, and that the exercise of supplemental jurisdiction over Rat Pack's European claims (claims three, four and five) would be improper.  Warner's argument lacks merit for a number of reasons.

Federal courts have diversity jurisdiction over claims between citizens of a state and citizens or subjects of a foreign country where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(2).  Here, Rat Pack has alleged that it is a German entity with its principal place of business in Munich, Germany and that

Ratpac and Warner are both Delaware entities with principal places of business in Los Angeles County.  Dkt. 1 at ¶¶ 2-3.  It has also alleged that the amount in controversy exceeds $75,000, plead facts that render that conclusion plausible, and included a prayer for monetary relief in excess of $10 million.  In this way, Rat Pack believes that it has adequately alleged diversity jurisdiction.

Moreover, Warner did not raise this diversity argument in the meet and confer that took place pursuant to Local Rule 7-3 prior to the filing of its motion.  If it had, Rat Pack would have amended its complaint to address Warner's concerns in this area.

Even if diversity jurisdiction were lacking, however, Warner's supplemental jurisdiction argument lacks merit.  Rat Pack has *also* alleged adequate grounds for federal question jurisdiction over its Lanham Act claim—count one—and specifically cited 28 U.S.C. section 1367(a) in support of the contention that this Court "has supplemental jurisdiction over the other claims, all of which arise out of and have a nexus to the facts giving ruse to the federal claims and therefore form a part of the same case or controversy under Article III of the United States Constitution."  *Id*. at ¶ 6.

Despite Rat Pack's express allegations, Warner asks the Court to decline to exercise supplemental jurisdiction over the European claims, relying heavily on the case of *Levi Strauss & Co. v. AmericanJeans.com, Inc.*, No. 5:10-cv-05340-JF, 2011 WL 1361574 (N.D. Cal. Apr. 11, 2011).  That case is distinguishable.  There, the conduct that was the subject of the European claim was of an entirely different kind from the conduct that was the subject of the Lanham Act claims.  Namely, the American claims related merely to the use of a trademark on a website, while the European claims related to the actual sale of allegedly infringing merchandise.  *Id*. at *1.  Thus, in *Levi Strauss,* the conditions for the exercise of supplemental jurisdiction under 28 U.S.C. section 1367(a)—a common nucleus of operative facts—were lacking in the first place such that the "exceptional circumstances"

-19-

required to decline the otherwise proper exercise of supplemental jurisdiction did not need to be found.

Here, the conduct at issue is exactly the same in all relevant jurisdictions—the distribution and promotion of films prominently branded with infringing marks. In fact, there is no indication that the works distributed in the various countries were anything other than identical, and those distributions likely occurred pursuant to singular distribution agreements. As such, there is clearly a common nucleus of operative facts in this case, and it is only in the "exceptional circumstances" referenced in 28 U.S.C. section 1367(c)(4) that the exercise of supplemental jurisdiction should be declined. This is not such an exceptional case.

### C.    Dismissal For *Forum Non Conveniens* Is Improper

#### 1.    Legal Framework

Finally, Warner cursorily argues, in a section largely devoid of legal citations, that Rat Pack's third, fourth, and fifth claims should be dismissed on the grounds of *forum non conveniens*. "A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). The plaintiff's chosen forum is entitled to substantial deference, however, and should "not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." *Id.*; *see also Piper Aircraft Co v. Reyno*, 454 U.S. 235, 255 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum. . . .") The granting of a motion in this area is "drastic" in that it results in dismissal, not mere transfer, so the Ninth Circuit has labeled it "an exceptional tool to be employed sparingly, and not a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citations and quotation marks omitted). *Forum non conveniens* motions in cases brought by foreign plaintiffs are rare, as "foreign

plaintiffs typically bring . . . suits in the quintessentially convenient forum for the defendant—the defendant's home forum." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000).

### 2. Rat Pack's Chosen Forum Merits Substantial Deference

As noted above, a plaintiff's choice of forum is generally entitled to deference. That principle is especially applicable here for a number of reasons. First, Rat Pack has brought this case in the Defendants' hometown. The Ninth Circuit has referred to this as "the quintessentially convenient forum." See *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (*forum non conveniens* motions in cases brought by foreign plaintiffs are rare, as "foreign plaintiffs typically bring . . . suits in the quintessentially convenient forum for the defendant—the defendant's home forum").

Moreover, Warner has not shown that Rat Pack is trying to get an unfair advantage by suing here, in Warner's backyard, some 5,000 miles or more away from its own home. See *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) ("[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons[,] the less deference the plaintiff's choice of forum commands.") (quotation marks omitted). The *forum non conveniens* doctrine is intended to root out cases in which a plaintiff seeks "not simply justice but perhaps justice blended with some harassment," especially where a plaintiff appears motivated to set trial "at a most inconvenient place for an adversary." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). That is obviously not the case here.

Furthermore, Los Angeles has a strong connection to the facts of the case. This District is both Defendants' home and the location in which a substantial part of the infringing products were created, in which the relevant business decisions were made, and in which Rat Pack has suffered at least some of the harm at issue in this case.

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011), illustrates that, under these circumstances, Warner's *forum non conveniens* motion should be denied. In *Carijano*, a Peruvian indigenous group and a California-based non-profit organization filed suit in Los Angeles against based on the defendants' release of hazardous waste in Peru. Even though the principal defendant was headquartered in Los Angeles, he defendants moved to dismiss on *forum non conveniens* grounds, arguing that Peru—the home country of most of the plaintiffs and one of the defendants, and the place in which the alleged misconduct actually occurred and injuries were suffered—would have been more convenient. *Id*. at 1222. In holding that the trial court abused its discretion in granting the defendants' motion, the Ninth Circuit stated, "Concerns about forum shopping, while appropriately considered in the *forum non conveniens* analysis, are muted in a case such as this where Plaintiffs' chosen forum is both the defendant's home jurisdiction, and a forum with a strong connection to the subject matter of the case." *Id*. at 1229. The same rationale clearly applies in this action as well. Rat Pack's choice of forum is entitled to deference and should not be disturbed.

In keeping with these broad observations, the *Carijano* court found that the private interest factors, which it labeled residence of the parties, convenience to the parties, evidentiary considerations, and enforceability of the judgment, weighed against dismissal. Notably, the court found that by filing in California, the foreign plaintiffs "indicated a willingness to travel to the United States for trial," which inference may be found here as well. The court further found that the public interest factors, which it styled as the level of local interest in the action and judicial considerations, also counseled against dismissal, finding generally that the district court had "undervalued California's significant interest in providing a forum for those harmed by the actions of its corporate citizens." *Id*. at 1232.

### 3.    Warner Has Not Met Its Burden Of Showing That The Balance Of Private And Public Factors Favors Dismissal

As noted above, to succeed on its motion, Warner must show that the private interest and public interest factors "strongly favor trial in the foreign country." *Dole Foods,* 303 F.3d at 1118. The private interest factors are the parties' residences, convenience to the parties, evidentiary considerations, and enforceability of the judgment. *Carijano*, 643 F.3d at 1230-32. The public interest factors are the level of local interest in the action and judicial considerations. *Id*. at 1232-34. Warner has not come close to meeting its burden of showing that these factors strongly favor dismissal. Warner's half-page discussion of these factors provides little analysis of any of these specific factors, let alone competent evidence to support any of its cursory contentions. *See Zosma Ventures, Inc. v. Givi*, No. 14-cv-00891-RSWL, 2014 WL 12579805 at *8 (C.D. Cal. Oct. 28, 2014) ("Similar to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, when considering a motion to dismiss on *forum non conveniens* grounds, the Court may consider evidence beyond the face of the plaintiff's complaint."). Thus, Warner has failed to provide the Court with any way of knowing whether the private or public interest strongly favor trial in another country. For example, Warner does provide the Court with any of the information typically presented in a *forum non conveniens* motions such as the identities and residences of third-party witnesses, evidentiary difficulties that will be encountered in trying the case in the different fora or the relative court congestion in the prospective fora. See *Carijano,* 643 F.3d at 1231-33 (referencing "evidence that both Peruvian courts and the Central District have similarly crowded dockets" and moving party's "declaration identifying categories of witnesses it intends to call").

At bottom, according to Warner, this single case should be broken up into *four* closely related actions in separate jurisdictions. How is that convenient? How does that support the public or private interest? Rat Pack's claims should be tried

-23-
PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS

together, even if some of them involve damages from Defendants' infringing activities in Europe. "Juries routinely address subjects that are totally foreign to them, ranging from the foreign language of patent disputes to cases involving foreign companies, foreign cultures and foreign languages." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181-82 (9th Cir. 2006).  They can do so here, too.

### D.   If Necessary, Leave To Amend Should Be Granted

For the reasons set forth above, Warner's motion should be denied in full.  In the event the Court is disinclined to agree for any reason, however, Rat Pack respectfully requests leave to amend to cure any perceived defects in the complaint.

## IV.   CONCLUSION

In light of the foregoing, Rat Pack respectfully requests that the Court deny Warner's motion in full.

DATED:  September 8, 2023           ROSS LLP
                                    Peter W. Ross
                                    Charles Avrith
                                    Eric C. Lauritsen

                                    By:    /s/ Eric C. Lauritsen
                                              Eric C. Lauritsen
                                    Attorneys for Plaintiff
                                    Rat Pack Filmproduktion GmbH

PLAINTIFF'S OPPOSITION TO DEFENDANT WARNER'S MOTION TO DISMISS