ROSS LLP
Peter W. Ross (State Bar No. 109741)
pross@rossllp.la
Charles Avrith (State Bar No. 96804)
cavrith@rossllp.la
Eric C. Lauritsen (State Bar No. 301219)
elauritsen@rossllp.la
1900 Avenue of the Stars, Suite 1225
Los Angeles, California 90067
Telephone: (424) 704-5600
Facsimile: (424) 704-5680

Attorneys for Plaintiff
RAT PACK FILMPRODUKTION GMBH

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, CENTRAL DIVISION**

RAT PACK FILMPRODUKTION GMBH, a German limited liability company,

Plaintiff,

v.

RATPAC ENTERTAINMENT, LLC, a Delaware limited liability company; WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive,

Defendants.

Case No. 2:23–cv–04790 MEMF (ASx)

District Judge Maame Ewusi–Mensah Frimpong
Magistrate Judge Alka Sagar

**SECOND AMENDED COMPLAINT FOR:**

**(1) FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125(a)];**
**(2) STATUTORY UNFAIR COMPETITION [Cal. Bus. & Prof. Code §§ 17200 et seq.];**
**(3) VIOLATION OF AUSTRIAN TRADEMARK ACT OF 1970, SECTION 10;**
**(4) VIOLATION OF DUTCH TRADE NAME ACT, SECTION 5; and**
**(5) VIOLATION OF DANISH TRADEMARK ACT, SECTION 4**

**DEMAND FOR JURY TRIAL**

ea32d8a0

Plaintiff Rat Pack Filmproduktion GmbH ("Rat Pack" or "Plaintiff"), as and for its complaint against defendants Ratpac Entertainment, LLC ("Ratpac"), Warner Bros. Entertainment, Inc. ("Warner Bros."), and Does 1 through 10 (together with RatPac and Warner Bros., "Defendants"), alleges as follows:

**THE PARTIES**

1. Plaintiff Rat Pack is a German limited liability company based in Munich, Germany. Rat Pack's ownership is divided between an individual named Christian Becker, a German citizen and resident who controls 49% of the company, and Constantin Film AG ("Constantin"), a German corporation whose principal place of business is in Munich, Germany, which controls the other 51%. In turn, Constantin is wholly owned by Highlight Communications AG, which is a Swiss entity whose principal place of business is in Switzerland.

2. Upon information and belief, defendant Ratpac is a Delaware limited liability company based in Los Angeles County, California. Ratpac's public organizational filings do not provide a basis for determining the citizenship of its members. Upon information and belief, at the time this action was filed, all of Ratpac's members were citizens of the States of Delaware or Florida. As such, for purposes of diversity jurisdiction, Ratpac is a citizen of the States of Delaware and Florida.

3. Upon information and belief, at the time this action was filed, defendant Warner Bros. was a Delaware corporation with its principal place of business in Los Angeles County, California and thus, for purposes of diversity jurisdiction, is a citizen of the States of Delaware and California only.

4. Plaintiff is unaware of the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sues them by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants engaged in, or is in some manner legally responsible for, the wrongful conduct alleged herein. Plaintiff therefore sues these

Defendants by such fictitious names and will amend this complaint to state their true names and capacities when such have been ascertained.

5. Plaintiff is informed and believes and thereon alleges that, in doing the acts alleged herein, each of the Defendants was the agent, principal, employee, representative, or alter ego of the other Defendants and/or acted with one or more of the other Defendants' knowledge, consent, and approval, and acted within the course and scope of his agency or representative capacity. As such, each of the Defendants is responsible for the actions of the other Defendants, as alleged herein.

## JURISDICTION

6. This action arises in part under the laws of the United States—including but not limited to its trademark laws, 15 U.S.C. § 1114 *et seq*. This Court therefore has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a). The Court has jurisdiction over the unfair competition claim under the provisions of 28 U.S.C. § 1338(b) in that said claim is joined with a substantial and related claim under the trademark laws of the United States. Pursuant to 28 U.S.C. § 1367(a), this Court also has supplemental jurisdiction over the unfair competition claim, which arises out of and has a nexus to the facts giving rise to the federal claim and therefore forms a part of the same case or controversy under Article III of the United States Constitution. In addition to the foregoing, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship. Namely, Defendants are citizens of states of the United States and Plaintiff is a citizen or subject of a foreign state and is not lawfully admitted for permanent residence in the United States, and the amount in controversy exceeds $75,000, exclusive of interest and costs (and the same was true as of the filing of the initial complaint in this action).

7. Upon information and belief, this Court has general personal jurisdiction over Defendants because their principal places of business as reported to the California Secretary of State are within this District.

8. Venue is proper in this district under 28 U.S.C. §§ 1391(a)–(d), among other bases, insofar as Defendants have committed unlawful acts in this judicial district and have done and are doing substantial business in this judicial district.

## GENERAL ALLEGATIONS

9. This dispute arises from Defendants' willful infringement of Plaintiff Rat Pack's trademark in the United States and in Europe.

- **Plaintiff Rat Pack Filmproduktion and Its Mark**

10. Rat Pack is one of the most successful motion picture producers in Germany. Rat Pack was founded in 2001 and has produced over 65 feature films. In 2013, Rat Pack released the highest-grossing film of the year in Germany, *Fack ju Göhte*, with revenues of over $77 million, USD.

11. While Rat Pack's films have been distributed primarily in Europe, the films have been circulated widely in the United States, as well. For just a few examples, Rat Pack's 2009 film "Vorstadt Krokodile" (English title: "The Crocodile") and 2010 follow-up "Vorstadt Krokodile 2" (English title: "The Crocodile Strikes Back"), as well as its "OV Haus der Krokodile" (English title: "Victor and the Secret of Crocodile Mansion") from 2012, were all commercially released in the United States shortly after their European debuts. In 2013, Rat Pack released *Fack ju Göhte* (as noted above, the number one selling movie in Germany that year) in the United States under the title *Suck Me Shakespeer*. Many of Rat Pack's films have been, and are, available in the United States via video-on-demand services like Hulu, Amazon Prime Video, and Netflix. In addition, Rat Pack's films have been showcased at numerous American film festivals such as the 2008 Sundance festival, at which the Rat Pack film "The Wave" was featured. In fact, Rat Pack has had a film showcased in an American festival every year since at least 2011.

12. Since January 2002, Plaintiff has marketed its products and services, both in Europe and the United States, under the trademark "Rat Pack". Plaintiff

considers the mark to be particularly apt for its business. The original "rat pack" was an informal group of A-list Hollywood actors who met from time to time in the Holmby Hills home of Humphrey Bogart and Lauren Bacall. During the 1960s, members of the "rat pack" included Frank Sinatra, Dean Martin, Sammy Davis, Jr., Joey Bishop, and Peter Lawford. Plaintiff's "Rat Pack" mark is used in connection with film finance and production. The mark appears in the opening and closing credits of Plaintiff's films, on its film posters, on the packaging of its DVDs, and even on promotional toys included with Happy Meals from McDonalds.

13. In Germany, Plaintiff obtained a registration of the Rat Pack mark (identifier DE 30201720), effective August 7, 2002, and carrying with it a priority date of January 14, 2002. The registration is for, among other things, "entertainment" and "the production of shows." (Plaintiff has never sought registration of the mark in the United States.)

- **Defendants and Their Infringing "Ratpac" Mark**

14. As of 2013, Brett Ratner was a well-regarded Hollywood director and producer. That year, he founded defendant Ratpac Entertainment, LLC in partnership with billionaire James Packer. (The name "Ratpac" appears to be a pun created by combining the two men's last names, without regard to the prior rights of third parties such as Rat Pack.) By September of 2013, Ratpac had teamed up with another entity known as Dune Entertainment to strike a deal with defendant Warner Bros. that, according to the Hollywood Reporter, involved the investment of $450 million for the production of up to 75 feature films. Over time, the joint productions came to include "Gravity," "American Sniper," and "Wonder Woman." On information and belief, pursuant to the investment agreement between them, Defendants have jointly marketed and distributed these films internationally – including in Europe and the United States – with prominent "Ratpac" branding.

15. On June 17, 2014, Ratpac sought to register a trademark for the term "RATPAC" in the European Union in relation to, among other things, "film

financing" and "distribution of motion pictures and television programs." Rat Pack opposed the application, and on April 28, 2015, Ratpac withdrew it. In addition, in response to a cease-and-desist letter from Rat Pack's lawyers, Ratpac agreed to refrain from using its mark in Germany. Thereafter, however, Ratpac sought to register its mark in individual countries within the European Union, including among others Austria, the Netherlands, and Denmark.

- **Rat Pack Wins Against Ratpac in Austria**

16. On November 19, 2015, Ratpac registered its mark in Austria in the following international categories:

> 36. Financing of films,
>
> 41. Production of feature films and television programmes; film distribution services namely distribution of feature films and television programmes; publication of books; operation of casinos;
>
> 43. Hotel services, catering for guests in restaurants, operation of a bar.

17. Rat Pack filed a cancellation proceeding with respect to all categories, except "operation of casinos." Ratpac opposed the cancellation proceedings. The court of first instance ultimately granted the cancellation request in its entirety. This decision was upheld on appeal to the Vienna Higher Regional Court, except as to: "Hotel services, catering for guests in restaurants, operation of a bar." Ratpac's registration was allowed to stand as to these categories, as well as the uncontested category of "operation of casinos." The decision is now final and binding. A copy of an English translation of the statement of decision, dated April 28, 2020, is appended hereto as Exhibit A and incorporated herein by this reference.

18. In the statement of decision, the appellate court notes with approval and adopts the following conclusions of the "cancellation division":

> ". . . the applicant's [i.e., Rat Pack's] company name was distinctive and that there was also a likelihood of confusion with the contested mark. There was also an identity or at least a high degree of similarity . . . to the applicant's business activity." (Exh. A at p. 4.)

- **Rat Pack Wins Against Ratpac in the Netherlands**

19. On September 8, 2015, Ratpac registered its mark in the Netherlands for the same three international categories noted in paragraph 18 above: 36, 41, and 43.

20. Rat Pack filed a cancellation proceeding. Ratpac opposed the cancellation proceeding. The court of first instance denied Rat Pack's request for cancellation. The court of appeal overturned the decision of the lower court, ruling that:

> "Ratpac US [is prohibited from] using the designation RATPAC in the Netherlands in the opening title and/or credits of films, which are released for the first time after service of this judgment . . . ."

The decision is now final and binding. A copy of an English translation of the statement of decision, dated September 14, 2021, is appended hereto as Exhibit B and incorporated herein by this reference. The language quoted above appears on page 13.

21. In its statement of decision, the appellate court noted:

> "The court considers that the trade name RATPAC ENTERTAINMENT differs from the trade name RAT PACK FILMPRODUKTION only to a very small extent. The elements RAT PACK and RATPAC are the most decisive for the overall image of both trade names, as the elements ENTERTAINMENT and FILMPRODUKTION

are descriptive. RATPAC and RAT PACK are aurally identical. The logo in the trade name of Ratpac US will not be pronounced. It is not disputed that the names are conceptually identical in that they can both be understood as referring to the legendary group of Hollywood actors known as The Rat Pack: Frank Sinatra, Dean Martin, Sammy Davis Jr, Joey Bishop and Peter Lawford. The fact that RATPAC is also a contraction of the surnames of the company's founders does not change that, now that the relevant audience will generally be unaware of it. Although there is a visual difference between the trade names, in the opinion of the Court this is insufficient to judge differently about the aforementioned similarity between the trade names, also taking into account the aural and conceptual similarity. * * *

In terms of the nature and activities of the companies, they are related, as both companies are involved in the creation of films . . . . * * *

In view of the aforementioned similarity between the trade names used, the nature of the companies as presented to the general movie watching public and the circumstance that this public is confronted with the trade names in practically the same manner when watching a movie, namely in the opening title and the credits, the Court of Appeal is of the opinion that . . . confusion between the companies is to be feared among this

public." (Exh. B at p. 7.)

- **Rat Pack Wins Against Ratpac in Denmark**

22. On June 17, 2014, Ratpac filed an application to register its mark in Denmark in the same three international classes noted in paragraph 18 above: 36, 41, and 43. Rat Pack opposed. The Danish Patent and Trademark Office ruled in favor of registration. Rat Pack appealed that decision to the Danish Board of Appeal for Patents and Trademarks (the "Board"), which upheld the decision. Rat Pack then appealed to Denmark's ultimate authority on the issue: the Danish Maritime and Commercial Court. Meanwhile, the Board, based on new evidence, reconsidered and reversed its decision, in part, denying Ratpac registration in class 41 as to "production and distribution of television programs and films." The appeal to the Maritime and Commercial Court then converted into one by Ratpac, attempting to overturn the new decision of the Board.

23. In a ruling issued on November 1, 2021, the Maritime and Commercial Court upheld the final decision of the Board, ruling that:

> "Ratpac Entertainment, LLC shall acknowledge that prior to the priority date [of Ratpac's Danish trademark application], Rat Pack Filmproduktion GmbH has established a right to the trademark RAT PACK for film production in Denmark.
>
> RatPac Entertainment, LLC shall acknowledge that use of the RATPAC trademark for the 'production and distribution of television programmes and film' and 'the production of feature films' in Denmark constitutes an infringement of Rat Pack Filmproduktion GmbH's rights in the trademark RAT PACK."

The decision is now final and binding. A copy of an English translation of the statement of decision, dated November 1, 2021, is appended hereto as Exhibit C and incorporated herein by this reference. The language quoted above appears on page 26.

24. The rulings discussed above, and appended hereto as Exhibits A, B, and C, shall be referred to hereinafter collectively as the “Judgments”. Each of the Judgments recognizes a significant likelihood of consumer confusion as to the source or origin of films being distributed under the “RatPac” and “Rat Pack” marks and awards Rat Pack declaratory and other relief. None of the Judgments, however, awards Rat Pack money damages or compels Defendants to disgorge their unjust enrichment. On information and belief, it is the custom in Europe for trademark owners to preliminarily obtain non-monetary relief against infringers and then pursue money damages in a subsequent, separate action. Defendants all reside in Los Angeles. Rather than file monetary claims against Defendants in Austria, the Netherlands, and Denmark, and then seek to domesticate any resulting judgments in Los Angeles for the purpose of collection, Rat Pack has elected to come to Los Angeles first. In the present action, Rat Pack seeks: (i) monetary relief against Defendants for their infringement of Rat Pack’s trademark rights in Europe and (ii) declaratory, injunctive, and monetary relief for Defendants’ infringement of Rat Pack’s trademark rights in the United States.

## FIRST CLAIM FOR RELIEF

**(False Designation of Origin - [15 U.S.C. § 1125(a)])**

**Against All Defendants**

25. Rat Pack incorporates all allegations set forth hereinabove by this reference.

26. Rat Pack’s use of the “Rat Pack” trademark in interstate commerce in the United States precedes Defendants’ use of the “Ratpac” mark and has continued without substantial interruption.

27. Defendants have used the "Ratpac" mark in interstate commerce in the United States in connection with the sale and promotion of their own goods and services, which are substantially related to Rat Pack's, without Rat Pack's authorization.

28. On information and belief, Defendants' use of the "Ratpac" mark has caused or is likely to cause confusion or mistake or deceive the public in the United States as to a possible affiliation between Defendants and Rat Pack, or as to the origin, sponsorship, or approval of Defendants' and/or Rat Pack's goods and services.

29. Rat Pack is informed and believes and thereon alleges that, as a proximate result of Defendants' use of the "Ratpac" mark in the United States, Defendants have made substantial sales and profits in amounts to be established according to proof.

30. Rat Pack is informed and believes, and thereon alleges that, as a proximate result of Defendants' use of the "Ratpac" mark in the United States, Rat Pack has been damaged and deprived of substantial sales, profits, and royalties that Rat Pack otherwise would have earned, in amounts to be established according to proof.

31. Rat Pack is informed and believes, and thereon alleges that, unless restrained by the Court, Defendants will continue to infringe Rat Pack's trademark in the United States, thus engendering a multiplicity of judicial proceedings, and pecuniary compensation alone will not afford Rat Pack adequate relief for the damage to its intellectual property rights, reputation, and sales. Further, Rat Pack is informed and believes, and thereon alleges that, in the absence of injunctive relief, customers are likely to continue being mistaken or deceived as to the true source, origin, sponsorship, and affiliation of both Rat Pack's and Defendants' goods and services.

32. Pursuant to 15 U.S.C. § 1118, Rat Pack is entitled to an order

requiring destruction of all infringing products, packaging, and marketing materials in Defendants' possession.

**SECOND CLAIM FOR RELIEF**

**(Statutory Unfair Competition – Business & Professions Code § 17200 et seq.) Against All Defendants**

33. Rat Pack incorporates all allegations set forth hereinabove by this reference.

34. Defendants' conduct as alleged herein constitutes unlawful and unfair, business practices prohibited by sections 17200 et seq. and 17500 et seq. of the California Business & Professions Code.

35. Defendants' conduct is unlawful for the reasons set forth herein, including but not limited to Defendants' violations of federal and foreign trademark laws and Defendants' false designation of origin of Defendants' goods and services.

36. Defendants' conduct is unfair for the reasons set forth herein. Without limitation, Defendants' actions in blatantly misappropriating Rat Pack's intellectual property – and continuing to do so even after becoming aware of Rat Pack's rights through foreign litigation – violate the policy and spirit of the antitrust laws, and significantly threaten or harm competition.

37. Rat Pack is informed and believes and thereon alleges that as a direct and proximate result of Defendants' wrongful conduct as described above, Defendants have gained property and revenues properly belonging to Rat Pack, which therefore seeks restitution of these amounts.

38. The harm Rat Pack experienced derived substantially from conduct occurring within California. Without limitation, on information and belief, many of the films to which Defendants' infringing branding was applied were filmed or otherwise produced in this state, and Defendants' pertinent business decisions regarding branding (including the disregarding of Rat Pack's trademark rights, of which they were well aware) and distribution for such films were made within

California as well.

39. In addition, Rat Pack suffered harm within the State of California. Without limitation, Rat Pack has often sought financing for its film projects from persons and entities in California, and has faced significant headwinds in those efforts as a result of a false perception by the financiers that Rat Pack was an affiliate or otherwise related to RatPac, which became the subject of disrepute as a result of #MeToo allegations against Ratner. Moreover, on information and belief, similar confusion has occurred among moviegoers and consumers in California, and Rat Pack has been damaged and deprived of substantial sales, profits, and royalties that it would have otherwise earned in California.

## THIRD CLAIM FOR RELIEF

### (Violation of Austrian Trademark Act of 1970, Section 10)

### Against All Defendants

40. Rat Pack incorporates all allegations set forth hereinabove by this reference.

41. Rat Pack's use of the "Rat Pack" trademark in commerce in Austria precedes Defendants' use of the "Ratpac" mark in Austrian commerce and has continued without substantial interruption.

42. Defendants have used the "Ratpac" mark in Austrian commerce in connection with the sale and promotion of their own goods and services, which are substantially related to Rat Pack's, without Rat Pack's authorization.

43. As already adjudicated in the Austrian courts, Defendants' use of the "Ratpac" mark in Austria has caused or is likely to cause confusion or mistake or deceive the public as to a possible affiliation between Defendants and Rat Pack, or as to the origin, sponsorship, or approval of Defendants' and/or Rat Pack's goods and services.

44. Rat Pack is informed and believes and thereon alleges that, as a proximate result of Defendants' use of the "Ratpac" mark in Austria, Defendants

have made substantial sales and profits in amounts to be established according to proof.

45. Rat Pack is informed and believes, and thereon alleges that, as a proximate result of Defendants' use of the "Ratpac" mark in Austria, Rat Pack has been damaged and deprived of substantial sales, profits, and royalties that Rat Pack otherwise would have earned, in amounts to be established according to proof.

**FOURTH CLAIM FOR RELIEF**

**(Violation Dutch Trade Name Act, Section 5)**

**Against All Defendants**

46. Rat Pack incorporates all allegations set forth hereinabove by this reference.

47. Rat Pack's use of the "Rat Pack" trademark in commerce in the Netherlands precedes Defendants' use of the "Ratpac" mark in commerce in the Netherlands and has continued without substantial interruption.

48. Defendants have used the "Ratpac" mark in commerce in the Netherlands in connection with the sale and promotion of their own goods and services, which are substantially related to Rat Pack's, without Rat Pack's authorization.

49. As already adjudicated by the courts in the Netherlands, Defendants' use of the "Ratpac" mark in the Netherlands has caused or is likely to cause confusion or mistake or deceive the public as to a possible affiliation between Defendants and Rat Pack, or as to the origin, sponsorship, or approval of Defendants' and/or Rat Pack's goods and services.

50. Rat Pack is informed and believes and thereon alleges that, as a proximate result of Defendants' use of the "RatPac" mark in the Netherlands, Defendants have made substantial sales and profits in amounts to be established according to proof.

51. Rat Pack is informed and believes, and thereon alleges that, as a

proximate result of Defendants' use of the "RatPac" mark in the Netherlands, Rat Pack has been damaged and deprived of substantial sales, profits, and royalties that Rat Pack otherwise would have earned, in amounts to be established according to proof.

**FIFTH CLAIM FOR RELIEF**

**(Violation of Danish Trademark Act, Section 4)**

**Against All Defendants**

52. Rat Pack incorporates all allegations set forth hereinabove by this reference.

53. Rat Pack's use of the "Rat Pack" trademark in commerce in Denmark precedes Defendants' use of the "Ratpac" mark in Danish commerce and has continued without substantial interruption.

54. Defendants have used the "Ratpac" mark in Danish commerce in connection with the sale and promotion of their own goods and services, which are substantially related to Rat Pack's, without Rat Pack's authorization.

55. On information and belief, Defendants' use of the "RatPac" mark in Denmark has caused or is likely to cause confusion or mistake or deceive the public as to a possible affiliation between Defendants and Rat Pack, or as to the origin, sponsorship, or approval of Defendants' and/or Rat Pack's goods and services.

56. Rat Pack is informed and believes and thereon alleges that, as a proximate result of Defendants' use of the "Ratpac" mark in Denmark, Defendants have made substantial sales and profits in amounts to be established according to proof.

57. Rat Pack is informed and believes, and thereon alleges that, as a proximate result of Defendants' use of the "Ratpac" mark in Denmark, Rat Pack has been damaged and deprived of substantial sales, profits, and royalties that Rat Pack otherwise would have earned, in amounts to be established according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Rat Pack prays for judgment in its favor and against Defendants as follows:

1. For injunctive relief:

   a. Enjoining Defendants and their agents, employees, representatives, partners, joint venturers and/or anyone acting on behalf of, or in concert with Defendants, preliminarily and permanently, from directly or indirectly using Plaintiff's "Rat Pack" mark, or any confusingly similar mark, including but not limited to the "Ratpac" mark, in interstate commerce in the United States, in a manner that is likely to cause confusion with Plaintiff's mark in connection with the financing, production, and/or distribution of films and television shows; and

   b. Compelling Defendants to destroy, or deliver to Rat Pack for destruction, or to alter the labeling to some non-infringing form on, any and all labels, signs, prints, packages, wrappers, receptacles, DVDs, movies, shows, trailers, audiovisual materials, and advertisements in the possession or under the control of Defendants bearing the "Ratpac" mark or any other mark confusingly similar to "Ratpack".

2. For monetary relief:

   a. Compensatory damages and the disgorgement of profits in an amount to be proven at trial, in excess of $10 million, including but not limited to a reasonable royalty compensating Rat Pack for all unauthorized uses of the "Rat Pack" mark or marks confusingly similar thereto by Defendants;

b. Restitution according to proof; and

c. Pre-judgment and post-judgment interest at the maximum rate allowable by law.

3. For attorneys' fees and costs as provided by law.

4. For such other and further relief, including but not limited to equitable relief, as the Court shall deem just and proper.

DATED: February 3, 2025.

ROSS LLP
Peter W. Ross
Charles Avrith
Eric C. Lauritsen

By: /s/ Peter W. Ross
Peter W. Ross
Attorneys for Plaintiff Rat Pack Filmproduktion GmbH

**DEMAND FOR JURY TRIAL**

Rat Pack Filmproduktion GmbH hereby demands a trial by jury with respect to all issues so triable.

DATED: February 3, 2025.

ROSS LLP
Peter W. Ross
Charles Avrith
Eric C. Lauritsen

By: */s/ Peter W. Ross*
Peter W. Ross
Attorneys for Plaintiff
Rat Pack Filmproduktion GmbH